David J. Aveni, Esq. (SBN 251197)
Natalie F. Lakosil, Esq. (SBN 322836)
**WILSON, ELSER, MOSKOWITZ,
   EDELMAN & DICKER LLP**
401 West A Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 321-6200
Facsimile: (619) 321-6201
Email:  david.aveni@wilsonelser.com
         natalie.lakosil@wilsonelser.com

Attorneys for Defendant,
CHARLES A. SCHEIWE

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASFA KASSAM, Individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>     vs.<br><br>FLUX POWER HOLDINGS, INC., RONALD F. DUTT, and CHARLES A. SCHEIWE,<br><br>                              Defendants. | Case No. 3:25-cv-00113-JO-DDL<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT CHARLES A. SCHEIWE'S MOTION TO DISMISS THE AMENDED COMPLAINT**<br><br>CLASS ACTION<br><br>Before:          Hon. Jinsook Ohta<br>Courtroom:   4C, Fourth Floor<br>Date:            July 17, 2025<br>Time:            9:30 a.m. |

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ..................................................................................................1

II.     BACKGROUND FACTS ......................................................................................1

III.    LEGAL STANDARD ...........................................................................................4

IV.     ARGUMENT ........................................................................................................6

    A.    PLAINTIFFS FAIL TO PLEAD A CLAIM FOR SECURITIES FRAUD BECAUSE THE AMENDED COMPLAINT DOES NOT ALLEGE FACTS GIVING RISE TO A STRONG INFERENCE OF SCIENTER ....................................................................6

        1.    Statements of Anonymous Former Employees Do Not Raise a Strong Inference of Mr. Scheiwe's Scienter .....................8

            a)    Former Employee No. 1 ........................................................9

            b)    Former Employee No. 2 ......................................................11

            c)    Former Employee No. 3 ......................................................12

            d)    Former Employee No. 4 ......................................................14

            e)    Former Employee No. 5 ......................................................15

        2.    Mr. Scheiwe's Transition to Consultant and Eventual Departure From Flux Power Does Not Raise A Strong Inference of Scienter .............................................................................16

        3.    Lack of Motive Allegations Undermines An Inference of Scienter ..............................................................................................19

        4.    The Magnitude of the Restatement Weighs Against the Court Making an Inference of Scienter ...........................................19

        5.    Even a Holistic Evaluation Does Not Save Plaintiffs' Vague and Conclusory Scienter Allegations ..................................20

    B.    PLAINTIFFS' CONTROLLING PERSON CLAIM AGAINST MR. SCHEIWE SHOULD BE DISMISSED ...........................................22

i

V.    CONCLUSION ..............................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................................................................................................4

*Berson v. Applied Signal Tech., Inc.*,
527 F.3d 982 (9th Cir. 2008) .......................................................................................7

*Cahill v. Liberty Mut. Ins. Co.*,
80 F.3d 336 (9th Cir. 1996) ..........................................................................................4

*Cement Masons & Plasterers Jt. Pension Tr. v. Equinix, Inc.*,
No. 11-01016SC, 2012 U.S. Dist. LEXIS 28094, 2012 WL 685344 (N.D. Cal. Mar. 2, 2012)......................................................................................................19

*Curry v. Yelp Inc.*,
875 F.3d 1219 (9th Cir. 2017) ......................................................................................7

*Cutler v. Kirchner*,
696 F. App'x 809 (9th Cir. 2017)............................................................. 8, 12, 14

*Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
856 F.3d 605 (9th Cir. 2017)......................................................................................18

*Depot, Inc. v. Caring for Montanans, Inc.*,
915 F.3d 643 (9th Cir. 2019).................................................................................5, 12

*Destfino v. Reiswig*,
630 F.3d 952 (9th Cir. 2011)........................................................................................6

*In re Downey Sec. Litig.*,
No. 08-cv-3261 JFW RZX, 2009 U.S. Dist. LEXIS 83443, 2009 WL 2767670 (C.D. Cal. Aug. 21, 2009) ................................................... 10, 12, 15, 16

*DSAM Glob. Value Fund v. Altris Software, Inc.*,
288 F.3d 385 (9th Cir. 2002).......................................................................................8

El Dabe v. Calavo Growers, Inc.,
719 F.App'x 607 (9th Cir. 2018) ...............................................................................20

*Epsy v. J2 Global, Inc.*,
99 F.4th 527 (9th Cir. 2024)......................................................................................16

iii

*Ernst & Ernst v. Hochfelder*,
425 U.S. 185 (1976) ...........................................................................................5

*Ezzes v. Vintage Wine Ests., Inc.*,
No. 2:22-cv-01915-GMN-DJA, 2024 U.S. Dist. LEXIS 35928 (D. Nev.
Mar. 1, 2024) ....................................................................................................21

*Ferris v. Wynn Resorts Ltd.*,
462 F. Supp. 2d 1101 (D. Nev. 2020) .................................................................23

*Fidel v. Farley*,
392 F.3d 220 (6th Cir. 2004) ..............................................................................20

*Gebhart v. S.E.C.*,
595 F.3d 1034 (9th Cir. 2010)...............................................................................6

*In re Gilead Scis. Secs. Litig.*,
536 F.3d 1049 (9th Cir. 2008)................................................................................5

*Glazer Cap. Mgmt. v. Forescout Techs., Inc.*,
63 F.4th 747 (9th Cir. 2023)..................................................................................7

*Gompper v. VISX, Inc.*,
298 F.3d 893 (9th Cir. 2002)............................................................................5, 11

*In re Hypercom Corp. Secs. Litig.*,
No. CV-05-0455-PHX-NVW, 2006 U.S. Dist. LEXIS 2669 (D. Ariz. Jan.
24, 2006) ...........................................................................................................20

*In re Impac Mortg. Holdings, Inc. Securities Litigation*,
554 F.Supp.2d 1083 (S.D. Cal. 2008) ............................................................ 12, 13

*In re Intel Corp. Sec. Litig.*,
No. 5:20-CV-05194-EJD, 2023 U.S. Dist. LEXIS 57732, 2023 WL
2767779 (N.D. Cal. Mar. 31, 2023) ....................................................................10

*Karpov v. Insight Enters*,
No. CV 09-856-PHX-SRB, 2010 U.S. Dist. LEXIS 59771 (D. Ariz. Apr.
30, 2010)........................................................................................................ 18, 20

*Lamontagne v. Tesla, Inc.*,
No. 23-cv-00869-AMO, 2024 U.S. Dist. LEXIS 178030 (N.D. Cal. Sep. 30,
2024)................................................................................................................6, 10

*Lee v. City of L.A.*,
250 F.3d 668 (9th Cir. 2001)......................................................................................18

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
540 F.3d 1049 (9th Cir. 2008)......................................................................................9

*In re Microstrategy, Inc. Sec. Litig.*,
115 F.Supp.2d 620 (E.D. Va. 2000)...........................................................................20

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001)........................................................................................4

*In re NVIDIA Corp. Sec. Litig.*,
768 F.3d 1046 (9th Cir. 2014)....................................................................................18

*In re PMC-Sierra, Inc. Derivative Litig.*,
2008 WL 2024888 (N.D. Cal. May 8, 2008) ...............................................................6

*Prodanova v. H.C. Wainwright & Co.*,
993 F.3d 1097 (9th Cir. 2021)....................................................................................19

*Reiger v. PriceWaterhouseCoopers LLP*,
117 F.Supp.2d 1003 (S.D. Cal. 2000) ........................................................................20

*Ronconi v. Larkin*,
253 F.3d 423 (9th Cir. 2001) ............................................................................ 5, 6, 8

*In re Silicon Graphics, Inc. Sec. Litig.*,
183 F.3d 970 (9th Cir. 1999).......................................................................................5

*In re Silicon Storage Tech., Inc.*,
2006 WL 648683 (N.D. Cal. Mar. 10, 2006)..........................................................6, 14

*Soto v. Origin Materials, Inc. (In re Origin Materials, Inc. Sec. Litig.)*,
No. 2:23-cv-01816 WBS JDP) 2024 U.S. Dist. LEXIS 196413, 2024 WL
4608497 (E.D. Cal. Oct. 29, 2024)................................................ 10, 12, 15, 16

*South Ferry*,
542 F.3d ___ ..............................................................................................................21

*In re Stac Elecs. Sec. Litig.*,
89 F.3d 1399 (9th Cir. 1996).......................................................................................18

*Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, Inc.*,
552 U.S. 148 (2008) .....................................................................................................7

v

*Swartz v. KPMG, LLP*,
    476 F.3d 756 (9th Cir. 2007) .................................................................................5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ....................................................................... 5, 6, 11, 19, 21

*Vess v. Ciba-Geigy Corp., USA*,
    317 F.3d 1097 (9th Cir. 2003) .............................................................................5

*Webb v. SolarCity Corp.*,
    884 F.3d 844 (9th Cir. 2018) .........................................................................7, 17

*Weiss v. Amkor Tech., Inc.*,
    527 F. Supp. 2d 938 (D. Ariz. 2007).................................................................21

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009)............... 6, 8, 9, 10, 12, 14, 15, 16, 17, 18, 21, 22, 23

**Statutes**

15 U.S.C. § 78t(a) ...................................................................................................23

15 U.S.C. § 78u-4(b)................................................................................................5

15 U.S.C. § 78u-4(b)(2)(A) ...............................................................................5, 11

Exchange Act § 10(b) ................................................................................ 2, 7, 22, 23

Exchange Act § 20(a) ..........................................................................................2, 23

**Rules**

Fed. R. Civ. P. § 8(a)(2) ...........................................................................................4

Fed. R. Civ. P. § 9(b).................................................................................... 5, 6, 11

Fed. R. Civ. P. § 10b-5 ...........................................................................................22

Fed. R. Civ. P. § 12(b)(6) ....................................................................................4, 5

Defendant Charles A. Scheiwe respectfully submits this Memorandum of Points and Authorities in support of his Motion to Dismiss the Plaintiffs Amended Complaint (Dkt. No. 48) (hereinafter referred to as the "AC").

## I.    INTRODUCTION

Defendant Scheiwe is the former Chief Financial Officer ("CFO") of Defendant Flux Power Holdings, Inc. ("Flux Power" or the "Company"). During Mr. Scheiwe's tenure as the CFO, Flux Power identified certain internal control weaknesses regarding financial reporting, which it properly disclosed, and promptly set about to remedy. Roughly six months after Mr. Scheiwe stepped down as the CFO and accepted a consulting position with the Company, Flux Power announced that it discovered further problems and would need to restate certain of its financial statements due to errors in its accounting for inventory.

Plaintiffs now seek to recast these events as fraud. Relying heavily on a series of vague and conclusory statements from anonymous confidential witnesses that lack any key details, the AC allegations are devoid of any facts to show Mr. Scheiwe knew of either the accounting issues or the internal control issues before they were disclosed. None of the confidential witnesses purport to assert any facts showing Mr. Scheiwe knew the Company's accounting was materially incorrect, or knew of any undisclosed material weaknesses in internal controls.

For the reasons set forth below, the Court should grant Mr. Scheiwe's motion and dismiss Plaintiffs' Amended Complaint in its entirety. [1]

## II.    BACKGROUND FACTS

The AC alleges the Company, Mr. Dutt and Mr. Scheiwe violated Section 10(b)

---

[1]Defendants Flux Power and Dutt are contemporaneously filing their own separate Motion to Dismiss the Amended Complaint. Mr. Scheiwe joins in and incorporates by reference that separate Motion to Dismiss. To avoid unnecessary duplication, Mr. Scheiwe has avoided repeating certain of the arguments in the Flux Power/Dutt Motion to Dismiss that apply equally to him.

1

MEM. OF P&A ISO DEF. SCHEIWE'S                                      3:25-cv-00113
MTD THE AMENDED COMPLAINT

and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), during a class period of November 15, 2021 through February 14, 2025. AC ¶¶ 1, 55, 68-69, 73-74, 78-79, 83-84, 88-89, 99-102, 110, 115, 120, 170-184. The Amended Complaint relies on purported statements provided by five anonymous former employees ("FE") of the Company. AC ¶¶ 27-32, 38, 39, 132-134, 136-140, 142-153, 155-157.

Flux Power designs, develops, manufactures, and sells lithium-ion battery packs for use in a range of industrial and commercial sectors. AC ¶¶ 2, 33. Mr. Scheiwe was the Company's CFO and corporate secretary during the class period until his voluntary resignation from the Company on March 1, 2024. AC ¶ 23. Mr. Scheiwe was appointed the Company's CFO and corporate secretary on December 17, 2018. *Id*. On February 23, 2024, the Company announced that Mr. Scheiwe would be transitioning from his role as CFO to a consulting position with the Company, and Kevin Royal would become the Company's new CFO. *Id*. Mr. Dutt was Flux Power's CEO, President, and Chairman of the Board during the class period. AC ¶ 22.

Prior to its restatement, Flux Power disclosed two material weaknesses in its internal controls over financial reporting. AC ¶¶ 66, 71, 76. In its fiscal year ("FY") 2022 Form 10-K, the Company announced that management identified a material weakness regarding ineffective oversight of its internal controls over financial reporting and lack of sufficient review and approval of the underlying data used in the calculation of warranty reserve. AC ¶ 66. The Company believed it had remediated the identified material weaknesses by implementing additional control procedures. AC ¶¶ 71, 76. The Company also stated it planned to "continue to assess" its internal controls and procedures and would "take further action as necessary or appropriate to address any other matters we identify or are brought to our attention." AC ¶ 76.

In the subsequent FY23 Form 10-K, the Company announced it had identified a new material weakness related to insufficient personnel resources with accounting expertise relating to the financial reporting process. AC ¶ 86. The Company stated management intended to remediate the weakness by implementing measures to

improve relevant controls and would also use "third-party consultants and accounting experts." *Id*. The Company later disclosed in its Q324 Form 10-Q that it engaged a financial consultant "with extensive technical accounting expertise in order to provide the technical advice needed," and "strengthened the Company's financial expertise" by hiring a CFO with relevant experience in early March 2024. AC ¶ 97. The Company also stated that management believed that the staff and consultant additions "have improved our internal control over financial reporting and has moved us towards remediating previously identified material weaknesses." AC ¶ 97.

On September 5, 2024, the Company filed a Form 8-K announcing that the Company's financial statements for FY23 and the first three quarters of FY24 should no longer be relied on due to errors relating to the improper accounting for inventory and would need to be restated. AC ¶¶ 105, 106. The Company explained it found an overstatement of inventory of approximately $1.7 million (which resulted in an overstatement of current assets, total assets, and gross profit, and an understatement of cost of sales and net loss in its financial statements). AC ¶¶ 40, 106. The Company indicated that it was evaluating the impact of those errors to determine if additional financial statements would need to be restated. AC ¶ 106. The announcement also noted its previously disclosed material weakness regarding its technical accounting resources, and said management concluded that the errors announced in the restatement represented an additional material weakness. AC ¶ 107.

The Company updated the market on its restatement process in November 2024, disclosing that further review "resulted in estimated noncash inventory write-downs of approximately $4.4 million and related noncash warranty related items of approximately $0.5 million, totaling adjustments of approximately $4.9 million," which would impact multiple quarters over multiple years. AC ¶ 113.

On January 8, 2025, the Company announced that its independent auditor, Baker Tilly U.S. LLP ("Baker Tilly"), would end its engagement with the Company and not stand for re-election after completing the FY24 audit, and announced Haskell & White

3

LLP would be its new accounting firm. AC ¶ 119.

On January 29, 2025, the Company filed its FY24 Form 10-K which restated the Company's financial statements for the periods in FY22, FY23 and the first three fiscal quarters of FY24. AC ¶ 121. The 10-K described the various inventory-related errors, as well as additional accounting errors that were identified and corrected during the restatement process. AC ¶ 122. The 10-K also described a new material weakness of "a lack of sufficiently designed controls that support an effective assessment of our internal controls relating to the prevention of fraud and possible management override of controls." AC ¶ 123.

On March 10, 2025, the Company announced that Mr. Dutt notified the Board of his retirement and resigned as the Company's director, Chairman of the Board, CEO, and President. AC ¶ 127.

## III.    LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of the claims made in the complaint. Accordingly, dismissal under Rule 12(b)(6) is proper where the complaint fails to set forth a "cognizable legal theory," or where there is "an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief" under Rule 8(a)(2), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations, brackets, and citations omitted). In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all "allegations of material fact," and construe them "in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). Nonetheless, Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or

4

unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

Beyond meeting the demands of Rule 12(b)(6), a plaintiff asserting securities fraud claims must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b). *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321-24 (2007). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) requires that claims of fraud be accompanied by the "who, what, when, where, and how" of the conduct charged. *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). In other words, the complaint "must include 'an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 668 (9th Cir. 2019) (quoting *Swartz v. KPMG, LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam)) (internal quotations omitted).

The PSLRA further requires that the complaint "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 314 (2007) (quoting 15 U.S.C. § 78u-4(b)(2)(A)); *see Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002) (the PSLRA requires that a complaint "'plead with particularity both falsity and scienter.'" (quoting *Ronconi v. Larkin*, 253 F.3d 423, 429 (9th Cir. 2001))). The particularity requirement means that "a plaintiff must provide a list of all relevant circumstances in great detail." *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 984 (9th Cir. 1999).

The required state of mind under the PSLRA is a "mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193-94 n.12 (1976). Thus, "the complaint must contain allegations of specific 'contemporaneous statements or conditions' that demonstrate the intentional or the

deliberately reckless false or misleading nature of the statements when made." *Ronconi*, 253 F.3d at 432 (citation omitted). Further, a complaint must "show that each defendant had the requisite scienter." *In re PMC-Sierra, Inc. Derivative Litig.*, 2008 WL 2024888, at *3 (N.D. Cal. May 8, 2008). In other words, the plaintiff must "plead facts showing scienter as to each defendant individually." *In re Silicon Storage Tech., Inc.*, 2006 WL 648683, at *21-22 (N.D. Cal. Mar. 10, 2006) (group pleading is improper). Additionally, where several defendants are alleged to be part of the fraud, "Rule 9(b) 'does not allow a complaint to . . . lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant.'" *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011).

The "strong inference" required by the PSLRA "must be more than merely 'reasonable' or 'permissible' it must be cogent and compelling, thus strong in light of other explanations." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007). "A court must compare the malicious and innocent inferences cognizable from the facts pled in the complaint, and only allow the complaint to survive a motion to dismiss if the malicious inference is at least as compelling as any opposing innocent inference." *Zucco Partners*, 552 F.3d at 991; *see also Tellabs*, 551 U.S. at 324 (same). Because scienter is a subjective inquiry, "the ultimate question is whether the defendant knew his or her statements were false, or was consciously reckless as to their truth or falsity." *Lamontagne v. Tesla, Inc.*, No. 23-cv-00869-AMO, 2024 U.S. Dist. LEXIS 178030, at *38 (N.D. Cal. Sep. 30, 2024) (quoting *Gebhart v. S.E.C.*, 595 F.3d 1034, 1042 (9th Cir. 2010)).

**IV.    ARGUMENT**

**A. PLAINTIFFS FAIL TO PLEAD A CLAIM FOR SECURITIES FRAUD BECAUSE THE AMENDED COMPLAINT DOES NOT ALLEGE FACTS GIVING RISE TO A STRONG INFERENCE OF SCIENTER.**

Section 10(b) of the Exchange Act prohibits any act or omission resulting in

6

fraud or deceit in connection with the purchase or sale of any security. "The elements that must be pleaded to state a claim for securities fraud are strenuous but well established." *Curry v. Yelp Inc.*, 875 F.3d 1219, 1224 (9th Cir. 2017). To establish a violation of Section 10(b) and avoid dismissal, a plaintiff is required to plead: (1) a material misrepresentation or omission made by the defendant; (2) scienter (i.e., intent); (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation. *See Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, Inc.*, 552 U.S. 148, 157 (2008).

To plead scienter, a plaintiff must "'state with particularity facts giving rise to a strong inference' that defendants acted with the intent to deceive or with deliberate recklessness as to the possibility of misleading investors." *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 987 (9th Cir. 2008). In *Webb v. SolarCity Corp.*, 884 F.3d 844, 851 (9th Cir. 2018), the Ninth Circuit explained that the scienter standard requires facts demonstrating an intent to deceive, manipulate or defraud, or "deliberate recklessness." The court defined "deliberate recklessness" as "an extreme departure from the standards of ordinary care, which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Id*. (brackets, emphasis, and citation omitted); *see also Glazer Cap. Mgmt. v. Forescout Techs., Inc.*, 63 F.4th 747,765 (9th Cir. 2023) (stating that deliberate recklessness "is a higher standard than mere recklessness and requires more than a motive to commit fraud," and "only satisfies scienter under § 10(b) to the extent that it reflects some degree of intentional or conscious misconduct" (citation omitted)).

Plaintiffs allege that as a senior officer of the Company, Mr. Scheiwe had actual knowledge of the material falsity and misleading nature of the statements set forth in the Amended Complaint, and intended to deceive Plaintiffs, or, in the alternative, acted with reckless disregard for the truth when he and Mr. Dutt failed to ascertain and disclose the true facts in the statements made by them, the Company, or other personnel of the Company. AC ¶¶ 173, 174. To allege a strong inference of deliberate

7

recklessness, a plaintiff must state facts that come closer to demonstrating intent, as opposed to mere motive and opportunity. *DSAM Glob. Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 389 (9th Cir. 2002). "To meet this pleading requirement, the complaint must contain allegations of specific contemporaneous statements or conditions that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements when made." *Ronconi v. Larkin*, 253 F.3d 423, 432 (9th Cir. 2001) (internal quotation marks and citation omitted).

Plaintiffs allege Mr. Scheiwe's scienter based on little more than confidential witness accounts, the fact that a restatement occurred, and Mr. Scheiwe's departure from the Company. At their core, the allegations do not allege a strong inference of scienter because the allegations fail to show that Mr. Scheiwe knew the statements were false, or recklessly disregarded by Mr. Scheiwe at the time the statements were made. As detailed below, Plaintiffs fail to meet the heightened pleading requirement. Thus, the Court should grant Mr. Scheiwe's motion to dismiss.

### 1. Statements of Anonymous Former Employees Do Not Raise a Strong Inference of Mr. Scheiwe's Scienter.

Scienter may be pled based on allegations attributed to confidential witnesses if two conditions are met: 'First, the confidential witnesses . . . must be described with sufficient particularity to establish their reliability and personal knowledge. Second, those statements which are reported . . . must themselves be indicative of scienter.'" *Cutler v. Kirchner*, 696 F. App'x 809, 815 (9th Cir. 2017). "[G]eneral allegations about management's role in a corporate structure and the importance of the corporate information about which management made . . . misleading statements" is not enough to satisfy the PSLRA if the allegations are not supplemented by "detailed and specific allegations about management's exposure to factual information within the company." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1000 (9th Cir. 2009). And "generalized claims about corporate knowledge are not sufficient to create a strong inference of scienter, since they fail to establish that the witness reporting them has

8

reliable personal knowledge of the defendants' mental state." *Id.* at 998. When analyzing the first prong, a court must "look to 'the level of detail provided by the confidential sources, the corroborative nature of the other facts alleged (including from other sources), the coherence and plausibility of the allegations, the number of sources, the reliability of the sources, and similar indicia.'" *Id.* at 995.

In alleging scienter, Plaintiffs rely heavily on the statements of anonymous former employees. According to Plaintiffs, statements by these former employees demonstrate that "senior management" and Defendants were aware of Flux's internal control over financial reporting problems or were at least recklessly disregarded at the time the statements were made. AC ¶¶ 129-158, 172-175. However, none of Plaintiffs' confidential witness "statements" in the Amended Complaint satisfy the requisite two-prong test. *Zucco Partners*, 552 F.3d at 995; *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1069 (9th Cir. 2008). Moreover, none of the purported statements attributed to FEs 1 through 5 are sufficient to establish Mr. Scheiwe's scienter because the vague generalized allegations fail either to include details establishing reliable personal knowledge of the Mr. Scheiwe's state of mind or imply that Mr. Scheiwe acted intentionally or was deliberately reckless.

### a) Former Employee No. 1

FE1 worked as the Company's Director of SEC Reporting from January 2020 to May 2024. AC ¶ 28. However, all of the statements attributed to FE1 in the AC are either not indicative of scienter or are so vague and generalized as to be unpersuasive. *Zucco Partners*, 552 F.3d at 1000; *see* AC ¶¶ 133, 134, 137, 138, 139, 140, 153, 155.

For example, the AC alleges that according to FE1, "there were concerns at Flux Power regarding the Company's internal controls by at least 2022, specifically about a lack of secondary reviews for financial accounting statements," and Mr. "Scheiwe would have been aware of those concerns." AC ¶ 133. However, this statement is nothing more than a speculative "generalized claim[] about corporate knowledge" which is not sufficient to create a strong inference of scienter." *Zucco Partners*, 552

9

F.3d at 998 (confidential witness statement that defendant "had to have known" was insufficient); *see also In re Downey Sec. Litig.*, No. 08-cv-3261 JFW RZX, 2009 U.S. Dist. LEXIS 83443, 2009 WL 2767670, at *10 (C.D. Cal. Aug. 21, 2009) (a confidential witness statement is insufficient where it "lack[s] specificity" and is "based on hearsay, rumor, or speculation"); *Soto v. Origin Materials, Inc. (In re Origin Materials, Inc. Sec. Litig.)*, No. 2:23-cv-01816 WBS JDP) 2024 U.S. Dist. LEXIS 196413, at *8, 2024 WL 4608497 (E.D. Cal. Oct. 29, 2024). Further, FE1 provides no other details, including how FE1 has the personal knowledge that such vague "concerns" existed, *see Zucco Partners*, 552 F.3d at 996, or how the existence of such unspecified "concerns" at the company demonstrates Mr. Scheiwe in particular had the requisite scienter.

Additionally, allegations such as "FE1 recalled that memos or reports discussing these internal controls issues were circulated throughout Flux Power's management" do not support scienter because there is nothing to indicate the "memos or reports" ever made their way to Mr. Scheiwe. AC ¶ 133. *See In re Intel Corp. Sec. Litig.*, No. 5:20-CV-05194-EJD, 2023 U.S. Dist. LEXIS 57732, 2023 WL 2767779, at *23 (N.D. Cal. Mar. 31, 2023) (finding that an allegation did not support scienter when there was no indication that the allegation "made its way" to any individual defendant).  Further, Plaintiffs fail to provide any details at all regarding these purported memos or reports, such as what they specifically said about the internal control issues, when they were circulated, and how those memos or reports are sufficient to create a strong inference of scienter. *See, e.g., Lamontagne v. Tesla, Inc.*, 2024 U.S. Dist. LEXIS 178030, at *40 (N.D. Cal. 2024) (finding alleged receipt of unspecified "reports" and "updates" is conclusory and does not indicate strong inference of scienter)).

Finally, some allegations attributed to FE1 actually undermine a claim of scienter. Specially, Plaintiffs allege that the Company attempted to address financial accounting issues by implementing additional measures, which Mr. Scheiwe signed off on. AC ¶¶ 133, 134; *see also* AC ¶¶ 138-140. The fact that Mr. Scheiwe approved

10

stronger control procedures to attempt to address the alleged problems demonstrates the *absence* of scienter, not a strong inference of its existence.

Thus, FE1 statements alleged in the AC do not give rise to a strong inference of scienter.

**b) Former Employee No. 2**

The allegations in the AC that are attributed to FE2, a Financial Analyst and Business Intelligence Developer for the Company from July 2021 to June 2022[2], do not give rise to a strong inference of scienter. AC ¶ 29, 132. Plaintiffs use FE2 to allege that the "Company held daily morning meetings discussing internal control issues, with key concerns addressed in subsequent high-level breakout meetings that would occur weekly" and in these meeting, "department heads" would raise relevant issues "including obsolescence." AC ¶ 132. Notably, the only reference to Mr. Scheiwe is FE2's generalized assertion that Mr. Scheiwe "attended these meetings." AC ¶ 132. This does not meet the stringent heightened pleading requirements under Rule 9(b) and the PSLRA. Importantly, FE2 does not allege he or she attended either the daily meetings, or the high-level breakout meetings, nor are there details indicating how FE2 knows Mr. Scheiwe attended the meetings. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 314 (2007) (quoting 15 U.S.C. § 78u-4(b)(2)(A)); *see Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002) (complaint must plead scienter with particularity).

Moreover, the allegations do not include an account of the time, place, and, most importantly, *any specific content of the information relayed* at these alleged meetings or the identities of the parties relaying any of the information. FE2 provides no detail other than that "relevant issues including obsolescence" were "raised," (AC ¶ 132), which does nothing to demonstrate Mr. Scheiwe knew the company's accounting was

---

[2] Only seven of the months FE2 worked at the Company fall within the Class Period, AC ¶¶ 1, 29, diminishing FE2's relevance to scienter during the Class Period accordingly.

MEM. OF P&A ISO DEF. SCHEIWE'S                                            3:25-cv-00113
MTD THE AMENDED COMPLAINT

incorrect. *See Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 668 (9th Cir. 2019); *In re Downey Sec. Litig.*, No. 08-cv-3261 JFW RZX, 2009 U.S. Dist. LEXIS 83443, 2009 WL 2767670, at *10 (C.D. Cal. Aug. 21, 2009) (a confidential witness statement is insufficient where it "lack[s] specificity" and is "based on hearsay, rumor, or speculation"); *Soto v. Origin Materials, Inc. (In re Origin Materials, Inc. Sec. Litig.)*, No. 2:23-cv-01816 WBS JDP) 2024 U.S. Dist. LEXIS 196413, at *8, 2024 WL 4608497 (E.D. Cal. Oct. 29, 2024).

Plaintiffs fail to show how these meetings bear on Mr. Scheiwe's scienter. *See Zucco Partners*, 552 F.3d at 1000 (either not indicative of scienter or so vague as to be unpersuasive); *In re Impac Mortg. Holdings, Inc. Securities Litigation*, 554 F.Supp.2d 1083, 1101 (S.D. Cal. 2008) ("[f]ederal securities laws do not create a cause of action for corporate mismanagement that is not accompanied by deception[]"); *Cutler v. Kirchner*, 696 F. App'x 809, 815 (9th Cir. 2017) (those statements which are reported . . . must themselves be indicative of scienter.'"). Further, none of the allegations involving FE2 provide any factual detail to indicate that the information alleged was ever relayed to Mr. Scheiwe during the "meetings" or that he saw the reports on the ERP systems. AC ¶ 132, 151.

Thus, none of the allegations based on FE2 give rise to a strong inference of Mr. Scheiwe's scienter.

### c)  Former Employee No. 3

According to the allegations in the AC, FE3 worked as an assistant Controller for the Company from October 2017 to March 2024. AC ¶ 30. The AC alleges that FE3 stated Scheiwe was in charge of financial reporting and staffing adequate accounting personnel, and that most of the Company's accounting work was performed by Mr. Scheiwe, FE3, and Messervy. AC ¶ 136. However, there are no allegations in the Complaint to indicate FE3 attributed any specific accounting errors to Mr. Scheiwe.

Additionally, the AC alleges that according to FE3, Mr. Scheiwe had faced multiple potential terminations by the Board for over a year and a half before Mr.

12

Scheiwe "left" the Company.[3] AC ¶ 140. But as discussed in more detail below, resigning voluntarily does not raise a strong inference of scienter and there are zero details as to the why Mr. Scheiwe allegedly faced potential termination by the Board or any explanation as to how FE3 would know such information. *See In re Impac Mortg. Holdings, Inc. Sec. Litig.*, 554 F.Supp.2d 1083, 1101 (S.D. Cal. 2008) ("[f]ederal securities laws do not create a cause of action for corporate mismanagement that is not accompanied by deception."). Such vague allegations are therefore unreliable and do not support a strong inference of scienter.

According to Plaintiffs, FE3 also states that Flux Power lacked a "robust finance department" and that FE3 could only recall the Company employing two financial analysts. AC ¶ 136. But FE3 does not claim Mr. Scheiwe knew or believed the accounting department lacked the necessary technical accounting expertise in the periods before that internal control weakness was disclosed (nor does FE3 specifically say he held that opinion himself). FE3's own opinion that the finance department was not "robust" does nothing to demonstrate a strong inference of scienter for Mr. Scheiwe regarding the specific alleged internal control weaknesses.

The allegations regarding FE3's general statements on loaner packs are vague, simply stating that at some unspecified time, the Company had difficulty locating and tracking the packs, which led to "confusion." AC ¶ 156. FE3 claims in a vague and conclusory fashion that the issue caused "substantial problems" and led to "numerous discussions," (AC ¶ 156), but again fails to provide any details such as the time period of the discussions, who participated, or what was discussed. FE3 purportedly also states that Mr. Scheiwe told FE3 about unspecified "issues" related to loaner packs. AC ¶ 156. The AC fails to provide any details at all regarding those purported

---

[3] As discussed in more detail below in subsection (2), Mr. Scheiwe did not in fact "leave" Flux Power in March 2024. He merely transitioned into a consulting role for the Company. Because the allegations are so vague and do not include any dates, it is assumed FE3 is referring to March 2024 in the statement because that is when FE3's employment with Flux Power ended. AC ¶ 30.

13

discussions, including when they took place, or critically, what specifically was said. Importantly, FE3 does not allege that Mr. Scheiwe ever said he knew the Company's accounting was incorrect.

Additionally, the remaining allegations provided by FE3 are not attributed specifically to Mr. Scheiwe, and therefore do not give rise to a strong inference of Mr. Scheiwe's scienter. AC ¶ 142, 156, 157. *See In re Silicon Storage Tech., Inc.*, 2006 WL 648683, at *21-22 (N.D. Cal. Mar. 10, 2006) (group pleading is improper); *Cutler v. Kirchner*, 696 F. App'x 809, 815 (9th Cir. 2017) (those statements which are reported . . . must themselves be indicative of scienter.'"). Thus, like the statements made by the first two confidential witnesses, FE3's statements are not indicative of Mr. Scheiwe's scienter.

### d) Former Employee No. 4

According to the allegations, FE4 worked as the Company's Senior Manager - Supply Chain from December 2019 through October 2021. AC ¶ 31. FE4 was not employed at Flux Power during the Class Period, nor is it alleged that the FE4 ever reported to Mr. Scheiwe. AC ¶¶ 31, 32. If the Court were to consider any allegations attributable to FE4, those allegations should be given little weight because the individual was not employed by Flux Power during the alleged Class Period, November 15, 2021 through February 14, 2025, and therefore lacks any firsthand knowledge of the events during the relevant time period. AC ¶ 1, 136, 144, 146, 148. *See Zucco Partners*, 552 F.3d at 989, 996 (confidential witnesses not employed during the class period had "only secondhand information about accounting practices" during the time period in question and did not support a finding of scienter).

Additionally, the alleged statements from FE4, like those of the other confidential witnesses, suffer from a severe lack of any meaningful detail, including any detail that would tie Mr. Scheiwe's knowledge to any of the specific relevant accounting issues. For example, FE4 - and FE5 - purportedly state that they explained to Scheiwe, among others, in some unspecified meeting, at some unspecified time, that

MEM. OF P&A ISO DEF. SCHEIWE'S
MTD THE AMENDED COMPLAINT

3:25-cv-00113

some unspecified amount of inventory was obsolete and that in their opinion, it would need to be written down. AC ¶¶ 146, 152. Once again, such vague and conclusory allegations, lacking any such details, are insufficient to raise a strong inference of scienter. *See Zucco Partners*, 552 F.3d at 1000 (either not indicative of scienter or so vague as to be unpersuasive); *In re Downey Sec. Litig.*, No. 08-cv-3261 JFW RZX, 2009 U.S. Dist. LEXIS 83443, 2009 WL 2767670, at *10 (C.D. Cal. Aug. 21, 2009) (a confidential witness statement is insufficient where it "lack[s] specificity" and is "based on hearsay, rumor, or speculation"); *Soto v. Origin Materials, Inc. (In re Origin Materials, Inc. Sec. Litig.)*, No. 2:23-cv-01816 WBS JDP) 2024 U.S. Dist. LEXIS 196413, at *8, 2024 WL 4608497 (E.D. Cal. Oct. 29, 2024). FE4 (and FE5) does not allege Mr. Scheiwe knew or had the opinion the Company's accounting was incorrect.[4]

Further, numerous statements from FE4, including Paragraphs 144, and 147-149 say nothing about whether Mr. Scheiwe received or was told the information alleged, and thus is insufficient. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1000 (9th Cir. 2009) (allegations do not satisfy the PSLRA if the allegations are not supplemented by "detailed and specific allegations about management's exposure to factual information within the company").

Thus, the allegations involving FE4 do not give rise to a strong inference of scienter.

### e) Former Employee No. 5

The AC states FE5 worked as the Materials Manager for Flux Power from January 2020 to November 2021, and reported to FE4. AC ¶ 32. This individual was

---

[4] As with other confidential witnesses, FE4 and FE5 sometimes refer generally to the Company's "Management" or "C-suite" without a specific reference to Mr. Scheiwe. *See, e.g.,* AC ¶¶ 146-148, 152. Plaintiffs apparently do not intend to include Mr. Scheiwe in such references, since Plaintiffs specifically lists him by name when he is intended to be included. In any event, the allegations regarding purported knowledge attributed to "Management" or "C-suite" personnel (and allegations including such similar expressions) also lack sufficient detail to demonstrate Mr. Scheiwe had the requisite scienter during the Class Period.

15

MEM. OF P&A ISO DEF. SCHEIWE'S                                      3:25-cv-00113
MTD THE AMENDED COMPLAINT

not employed at Flux Power during the Class Period, nor did FE5 report to Mr. Scheiwe. AC ¶¶ 31, 32. Thus, as with FE4, if any allegations attributable to FE5 are considered by the Court, such allegations should be given little weight as FE5 was not employed by Flux Power during the alleged Class Period and lacks firsthand knowledge of any events during the relevant time period. AC ¶ 1. *See Zucco Partners*, 552 F.3d at 989, 996 (confidential witnesses not employed during the class period had "only secondhand information about accounting practices" during the time period in question and did not support a finding of scienter).

Additionally, as discussed above regarding FE4, AC Paragraphs 136, 143, 145-150, 152 do not allege sufficient detailed facts, including when or who ("management"; "C-suite"; "Company"), or any details about the information relayed to Mr. Scheiwe during the alleged "meetings" and such vague and generalized allegations do not give raise a strong inference of scienter. *See Epsy v. J2 Global, Inc.*, 99 F.4th 527 (9th Cir. 2024) (criticisms or negative opinions of business practices from anonymous witnesses rooted in secondhand knowledge do not give rise to an inference of scienter); *Zucco Partners*, 552 F.3d at 1000; *In re Downey Sec. Litig.*, No. 08-cv-3261 JFW RZX, 2009 U.S. Dist. LEXIS 83443, 2009 WL 2767670, at *10 (C.D. Cal. Aug. 21, 2009); *Soto v. Origin Materials, Inc. (In re Origin Materials, Inc. Sec. Litig.)*, No. 2:23-cv-01816 WBS JDP) 2024 U.S. Dist. LEXIS 196413, at *8, 2024 WL 4608497 (E.D. Cal. Oct. 29, 2024). Further, most of these Paragraphs do not allege that Mr. Scheiwe was the recipient of the information alleged. *See Zucco Partners*, 552 F.3d at 1000.

Thus, allegations involving FE5 do not give rise to a strong inference of scienter.

### 2. Mr. Scheiwe's Transition to Consultant and Eventual Departure From Flux Power Does Not Raise A Strong Inference of Scienter.

Plaintiffs also allege Mr. Scheiwe's scienter can be inferred from his resignation and departure from Flux Power (as well as the resignation of several others, and the replacement of Flux Power's outside auditor, all of which are addressed in the separate

16

MEM. OF P&A ISO DEF. SCHEIWE'S                                    3:25-cv-00113
MTD THE AMENDED COMPLAINT

Motion to Dismiss filed by Flux Power and Mr. Dutt). AC ¶ 116, 141. Mr. Scheiwe's resignation does not support an inference of scienter, and in fact the opposite is true.

For an executive's resignation to support a strong inference of scienter, the plaintiff must allege specific information "to differentiate between a suspicious change in personnel and a benign one." *Zucco Partners,* 552 F.3d at 1002. A resignation only supports an inference of scienter when the plaintiff demonstrates the resignation is uncharacteristic of the company's typical hiring and termination patterns or was accompanied by suspicious circumstances. Otherwise, the inference that the corporation forced the employees to resign due to knowledge of the employees' role in an alleged fraud "will never be as cogent or as compelling as the inference that the employees resigned or were terminated for unrelated personal or business reasons." *Id.*

Plaintiffs have failed to allege *any* facts to satisfy this substantial burden regarding Mr. Scheiwe's resignation. Plaintiffs simply rely on conclusory allegations and speculation regarding the timing of the resignation, which is insufficient. *See Zucco Partners*, 552 F.3d at 1002 (dismissing allegation that CFO resigning just prior to disclosure of improper accounting and lack of financial controls supported a finding of scienter); *see also Webb v. Solarcity Corp.*, 884 F.3d 844, 847, 857 9th Cir. 2018) (finding allegations of scienter unpersuasive based on "corporate reshuffling" just prior to restatement and corporate departures after restatement). That is particularly true since Mr. Scheiwe's resignation was six months before the Company announced the restatement. AC ¶ 23. Plaintiffs' personal speculation and unsupported belief regarding the reasons for Mr. Scheiwe's resignation (AC ¶ 116, n.10) does nothing to satisfy Plaintiffs' burden.

The only other allegations regarding Mr. Scheiwe's resignation are conclusory statements from two of the confidential witnesses (which are also discussed above). FE1 purportedly claims that an unnamed board member had asked Mr. Scheiwe "to leave" at some unidentified time, *and for a completed unstated reason*. FE1 does not indicate any other facts in support of this statement, including such crucial facts as how

17

FE1 knows this information, *see Zucco Partners*, 552 F.3d at 996, or why the unnamed board member purportedly asked Mr. Scheiwe to leave. FE1 does not draw any connection between the board member's alleged desire for Mr. Scheiwe to leave, and the Mr. Scheiwe's alleged scienter regarding the issues in this case.

Similarly, according to Plaintiffs, FE3 claims that Mr. Scheiwe "faced multiple potential terminations by the Board" for some time before Mr. Scheiwe resigned. Again, Plaintiffs do not provide any context for how FE3 allegedly knows this information, nor are any facts alleged to tie any purported desire to terminate Mr. Scheiwe's to Mr. Scheiwe's scienter.

Finally, while Plaintiffs allege Mr. Scheiwe left Flux Power after he resigned as CFO, that is not the case. Instead, after stepping down as CFO and Secretary of Flux Power in March 2024, Mr. Scheiwe transitioned into a consulting role for the Company. (*See* Form 8-K attached to Declaration, Ex. A).[5] When the individual who resigned remains with the company, such as in an advisory role, that further diminishes any inference of scienter based on the resignation. *See Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 622 (9th Cir. 2017); *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1062-63 (9th Cir. 2014) (no scienter based on executive departures in part because two of the three individuals remained at the company in advisory roles). Here, the fact that Mr. Scheiwe continued to work for Flux

---

[5] The Company's announcement in its 8-K filing, which Plaintiffs reference in AC ¶ 23, states that Mr. Scheiwe was stepping down as Flux Power's CFO and Secretary and would be transitioning to a consultant for the Company. *See* Flux Power 8-K Filing, filed on February 23, 2024, at page 2. Under the incorporation by reference doctrine, courts may consider the full text of incorporated documents, "including portions which were not mentioned in the complaints." *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 n.4 (9th Cir. 1996). Additionally, the Court "may take judicial notice of 'matters of public record' [in SEC filings] without converting a motion to dismiss into a motion for summary judgment." *Karpov v. Insight Enters*, No. CV 09-856-PHX-SRB, 2010 U.S. Dist. LEXIS 59771, at *5 (D. Ariz. Apr. 30, 2010) (citing *Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001).

---

18

Power as a consultant undercuts finding a strong inference of Mr. Scheiwe's scienter based on his resignation.[6] Because the company kept Mr. Scheiwe as a consultant after his resignation, that shows he was not forced out due to any alleged misconduct.

Thus, Mr. Scheiwe's resignation as Flux Power's CFO and secretary does not support a finding of scienter.

### 3. Lack of Motive Allegations Undermines An Inference of Scienter.

In addition to the fact the scienter allegations are insufficient, the AC's lack of any allegations concerning motive further undermines an inference of scienter in this case. As explained by the Ninth Circuit, plaintiffs "face a substantial hurdle in establishing scienter[]" in cases that do not allege a plausible motive. *Prodanova v. H.C. Wainwright & Co.*, 993 F.3d 1097, 1103 (9th Cir. 2021). The AC does not allege any plausible reason as to why Mr. Scheiwe would attempt to deceive investors. Thus, the lack of motive allegations in the AC weighs against finding an inference of scienter. *See Cement Masons & Plasterers Jt. Pension Tr. v. Equinix, Inc.*, No. 11-01016SC, 2012 U.S. Dist. LEXIS 28094, at *25, 2012 WL 685344, at *8 (N.D. Cal. Mar. 2, 2012) ("'[w]hile the absence of a motive allegation is not fatal,' . . . it may significantly undermine a plaintiff's theory of fraud.") (quoting *Tellabs*, 551 U.S. at 325).

### 4. The Magnitude of the Restatement Weighs Against the Court Making an Inference of Scienter.

While Plaintiffs allege that the scale of the restatement by itself also supports a strong inference of scienter, that is not the case. AC ¶ 153. Scienter cannot be established based solely on the size or scope of an allegedly fraudulent scheme. *See Fidel v. Farley*, 392 F.3d 220, 231 (6th Cir. 2004) ("Allowing an inference of scienter based on the magnitude of the fraud 'would eviscerate the principle that accounting

---

[6] Similarly, Plaintiffs' allegation that after Mr. Scheiwe resigned, FE1 did not observe any further changes to Flux Power's internal controls over financial reporting, AC ¶ 139, cuts against a finding of scienter based on the resignation, since after his resignation, the company continued with the same internal controls.

19

MEM. OF P&A ISO DEF. SCHEIWE'S                                    3:25-cv-00113
MTD THE AMENDED COMPLAINT

errors alone cannot justify a finding of scienter"); *Reiger v. PriceWaterhouseCoopers LLP*, 117 F.Supp.2d 1003, 1013 (S.D. Cal. 2000); *Karpov*, No. CV 09-856-PHX-SRB, 2010 U.S. Dist. LEXIS 59771, at *20-21, n.3 (D. Ariz. April 30. 2010).

While in rare instances, some courts have allowed a restatement of particularly drastic size, combined with other specific evidence of fraudulent intent, to support an inference of scienter, that is not the case here. *See, e.g., In re Microstrategy, Inc. Sec. Litig.*, 115 F.Supp.2d 620, 636 (E.D. Va. 2000) (finding magnitude of restatement, combined with other factors, supported scienter when company allegedly fraudulently reported *record* net income of $18.9 million over three years, while actually suffering $36 million net loss). Here, the AC alleges the Company's financial statements overstated gross profits by $3.63 million and understated net losses by $2.39 million. AC ¶ 154. The restatement here is not of the magnitude that could be found to support a strong inference of scienter (particularly given the absence of other evidence of fraudulent intent). *See Karpov,* 2010 U.S. Dist. LEXIS 59771, at *20-21, n.3; *see also In re Hypercom Corp. Secs. Litig.*, No. CV-05-0455-PHX-NVW, 2006 U.S. Dist. LEXIS 2669, at *12-14 (D. Ariz. Jan. 24, 2006); *El Dabe v. Calavo Growers,* Inc., 719 F.App'x 607, 609 (9th Cir. 2018) ("It is true that the overstatements of Calavo's earnings were huge. For 2014, for example, Calavo's restatement eliminated approximately $40 million of reported earnings. Even so, the financial scope of Calavo's mistake and the company's publication of a restatement do not create a strong inference of scienter.").

### 5. Even a Holistic Evaluation Does Not Save Plaintiffs Vague and Conclusory Scienter Allegations.

"Even when a court determines that the individual allegations of scienter do not give rise to a 'strong inference' of knowledge or deliberate recklessness, the court must further conduct a holistic review of the allegations to determine whether they combine to create a strong inference." *Ezzes v. Vintage Wine Ests., Inc.*, No. 2:22-cv-01915-GMN-DJA, 2024 U.S. Dist. LEXIS 35928, at *51-52 (D. Nev. Mar. 1, 2024) (quoting

20

*Zucco Partners*, 552 F.3d at 991-92). "Vague or ambiguous allegations are . . . considered as a part of [the] holistic review . . . [because] the federal courts . . . need not close their eyes to circumstances that are probative of scienter viewed with a practical and commonsense perspective." *South Ferry*, 542 F.3d at 784. Nonetheless, "if a set of allegations may create an inference of scienter greater than the sum of its parts, it must still be at least as compelling as an alternative innocent explanation." *Zucco Partners*, 552 F.3d at 1006; *see also Tellabs*, 551 U.S. at 310 ("To determine whether the plaintiff has alleged facts that give rise to the requisite 'strong inference' of scienter, a court must consider plausible nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff").

Plaintiffs provide no more than a minimalistic effort to satisfy their high burden on scienter allegations. The AC relies heavily on confidential former employee statements that are vague and conclusory, containing virtually no actual details; these allegations are not enough to meet the heightened pleading requirement for scienter under the PSLRA. Notably, Plaintiffs rely almost entirely on FE4 and FE5's statements to allege Mr. Scheiwe's scienter for the Company's financial statements on obsolete inventory. *See generally* AC ¶¶ 142-156. Because F4 and F5 were not employed by the Company during the Class Period they have no knowledge about what occurred during the Class Period, and their statements bear virtually no weight regarding Mr. Scheiwe's scienter during the Class Period. Additionally, none of the anonymous FE statements show that Mr. Scheiwe acted intentionally or was deliberately reckless in not investigating the inventory numbers and understated costs. *See Weiss v. Amkor Tech., Inc.*, 527 F. Supp. 2d 938, 954 (D. Ariz. 2007) (finding that confidential witness statements failed to meet the pleading standards mandated by the PSLRA when they "merely reflect[ed] matters that companies deal with on a daily basis."). The statements made by the FEs lack pertinent details about any allegedly relevant interactions with Mr. Scheiwe on these issues, including when such conversations occurred and what was said. There are no allegations linking any specific allegedly relevant reports and

MEM. OF P&A ISO DEF. SCHEIWE'S                                        3:25-cv-00113
MTD THE AMENDED COMPLAINT

their contents to Mr. Scheiwe. Without reliable personal knowledge of Mr. Scheiwe's mental state, even considered cumulatively with Plaintiffs other theories of scienter[7], these conclusory allegations do not create a strong inference of scienter.

Additionally, the facts pled in the AC fail to provide a "strong inference" of scienter at least as compelling as an alternative innocent explanation. The allegations tell the story of a company attempting to remedy and disclose issues as they became known. Without particularized allegations that Mr. Scheiwe knew of accounting misstatements or internal control weaknesses, the facts alleged are more indicative of non-fraudulent general corporate behaviors. The fact that the Company ultimately issued a restatement does not change this conclusion.

Thus, the Court should dismiss Plaintiffs' claim for violations of Section 10(b) of the Exchange Act and Rule 10b-5 against Mr. Scheiwe.

### B. PLAINTIFFS CONTROLLING PERSON CLAIM AGAINST MR. SCHEIWE SHOULD BE DISMISSED.

Plaintiffs also allege a violation of Section 20(a) of the Exchange Act against Mr. Scheiwe because they claim he acted as a controlling person of Flux within the meaning of Section 20(a) of the Exchange Act. AC ¶ 179-184. Section 20(a) of the Exchange Act makes certain "controlling" individuals also liable for violations of section 10(b) and its underlying regulations. *Zucco Partners*, 552 F.3d at 990; 15 U.S.C. § 78t(a). Because Section 20(a) liability is premised on an underlying Section

---

[7] To the extent Plaintiffs are attempting to allege Mr. Scheiwe's signature on the SOX certificates supports a strong inference of scienter (AC ¶¶ 99-102), these allegations also fail. The AC contains no particularized, contemporaneous facts demonstrating Mr. Scheiwe knew of any errors in the Company's financial reporting or undisclosed material weakness pertinent to the certifications at the time they were signed. *See Zucco Partners*, 552 F.3d at 1003-04 (finding that "allowing [SOX] certifications to create an inference of scienter in 'every case where there was an accounting error or auditing mistake made by a publicly traded company' would 'eviscerat[e] the pleading requirements for scienter set forth in the PSLRA.'") (alteration in original) (citations omitted)).

---

22

10(b) violation, Section 20(a) claims may be dismissed summarily if the plaintiff fails adequately to plead a primary violation of Section 10(b). *See Zucco Partners*, 552 F.3d at 990; *Ferris v. Wynn Resorts Ltd.*, 462 F. Supp. 2d 1101, 1128-29 (D. Nev. 2020). Accordingly, because Plaintiffs have not pled a predicate Section 10(b) claim against Mr. Scheiwe due to their failure to sufficiently allege scienter, Plaintiffs' Section 20(a) claim necessarily fails and should be dismissed. AC ¶¶ 179-184. Without "a primary violation of federal securities law," Plaintiffs cannot maintain a claim for control person liability. *Zucco Partners*, 552 F.3d at 990.

## V.    CONCLUSION

For the reasons stated herein, Mr. Scheiwe respectfully moves the Court to grant this motion and dismiss the Amended Complaint.

Dated:  May 12, 2025                       Respectfully submitted,

                                                        **WILSON, ELSER, MOSKOWITZ,
                                                        EDELMAN & DICKER LLP**

                                                        By: */s/ David Aveni*_____
                                                                David J. Aveni
                                                                Natalie F. Lakosil
                                                                Attorneys for Defendant CHARLES A.
                                                                SCHEIWE

MEM. OF P&A ISO DEF. SCHEIWE'S                                    3:25-cv-00113
MTD THE AMENDED COMPLAINT

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed and served this 12th day of May 2025, using this Court's CM/ECF filing system which will electronically transmit a copy to all counsel of record.

Respectfully submitted,

Dated: May 12, 2025

By:  */s/ David Aveni*
David J. Aveni, Esq.
Natalie F. Lakosil
Attorneys for Defendant CHARLES A. SCHEIWE