Laurence M. Rosen (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Lead Counsel for Plaintiffs*

[*Additional Counsel on Signature Page*]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASFA KASSAM, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FLUX POWER HOLDINGS, INC., RONALD F. DUTT, and CHARLES A. SCHEIWE,<br><br>Defendants. | No. 3:25-cv-113-JO-DDL<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>CLASS ACTION<br><br>Date:  October 23, 2025<br>Time: 9:30 a.m.<br>Courtroom: 4C<br>Judge: Hon. Jinsook Ohta |

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT.................................................................................1

II.   OVERVIEW OF THE LITIGATION........................................................................2

    A.    Plaintiffs' Allegations ....................................................................................2

    B.    Procedural History and Settlement ................................................................4

III.  THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS .............4

    A.    The Settlement Class Satisfies Rules 23(a) ..................................................5

        1.    Numerosity ..........................................................................................5

        2.    Commonality .......................................................................................6

        3.    Typicality.............................................................................................6

        4.    Adequacy .............................................................................................7

    B.    The Settlement Class Satisfies Rule 23(b)(3) ...............................................8

        1.    Predominance ......................................................................................8

        2.    Superiority ...........................................................................................9

    C.    Ascertainability ............................................................................................10

IV.   THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL.................................................................................................10

    A.    Plaintiffs and Lead Counsel Adequately Represented the Class .................................................................................................12

    B.    The Settlement is the Product of Arm's Length Negotiations ...............................................................................................12

    C.    The Relief Provided to the Settlement Class is Adequate ......................................................................................................13

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT; No. 3:25-cv-113-JO-DDL

        1.    The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Continued Litigation ...................................................................13

        2.    Risk of Maintaining Class Action Status Through Trial ...................................................................................15

   D.   The Remaining Rule 23(e)(2)(C) Factors Support Approval .............16

        1.    The Methods of Distributing Relief and Processing Claims ..............................................................................16

        2.    Proposed Attorneys' Fees ...........................................16

        3.    Other Agreements ........................................................17

   E.   The Proposed Settlement Does Not Unjustly Favor Any Settlement Class Member, Including Plaintiffs ...................................18

   F.   The Remaining Ninth Circuit Factors Favor Approval .......................19

        1.    The Amount Offered in Settlement ............................19

        2.    The Extent of Discovery and Stage of Proceedings .................20

        3.    Experienced Counsel's Recommendations ...........................21

V.   THE COURT SHOULD APPROVE THE NOTICE PLAN .......................22

VI.   PROPOSED SCHEDULE OF EVENTS .......................................................24

VII.   CONCLUSION .............................................................................................25

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT; No. 3:25-cv-113-JO-DDL

# TABLE OF AUTHORITIES

**Cases**

*Ali v. Franklin Wireless Corp.*,
 2023 WL 25718 (S.D. Cal. Jan. 3, 2023)......................................................5, 8, 9

*Amchem Prods., Inc. v. Windsor*,
 521 U.S. 591 (1997)...............................................................................................8, 9

*Baker v. SeaWorld Ent., Inc.*,
 2020 WL 818893 (S.D. Cal. Feb. 19, 2020)...........................................................22

*Booth v. Strategic Realty Tr., Inc.*,
 2015 WL 3957746 (N.D. Cal. June 28, 2015)........................................................10

*Castillo v. Bank of Am., NA*,
 980 F.3d 723 (9th Cir. 2020)...................................................................................6

*Cheng Jiangchen v. Rentech, Inc.*,
 2019 WL 5173771 (C.D. Cal. Oct. 10, 2019)........................................................17

*Christine Asia Co. v. Yun Ma*,
 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019).........................................................17

*City of Birmingham Relief & Ret. Sys. v. Acadia Pharms., Inc.*,
 348 F.R.D. 372 (S.D. Cal. 2024) .............................................................5, 6, 7, 10

*Hanlon v. Chrysler Corp.*,
 150 F.3d 1011 (9th Cir. 1998) ...................................................................11, 12, 19

*Hefler v. Wells Fargo & Co.*,
 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ........................................................17

*Hefler v. Wells Fargo & Co.*,
 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018)..................................................14, 19

*In re "Agent Orange" Prod. Liab. Litig.*,
 597 F. Supp. 740 (E.D.N.Y. 1984) ........................................................................19

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
 298 F.R.D. 171 (S.D.N.Y. 2014) ...........................................................................22

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT; No. 3:25-cv-113-JO-DDL

*In re Audioeye, Inc., Sec. Litig.*,
2017 WL 5514690 (D. Ariz. May 8, 2017) .......................................................17

*In re China Med. Corp. Sec. Litig.*,
2013 WL 12126754 (C.D. Cal. May 16, 2013) ...............................................5, 8

*In re Cooper Companies Inc. Sec. Litig.*,
254 F.R.D. 628 (C.D. Cal. 2009) ......................................................................9

*In re GSE Bonds Antitrust Litig.*,
414 F. Supp. 3d 686 (S.D.N.Y. 2019)...............................................................15

*In re Heritage Bond Litig.*,
2005 WL 1594389 (C.D. Cal. June 10, 2005) ..................................................20

*In re Heritage Bond Litig.*,
2005 WL 1594403 (C.D. Cal. June 10, 2005) ..................................................10

*In re Hyundai & Kia Fuel Econ. Litig.*,
926 F.3d 539 (9th Cir. 2019)............................................................................10

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007)............................................................14

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) .................................................23

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000)..............................................................14, 17, 18

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...........................................................16

*In re Qualcomm Inc. Sec. Litig.*,
2023 WL 2583306 (S.D. Cal. Mar. 20, 2023) ...............................................5, 6, 7

*In re Regulus Therapeutics Inc. Sec. Litig.*,
2020 WL 6381898 (S.D. Cal. Oct. 30, 2020) ..................................................20

*In re Stable Road Acquisition Corp.*,
2024 WL 3643393 (C.D. Cal. Apr. 23 2024) ..................................................18

iv

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
535 F. Supp. 2d 249 (D.N.H. 2007)........................................................................14

*In re Wireless Facilities, Inc. Sec. Litig. II*,
253 F.R.D. 607 (S.D. Cal. 2008) ...........................................................................14

*In re Zynga Inc. Sec. Litig.*,
2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) .......................................................6, 9

*In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
2016 WL 6248426 (N.D. Cal. Oct. 25, 2016) .........................................................20

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
136 F. Supp. 3d 1159 (C.D. Cal. 2015) ...................................................................7

*Lusk v. Five Guys Enterprises LLC*,
2022 WL 4791923 (E.D. Cal. Sept. 30, 2022).......................................................13

*Mild v. PPG Indus., Inc.*,
2019 WL 3345714 (C.D. Cal. July 25, 2019).........................................................12

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
339 U.S. 306 (1950).................................................................................................22

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004)............................................................................21

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
238 F.R.D. 482 (C.D. Cal. 2006) .............................................................................8

*Nguyen v. Radient Pharms. Corp.*,
2014 WL 1802293 (C.D. Cal. May 6, 2014) .........................................................18

*O'Connor v. Boeing N. Am., Inc.*,
184 F.R.D. 311 (C.D. Cal. 1998)............................................................................10

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*,
688 F.2d 615 (9th Cir. 1982)..............................................................10, 15, 19, 20

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009)..................................................................................23

v

*Salazar v. Midwest Servicing Grp., Inc.*,
  2018 WL 3031503 (C.D. Cal. June 4, 2018) ........................................................ 15

*Satchell v. Fed. Express Corp.*,
  2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ....................................................... 12

*Sudunagunta v. NantKwest, Inc.*,
  2019 WL 2183451 (C.D. Cal. May 13, 2019) ....................................................... 13

*Vikram v. First Student Mgmt., LLC*,
  2019 WL 1084169 (N.D. Cal. Mar. 7, 2019) ......................................................... 19

*Vinh Nguyen v. Radient Pharms. Corp.*,
  287 F.R.D. 563 (C.D. Cal. 2012) ........................................................................... 5

*Wong v. Arlo Techs., Inc.*,
  2021 WL 1531171 (N.D. Cal. Apr. 19, 2021) ....................................................... 13

**Statutes**

15 U.S.C. § 78u-4(a)(7)(A)-(F) .................................................................................. 23

28 U.S.C. §1715 ........................................................................................................... 22

**Rules**

Fed. R. Civ. P. 23(a) .......................................................................................... 4, 5, 10

Fed. R. Civ. P. 23(b)(3) ...................................................................................... 4, 8, 10

Fed. R. Civ. P. 23(c)(2) ............................................................................................... 22

Fed. R. Civ. P. 23(e) .................................................................................................... 22

Fed. R. Civ. P. 23(e)(1)(B) .......................................................................................... 11

Fed. R. Civ. P. 23(e)(2); and (ii) ........................................................................... 11, 19

Fed. R. Civ. P. 23(e)(2)(A) .......................................................................................... 12

Fed. R. Civ. P. 23(e)(2)(B) .......................................................................................... 12

Fed. R. Civ. P. 23(e)(2)(C) .......................................................................................... 16

Fed. R. Civ. P. 23(e)(2)(C)(i) ...................................................................................... 13

vi

Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv) ..............................................................................16

Fed. R. Civ. P. 23(e)(2)(D) .........................................................................................18

Fed. R. Civ. P. 23(e)(3); and (D) ................................................................................11

Fed. R. Civ. P. 23(g)(1)(A) ...........................................................................................7

Fed. R. Civ. P. 23(h)(1) ...............................................................................................23

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT; No. 3:25-cv-113-JO-DDL

Lead Plaintiff Brandon Paulson and named Plaintiff Thomas Frank Clark (collectively, "Plaintiffs") submit this memorandum in support of their unopposed Motion for Preliminary Approval of Class Action Settlement.[1] Plaintiffs request that the Court: (1) preliminarily certify the Settlement Class and appoint class representatives and class counsel; (2) preliminarily approve the Settlement on the terms set forth in the Stipulation; (3) approve the proposed form and method of notice to the Settlement Class, and direct that such notice be disseminated; and (4) schedule a Settlement Hearing to consider final approval of the Settlement and related matters.

## I. PRELIMINARY STATEMENT

The Parties agreed to resolve this Action for $1,750,000 ("Settlement"). Plaintiffs and their counsel believe that the Settlement provides a fair, reasonable, and adequate result for investors given the significant risks of continued litigation. Plaintiffs now seek preliminary approval of the Settlement. Preliminary approval does not require the Court to determine whether it should grant final approval of the Settlement. Rather, the Court need only determine whether the Settlement is *approvable*, in that it falls within the range that the Court reasonably could approve. If the Court grants preliminary approval, Plaintiffs will provide notice to the Settlement Class, soliciting claims, objections to, and exclusions from, the Settlement. At the Settlement Hearing, with the Settlement Class Members' reactions in hand, the Court will determine whether to grant final approval of the Settlement.

To reach the Settlement, the Parties engaged in arm's-length negotiations guided by an experienced mediator. Plaintiffs and their counsel were aware that

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation and Agreement of Settlement dated August 27, 2025 ("Stipulation"), filed concurrently herewith.

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; No. 2:23-cv-6343-KK (ASx)

they faced significant obstacles if litigation were to continue, including Defendants' pending motions to dismiss, class certification, difficulties in proving loss causation and damages, overcoming Defendants' potential defenses, and the risks of prosecuting this litigation for years through trial and appeals. The Settlement provides a recovery for investors that avoids these risks and delay from further litigation.

The Court must also preliminarily certify the Settlement Class to allow for notice to be distributed to Settlement Class Members. Certification of a settlement class is routine in securities class actions, and this case is no outlier.

Lastly, the Court must approve how notice of the settlement will be communicated to Settlement Class Members ("Notice Plan") and the proposed documents that Plaintiffs will use to communicate notice – the Long Notice, Summary Notice, and Postcard Notice (together, the "Notice").[2] Here, the Notice closely tracks the forms routinely used to communicate notice in securities class actions, the Notice Plan is the same as those routinely approved in securities class actions, and satisfy the requirements of Rule 23, Due Process, and the Private Securities Litigation Reform Act of 1995 ("PSLRA").

## II.   OVERVIEW OF THE LITIGATION

### A.   Plaintiffs' Allegations

Flux Power Holdings, Inc. ("Flux Power," or the "Company") makes lithium-ion battery packs for a range of industrial and commercial sectors, primarily forklift equipment manufacturers. Flux Power's inventories consist primarily of its battery pack systems. Around 2021, the Company adopted a new battery pack design and switched its supplier. Under the Company's own accounting rules and U.S. GAAP,

---

[2] The Long Notice, Summary Notice, and Postcard Notice are attached as Exhibits A-1, A-3, and A-4, respectively, to the Stipulation. Exhibit A-2 is the proposed Proof of Claim and Release Form ("Proof of Claim").

2

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; No. 2:23-cv-6343-KK (ASx)

the Company was required to write down its excess and obsolete inventory as a loss in its financial statements.

Plaintiffs allege that Defendants made several false and misleading statements and omissions, including eleven months of false financial statements and several misleading omissions of material weaknesses in its internal control over financial reporting. Specifically, Plaintiffs allege that Flux Power's quarterly and annual financial statements for each quarter and year from FY2022 through the third quarter of FY2024 overstated inventory, gross profit, current assets, and total assets, and understated cost of sales and net loss. As a result, Flux Power would need to undertake an expensive investigation and issue restatements for each of those periods. When the full restatement was finally issued in January 2025, it revealed a cumulative overstatement of gross profits by $3.6 million, or 10.3%, and an understatement of net loss by $2.4 million, or 7.9%. Plaintiffs also allege that Defendants misleadingly omitted multiple material weaknesses in the Company's internal control over financial reporting throughout the Class Period, which contributed to the misstated financial statements and restatement.

Investors learned about Flux Power's false financial statements and internal control issues through a series of disclosures beginning in September 2024, each causing the Company's stock price to fall. The Company first announced it would need to restate its financials in September 2024, with an estimated impact of $1.7 million in overstated inventory over the prior seven quarters. A few weeks later, Flux Power revealed it would need more time to complete the restatement. In November 2024, Flux Power revealed that estimated adjustments from the restatement totaled $4.9 million, nearly three times as large as originally estimated. Plaintiffs also allege that the restatement was accompanied by a parade of suspicious executive departures, including Defendant Dutt, the Company's CEO and Chairman, Defendant Scheiwe, its CFO, and its outside auditor, Baker Tilly US

3

LLP. Finally, in late January 2025, Flux Power issued its full restatement. In February and March 2025, Flux Power further revealed that it had incurred significant expenses relating to the restatement process.

### B.     Procedural History and Settlement

On November 1, 2024, a complaint was filed against Defendants in the District of Nevada, alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. Dkt. No. 1. On January 14, 2025, the case was transferred to this Court. Dkt. No. 17.

On February 20, 2025, the Court appointed Mr. Paulson as Lead Plaintiff and appointed The Rosen Law Firm, P.A., as Lead Counsel. Dkt. No. 42. On April 21, 2025, Plaintiffs filed their Amended Class Action Complaint ("Complaint"). Dkt. No. 48. On May 12, 2025, Defendants filed their motions to dismiss the Complaint. Dkt. Nos. 49, 52. On May 27, 2025, the Court stayed the case pending a joint report on the outcome of this mediation. Dkt. No. 55.

On July 11, 2025, the Parties participated in a mediation with Robert Meyer of JAMS. Mr. Meyer has considerable experience mediating complex securities class actions such as this Action. Prior to the mediation, the Parties exchanged detailed mediation statements. After hard-fought negotiations facilitated by Mr. Meyer, the Parties ultimately accepted Mr. Meyer's proposal to settle the Action for $1,750,000. The Parties executed a Term Sheet, notified the Court (Dkt. No. 56), and thereafter negotiated and executed the Stipulation.

## III.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

Pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiffs respectfully request that the Court preliminarily certify a Settlement Class consisting of "all persons or entities who purchased publicly traded Flux Power common stock between November 15, 2021 and February 14, 2025, both dates inclusive." Stipulation ¶1.34 (defining "Settlement Class" and detailing various

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; No. 2:23-cv-6343-KK (ASx)

exclusions therefrom). Courts in the Ninth Circuit and within this District routinely certify securities class actions such as this one. *E.g., City of Birmingham Relief & Ret. Sys. v. Acadia Pharms., Inc.*, 348 F.R.D. 372 (S.D. Cal. 2024); *Ali v. Franklin Wireless Corp.*, 2023 WL 25718 (S.D. Cal. Jan. 3, 2023); *In re Qualcomm Inc. Sec. Litig.*, 2023 WL 2583306 (S.D. Cal. Mar. 20, 2023) (Ohta, J.) (certifying class based on some securities claims, but not others).

### A. The Settlement Class Satisfies Rules 23(a)

To certify a settlement class, the Court must determine that the threshold requirements of Rule 23(a) are met: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy.

### 1. Numerosity

For numerosity purposes, "classes of forty or more are considered sufficiently numerous." *In re China Med. Corp. Sec. Litig.*, 2013 WL 12126754, at *2 (C.D. Cal. May 16, 2013); *Qualcomm*, 2023 WL 2583306 at *8.[3] In securities fraud cases involving nationally traded stocks where, as here, "the exact size of the proposed class is unknown, but general knowledge and common sense indicate it is large, the numerosity requirement is satisfied." *Vinh Nguyen v. Radient Pharms. Corp.*, 287 F.R.D. 563, 569 (C.D. Cal. 2012). The Settlement Class comprises purchasers of Flux Power common stock, which traded on the NASDAQ during the Settlement Class Period with an average weekly trading volume of roughly 333,000 shares, with over 16.6 million shares outstanding. *See* Complaint ¶166(d). There are likely thousands of Settlement Class members. Thus, the Settlement Class satisfies numerosity.

---

[3] Emphasis is added and internal citations and quotations are omitted unless otherwise indicated.

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; No. 2:23-cv-6343-KK (ASx)

### 2.     Commonality

"[E]ven a single common question of law or fact that resolves a central issue will be sufficient to satisfy this mandatory [commonality] requirement for all class actions." *Acadia Pharm.*, 348 F.R.D. at 383 (quoting *Castillo v. Bank of Am., NA*, 980 F.3d 723, 728 (9th Cir. 2020)). This case involves several common questions of law and fact, including whether: (1) Defendants made materially false or misleading public statements during the Settlement Class Period; (2) Defendants acted with scienter; (3) Defendants' false and misleading statements artificially inflated the market price of Flux Power common stock during the Settlement Class Period; and (4) Settlement Class Members were damaged by Defendants' false and misleading statements. Commonality is satisfied even though the amount to which each class member is entitled will differ. *In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *6 (N.D. Cal. Oct. 27, 2015); *see also Qualcomm*, 2023 WL 2583306 at *8 (finding commonality was met where "common evidence will resolve issues central to the securities fraud claims of the entire class—whether Qualcomm made misrepresentations and the amount of Plaintiffs' damages"). Thus, the Settlement Class satisfies commonality.

### 3.     Typicality

"Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Acadia Pharm.*, 348 F.R.D. at 384. Where plaintiffs allege that they purchased the security in question and suffered damages as a result of defendants' misstatements or omissions, their claims are typical of the class. *Id.* Here, Plaintiffs purchased Flux Power common stock during the Settlement Class Period and allege that they suffered significant losses as a result thereof. *See* Dkt. Nos. 13-3 and 48-1. There is no indication that Plaintiffs' claims are atypical of those of the Settlement Class, or that unique defenses apply to Plaintiffs' claims.

6

*See Qualcomm*, 2023 WL 2583306 at *9. Thus, Plaintiffs satisfy the typicality requirement.

### 4.    Adequacy

A representative plaintiff is adequate if they have no conflicts of interest with the class and show that they and their counsel will prosecute the action vigorously on behalf of the class. *Acadia Pharm.*, 348 F.R.D. at 384. Plaintiffs signed certifications pursuant to the PSLRA and have zealously prosecuted the Action on behalf of the putative class. Dkt. Nos. 13-3 and 48-1. There are no conflicts of interest between Plaintiffs and the Settlement Class, thus Plaintiffs are adequate class representatives. *Acadia Pharm.*, 348 F.R.D. at 384; *Qualcomm*, 2023 WL 2583306 at *9.

As to the adequacy of Lead Counsel, the Court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Lead Counsel have been involved in this Action from the beginning, conducting a pre-filing investigation, filing the initial complaint, retaining an investigator to interview former Flux Power employees, filing an amended complaint, retaining a damages expert to evaluate the case, preparing a mediation statement, participating in a mediation, negotiating and formalizing the Settlement, and filing the instant motion for preliminary approval. Lead Counsel are experienced securities class action attorneys who are knowledgeable and capable of evaluating cases. Courts have consistently found Rosen Law to be well-suited as class counsel in securities class actions. *E.g., Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) ("The Rosen Law

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; No. 2:23-cv-6343-KK (ASx)

Firm is 'highly qualified [and] experienced' in securities class actions"). Lead Counsel have, and will continue to, adequately represent the Settlement Class.

### B. The Settlement Class Satisfies Rule 23(b)(3)

The Court should preliminarily certify the Settlement Class under Rule 23(b)(3), which requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members" ("predominance"), and "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" ("superiority"). Fed. R. Civ. P. 23(b)(3).

### 1. Predominance

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation," and is "readily met" in securities class actions. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) and 625 (1997). Indeed, allegations arising under the federal securities laws typically support a finding of predominance as they arise out of common questions and issues. *China Med.*, 2013 WL 12126754, at *5 ("Plaintiff's claims under federal securities laws entail nothing but common questions and issues for the class.").

Here, issues surrounding Defendants' alleged misconduct, such as whether: their statements were materially false and/or misleading; they acted with scienter; and their statements caused damages to Plaintiffs and the Settlement Class, are common to each member of the Settlement Class and predominate over all other issues. *Franklin Wireless*, 2023 WL 25718 at *5 (finding predominance met where "the elements of falsity, materiality, scienter, and loss causation present questions common to the class because they all depend on Defendants' actions, and not those of any individual class member"); *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 492 (C.D. Cal. 2006) (predominance requirement met where "many purchasers have been defrauded over time by similar misrepresentations.").

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; No. 2:23-cv-6343-KK (ASx)

Moreover, while the amount of damages may differ among Settlement Class Members, Plaintiffs contend that liability and the proper measure of damages can be determined on a class-wide basis. *In re Cooper Companies Inc. Sec. Litig.*, 254 F.R.D. 628, 640 (C.D. Cal. 2009) ("[T]he critical questions of what Defendants said, what they knew, what they withheld, and with what intent they acted, are central to all class members' claims. … Issues such as certain members' damages, timing of sales and purchases, or standing to file suit, do not have the same primacy"); *Franklin Wireless*, 2023 WL 25718 at \*5. Thus, the Settlement Class satisfies predominance.

### 2.      Superiority

For a proposed settlement class, superiority is more easily established. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial.").

Other superiority factors also support certification. As the Supreme Court recognized, "the policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem*, 521 U.S. at 617. Many of the Settlement Class Members are individuals for whom prosecution of a costly individual action for relatively minor damages is not a realistic or efficient alternative. No Settlement Class Members have brought separate claims, which would likely be consolidated into this Action. A class action avoids the duplication of efforts and inconsistent rulings. *Zynga*, 2015 WL 6471171, at \*7 (if shareholders "each brought individual actions, they would each be required to prove the same wrongdoing to establish Defendants' liability. Different courts could interpret the claims different, resulting in inconsistent rulings

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; No. 2:23-cv-6343-KK (ASx)

or unfair results."). By efficiently resolving the claims of the entire Settlement Class at once, this Action satisfies the superiority requirement. *Acadia Pharm.*, 348 F.R.D. at 395.

The Court should preliminarily certify the Settlement Class as this Action satisfies each of the Rule 23(a) and (b)(3) requirements.

### C.    Ascertainability

The Ninth Circuit has also recognized that certification of settlement classes requires "heightened attention to the definition of the class." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556–57 (9th Cir. 2019). A class definition is approvable "if the description of the class is definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member." *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998).

Here, the proposed Settlement Class is clearly defined as investors who purchased publicly traded Flux Power common stock during the Settlement Class Period. *Booth v. Strategic Realty Tr., Inc.*, 2015 WL 3957746, at *3 (N.D. Cal. June 28, 2015) (finding the class definition "satisfies the ascertainability requirement, as the class consists of individuals who purchased [company] stock within a discrete time period."). The Settlement Class definition is, therefore, suitable for certification and satisfies ascertainability.

### IV.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Public policy strongly favors settlements to resolve disputes, "particularly where complex class action litigation is concerned." *Hyundai*, 926 F.3d at 556; *In re Heritage Bond Litig.*, 2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005) ("the Ninth Circuit has a strong judicial policy that favors [approving] settlements, particularly where complex class action litigation is concerned") (citing *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; No. 2:23-cv-6343-KK (ASx)

(9th Cir. 1982) ("voluntary conciliation and settlement are the preferred means of dispute resolution.")).

Judicial approval is required to settle claims brought as a class action. The issue at preliminary approval turns on whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(e)(2) governs final approval and requires courts to determine if a proposed settlement is fair, reasonable, and adequate, in that:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Courts in the Ninth Circuit also consider the "*Hanlon* factors" in conducting a preliminary approval analysis, some of which overlap with Rule 23(e)(2): "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

The proposed Settlement satisfies each of the factors identified under Rule 23(e)(2), as well as the applicable *Hanlon* factors. It is, therefore, likely that the Court will be able to approve the Settlement as fair, reasonable and adequate.

11

### A.     Plaintiffs and Lead Counsel Adequately Represented the Class

Courts must consider whether the "class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). The Ninth Circuit requires courts to resolve two questions to determine adequacy: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members[;] and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

As set forth above, Plaintiffs and Lead Counsel have adequately represented the Settlement Class throughout this litigation. Plaintiffs have no antagonistic interests to other class members. Their claims are typical of Settlement Class Members' claims, and Plaintiffs share an interest with the other Settlement Class Members in obtaining the largest possible recovery for the Settlement Class. *Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019) ("Because Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, his interest in obtaining the largest possible recovery is aligned with the interests of the rest of the Settlement Class members.").

Moreover, Plaintiffs retained highly experienced counsel with a successful track record of representing investors in similar securities cases. *Supra*, § III(A)(4). Plaintiffs and Lead Counsel have also demonstrated their adequacy by, at all times, vigorously prosecuting the Action.

### B.     The Settlement is the Product of Arm's Length Negotiations

Rule 23(e)(2)(B) addresses whether "the [settlement] proposal was negotiated at arm's length." The use of an experienced mediator further supports satisfaction of this factor. *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; No. 2:23-cv-6343-KK (ASx)

The proposed Settlement followed hard-fought litigation and arm's length negotiations including a mediation session and subsequent discussions guided by Mr. Meyer, a mediator with extensive experience mediating securities class actions. The Parties' mediation statements presented, among other things, their respective views on the merits of the Action and issues relating to causation and damages. After a full day in-person mediation session facilitated by Mr. Meyer, the Parties reached an agreement in principle after mutually accepting a mediator's proposal. "The fact … that the Settlement is based on a mediator's proposal further supports a finding that the settlement agreement is not the product of collusion." *Lusk v. Five Guys Enterprises LLC*, 2022 WL 4791923, at *9 (E.D. Cal. Sept. 30, 2022); *Sudunagunta v. NantKwest, Inc.*, 2019 WL 2183451, at *3 (C.D. Cal. May 13, 2019) ("the Court is satisfied that the Agreement is not the product of collusion between the parties. The Agreement is the outcome of an arms-length negotiation conducted with the help of an experienced mediator, Robert Meyer").

### C.      The Relief Provided to the Settlement Class is Adequate

The Court must also consider whether "the relief provided for the class is adequate, taking into account … the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C)(i). This requirement incorporates three of the traditional *Hanlon* factors: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; and the risk of maintaining class action status through the trial. *Wong v. Arlo Techs., Inc.*, 2021 WL 1531171, at *8 (N.D. Cal. Apr. 19, 2021). These factors support preliminary approval of the Settlement.

### 1.      The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Continued Litigation

In assessing whether the Settlement is fair, reasonable, and adequate, the Court must balance the continuing risks of litigation, including the strengths and

13

weaknesses of the case, and the complexity, expense, and likely duration of continued litigation, against the benefits afforded to the Settlement Class, including the immediacy and certainty of a financial recovery. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458, 459 (9th Cir. 2000), *as amended* (June 19, 2000).

Here, the risks of continued litigation are considerable. "Courts have recognized that, in general, securities actions are highly complex and that securities class litigation is notably difficult and notoriously uncertain." *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020). Defendants deny any wrongdoing and would present a multi-pronged defense. Defendants' motions to dismiss the Complaint, focusing the entirety of two briefs on the adequacy of Plaintiffs' scienter allegations, were still pending. Plaintiffs and Lead Counsel believe that the case has merit, but they recognize the significant risk and expense that would be necessary to prosecute Plaintiffs' claims successfully through the pleading stage, completion of fact and expert discovery, class certification, summary judgment, trial, and subsequent appeals, as well as the inherent difficulties and delays complex litigation like this entails. *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 612 (S.D. Cal. 2008) (preliminarily approving settlement where "[l]iability remains uncertain" as "it appears to the Court that plaintiffs have a viable claim regarding the alleged securities fraud and Defendants have a viable defense against such claims"); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) (approving settlement and noting that "the Court also recognizes that the issues of scienter and causation are complex and difficult to establish at trial.").

Proving loss causation and damages would also be risky, complicated, and uncertain, involving conflicting expert testimony. *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 260–61 (D.N.H. 2007) ("Proving loss causation would

14

be complex and difficult. Moreover, even if the jury agreed to impose liability, the trial would likely involve a confusing 'battle of the experts' over damages.").

Even if Plaintiffs were to prevail at the pleading stage, continuing to litigate this Action would likely require extensive document discovery, depositions of numerous witnesses, submitting expert reports and testimony, overcoming motions for summary judgment, and an expensive and risky trial. Any favorable judgment for the Settlement Class would be subject to post-trial motions and appeal, which could prolong the case for years without certainty of the outcome. By contrast, the Settlement provides a favorable, immediate and guaranteed recovery and eliminates the risk, delay, and expense of continued litigation. While a greater recovery might be a theoretical possibility, evaluating the benefits of settlement must be tempered by recognizing that any compromise involves concessions on the part of all parties. "The very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Officers for Justice*, 688 F.2d at 624.

Thus, the Settlement resulted from balancing the risks, costs, and delay inherent in complex cases. The benefits created by the Settlement weigh heavily in favor of granting the motion for preliminary approval. Considering the risks of continued litigation and the time and expense that would be incurred to prosecute the Action through a trial, the $1,750,000 Settlement is a reasonable and adequate recovery. *Salazar v. Midwest Servicing Grp., Inc.*, 2018 WL 3031503, at *6 (C.D. Cal. June 4, 2018) (settlement agreement's elimination of risk, delay, and further expenses weighs in favor of approval).

**2.      Risk of Maintaining Class Action Status Through Trial**

The Settlement was reached before Plaintiffs moved for class certification. While Plaintiffs believe that class certification would be appropriate (*see* §III, *supra*), it cannot be assured, and Defendants could attempt to alter or amend a class certification order. *See In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 694

15

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; No. 2:23-cv-6343-KK (ASx)

(S.D.N.Y. 2019) ("Although the risk of maintaining a class through trial is present in [every] class action ... this factor [nevertheless] weighs in favor of settlement where it is likely that defendants would oppose class certification if the case were to be litigated."); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("there is no guarantee the [class] certification would survive through trial, as Defendants might have sought decertification or modification of the class").

### D.    The Remaining Rule 23(e)(2)(C) Factors Support Approval

Rule 23(e)(2)(C)(ii)-(iv) requires courts to consider whether the relief provided for the class is adequate. These factors support approving the Settlement.

### 1.    The Methods of Distributing Relief and Processing Claims

The method for distributing relief to eligible claimants and for processing Settlement Class Members' claims includes standard and effective procedures for processing claims and efficiently distributing the Net Settlement Fund. Plaintiffs request that the Court appoint Strategic Claims Services ("SCS") as Claims Administrator. If SCS is appointed it will, under Lead Counsel's guidance, provide notice of the Settlement, process Claims, allow Claimants an opportunity to cure any deficiencies or request the Court to review a denial of their Claim(s), and pay Authorized Claimants their *pro rata* share of the Net Settlement Fund pursuant to the Plan of Allocation ("Plan") set forth in the Long Notice. The method proposed here is both effective and necessary, as neither Plaintiffs nor Defendants possess the individual investor trading data required for a process to distribute the Net Settlement Fund.

### 2.    Proposed Attorneys' Fees

The Notice explains that Lead Counsel will apply for attorneys' fees of up to one third of the Settlement Fund. When Plaintiffs move for final approval of the Settlement, Lead Counsel will make a separate application for attorneys' fees and expenses, to be heard by the Court during the Settlement Hearing. For the purposes

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; No. 2:23-cv-6343-KK (ASx)

of preliminary approval, even the maximum amount of fees that Lead Counsel will seek is reasonable. An award of attorneys' fees of up to one third of the Settlement Fund is reasonable and consistent with the fees awarded in similar actions in this Circuit. *E.g., Mego*, 213 F.3d at 463 (affirming fee award of one-third of $1.725 million settlement); *Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *10 (C.D. Cal. Oct. 10, 2019) (awarding one-third of $2,050,000 settlement fund where settlement was reached as a motion to dismiss was still pending); *In re Audioeye, Inc., Sec. Litig.*, 2017 WL 5514690, at *4 (D. Ariz. May 8, 2017) (awarding fees of one-third of $1,525,000 settlement). Lead Counsel have received no compensation for their work on this Action to date, and will not until the Court issues an order awarding attorneys' fees following the Settlement Hearing.

### 3.    Other Agreements

The Parties also executed a standard supplemental agreement providing that if Settlement Class Members opt out such that the number of shares held by those persons reaches a certain threshold, Defendants may terminate the Settlement. Stipulation ¶10.3. The terms of the supplemental agreement are kept confidential to avoid incentivizing Settlement Class Members to opt out solely to leverage the threshold to exact an individual settlement, and does not detract from the fairness of the Settlement. *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018) ("a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair.") *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019) ("This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement.").

17

### E.  The Proposed Settlement Does Not Unjustly Favor Any Settlement Class Member, Including Plaintiffs

Courts must also evaluate whether the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e)(2)(D). The Settlement does not offer preferential treatment to any Settlement Class Member, including Plaintiffs. The Plan is set forth in the Long Notice and provides for a *pro rata* distribution of the Net Settlement Fund to Authorized Claimants who suffered losses as a proximate result of the alleged fraud, based on when each investor purchased and/or sold Flux Power common stock. The Plan was developed by Lead Counsel in conjunction with SCS and Plaintiffs' consulting damages expert. The Plan treats all Settlement Class Members, including Plaintiffs, equitably based upon the relative losses they sustained. *See Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014) (a plan of allocation is reasonable "if it fairly treats class members by awarding a pro rata share to every Authorized Claimant, but also sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue.").

Plaintiffs will also seek awards reimbursing them for costs incurred and time spent representing the Settlement Class, as authorized by the PSLRA. *Mego*, 213 F.3d at 454 (affirming reimbursement to class representative in securities class action settlement). Such awards do "not constitute inequitable treatment of Settlement Class Members." *In re Stable Road Acquisition Corp.*, 2024 WL 3643393, at *8 (C.D. Cal. Apr. 23 2024).

18

### F.    The Remaining Ninth Circuit Factors Favor Approval

In *Hanlon*, 150 F.3d 1011, the Ninth Circuit identified additional factors not co-extensive with Rule 23(e)(2). These factors support preliminary approval.[4]

### 1.    The Amount Offered in Settlement

"To evaluate the adequacy of the settlement amount, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Hefler*, 2018 WL 6619983, at *8. The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987); *Vikram v. First Student Mgmt., LLC*, 2019 WL 1084169, at *3 (N.D. Cal. Mar. 7, 2019) ("This determination requires evaluating the relative strengths and weaknesses of the plaintiffs' case"). Evaluation of a settlement must recognize that parties must make compromises to reach an agreement. *Officers for Justice*, 688 F.2d at 624.

The $1.75 million Settlement Amount is reasonable and warrants preliminary approval. The Settlement recovers approximately 19.0% of the maximum estimated damages of $9.2 million under Plaintiffs' ***best-case scenario***, as estimated by Plaintiffs' damages expert. This best-case scenario assumes that: (i) Plaintiffs defeat Defendants' motions to dismiss; (ii) are able to succeed at summary judgment and at trial; (iii) the Court certifies the case as a class action, including the same class period as the Settlement Class Period; and (iv) the Court and jury completely accept Plaintiffs' damages theory, including proof of loss causation for each of the six alleged declines in stock price. Anything less than a complete victory would decrease, or potentially eliminate, recoverable damages. Moreover, Defendants

---

[4] Before notice of the Settlement is disseminated, it is not possible to gauge the reaction of the class. Plaintiffs, however, support the Settlement.

19

estimated that the maximum aggregate damages Plaintiffs could recovery in their best-case scenario was only $7.0 million, in which case the Settlement represents a 25.0% recovery.

The percentage of maximum damages recovered here (19.0% or 25.0%) falls well within the range of other securities class action settlements that courts have approved. *See In re Regulus Therapeutics Inc. Sec. Litig.*, 2020 WL 6381898, at *6 (S.D. Cal. Oct. 30, 2020) (approving 1.99% recovery); *In re Heritage Bond Litig.*, 2005 WL 1594389, at *8-9 (C.D. Cal. June 10, 2005) (average recovery between 2% to 3% of maximum damages); *see also Officers for Justice*, 688 F.2d at 628 ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair."). It is also comparable to the median recovery in similarly sized securities cases. According to Cornerstone Research, between 2015-2023 the median recovery in cases such as this one alleging Rule 10b-5 claims with less than $25 million in maximum estimated damages was approximately 20.0%. Laarni T. Bulan, *et al.*, *Securities Class Action Settlements: 2024 Review and Analysis* (Cornerstone Research), at 7.[5] Between 2015-2024, securities class actions that settled after the filing of a motion to dismiss but before a ruling recovered a median of 5.8% of estimated damages. *Id*. at 14.

### 2.    The Extent of Discovery and Stage of Proceedings

In considering a class action settlement, courts look for indications that the parties carefully investigated the claims before reaching a resolution. *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2016 WL 6248426, at *13-14 (N.D. Cal. Oct. 25, 2016) (discovery is "not a necessary ticket

---

[5] *Available at* https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2024-Review-and-Analysis

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; No. 2:23-cv-6343-KK (ASx)

to the bargaining table where the parties have sufficient information to make an informed decision about settlement").

Lead Counsel conducted an extensive investigation of the claims asserted in this Action, including: (i) reviewing Flux Power's SEC filings, press releases, conference calls, and other public statements during the Settlement Class Period; (ii) reviewing public documents, reports, announcements, and news articles concerning Flux Power, including research reports by securities and financial analysts; and (iii) retaining an investigator to identify and interview former Flux Power employees and knowledgeable third parties.

Lead Counsel's efforts allowed them to make an informed assessment of the strengths and weaknesses of this Action, essential to recommending to Plaintiffs whether to accept the Settlement Amount to resolve the Action. Reviewing Defendant's mediation statement and negotiating the Settlement at the mediation further informed Lead Counsel about the strengths and weaknesses of the case. As a result, Plaintiffs and Lead Counsel had an ample understanding of the merits and weaknesses of this Action and the reasonableness of the Settlement.

### 3.   Experienced Counsel's Recommendations

Courts also give weight to the opinion of experienced and informed counsel supporting the settlement. *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation"). As set forth above, Lead Counsel have extensive securities litigation experience and obtained a thorough understanding of the merits and risks of the Action. Lead Counsel's support for the reasonableness of this Settlement supports preliminary approval.

Defendants were also represented by experienced and skilled securities practitioners. The attorneys at Wilson Sonsini Goodrich & Rosati, P.C. and Wilson

21

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; No. 2:23-cv-6343-KK (ASx)

Elser Moskowitz Edelman & Dicker LLP vigorously represented their clients and were equally well-informed regarding the case. Because the Settlement is the product of serious, informed, and non-collusive negotiations among experienced counsel and a highly qualified mediator, preliminary approval is warranted.

## V. THE COURT SHOULD APPROVE THE NOTICE PLAN

**The Notice Plan is Adequate:** Rule 23(e) requires that notice of the Settlement be provided to Settlement Class Members in such manner as the Court directs. The proposed Notice Plan includes: (1) emailing links to the Long Notice and Proof of Claim, or if no email address can be obtained, mailing the Postcard Notice, to Settlement Class Members who can be identified with reasonable effort; (2) posting the Long Notice, Proof of Claim, and Stipulation on a Settlement website maintained by SCS; (3) allowing Settlement Class Members to submit their claims electronically at the Settlement website; (4) upon request, mailing copies of the Long Notice and/or Proof of Claim; and (5) publishing the Summary Notice over *GlobeNewswire* and in *Investor's Business Daily.*

This proposed notice plan is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Courts routinely find these methods of notice sufficient. "The use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 n.3 (S.D.N.Y. 2014) (collecting cases); *Baker v. SeaWorld Ent., Inc.*, 2020 WL 818893, at *2–*3 (S.D. Cal. Feb. 19, 2020) (approving similar notice program). Defendants will also provide notice pursuant to the Class Action Fairness Act, 28 U.S.C. §1715 *et seq.*; Stipulation ¶5.5.

**The Notice is Adequate:** As required by Rule 23(c)(2), the Notice will inform Settlement Class Members of the claims alleged in the Action, the terms of

22

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT; No. 2:23-cv-6343-KK (ASx)

the Settlement, and the right of Settlement Class Members to opt out or object to the Settlement, Plan, and/or the proposed attorneys' fees and expenses. The Ninth Circuit has held that "[n]otice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009). Moreover, the proposed notice program satisfies due process because it includes both individual notice and general publication. *See, e.g., In re Marsh & McLennan Companies, Inc. Sec. Litig.*, 2009 WL 5178546, at *23–24 (S.D.N.Y. Dec. 23, 2009).

The proposed Long Notice includes all of the information required by the PSLRA, Federal Rules of Civil Procedure, and due process. The proposed Long Notice provides, in plain wording: (a) the rights of Settlement Class Members, including the manner in which they may lodge objections or request exclusion and instructions on how to complete and submit a Claim Form to the Claims Administrator; (b) the nature, history, and status of the litigation; (c) the proposed Settlement Amount; (d) a description of the proposed Plan; (e) the maximum attorneys' fees and expenses and awards to Plaintiffs to be sought by Lead Counsel; (f) the definition of the Settlement Class; (f) the reasons the Parties have proposed the Settlement; (h) the estimated distribution per damaged share; (i) a description of the Settlement Class's claims; (j) the Parties' disagreement over damages and liability; (k) contact information for all counsel and the Court; and (l) the time, date, and location of the Settlement Hearing. *See* 15 U.S.C. § 78u-4(a)(7)(A)-(F).

Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Fed. R. Civ. P. 23(h)(1). The Notice alerts Settlement Class Members that Lead Counsel will apply to the Court for attorneys' fees of up to one third of the Settlement Amount, reimbursement of litigation expenses of up

to $75,000, and awards to Plaintiffs of up to $7,500 each, or $15,000 in total, all to be paid from the Settlement Fund. Accordingly, the Notice Plan and the Notice each satisfy the requirements of the Federal Rules of Civil Procedure, the PSLRA, and due process.

## VI.    PROPOSED SCHEDULE OF EVENTS

Plaintiffs propose the following procedural schedule, which tracks those used in similar securities class action settlements and provides due process for potential Settlement Class Members with respect to their rights concerning the Settlement. If this schedule is not convenient for the Court, Plaintiffs request the Court use the same or greater intervals between each event listed to allow sufficient time to comply with the Preliminary Approval Order.

| Event | Deadline for Compliance |
|---|---|
| Date for the Settlement Hearing. | At least 100 days from entry of the Preliminary Approval Order (Preliminary Approval Order ¶6) |
| Mailing the Postcard Notice and/or emailing links to Long Notice and Proof of Claim. | Within 20 Business Days after entry of Preliminary Approval Order (¶15) |
| Posting the Stipulation, Preliminary Approval Order, Long Notice, and Proof of Claim on the Settlement website. | Within 16 days after entry of Preliminary Approval Order (¶18) |
| Publication of the Summary Notice. | Within 10 days after mailing the Postcard Notice/emailing links to the Long Notice and Proof of Claim (¶19) |
| Plaintiffs to file papers in support of the Settlement, the Plan, and motion for attorneys' fees and expenses. | No later than 28 days prior to Settlement Hearing (¶30) |
| Deadline for requests for exclusion and for objections | No later than 21 days prior to Settlement Hearing (¶¶23, 27) |
| Deadline for Proof of Claims. | No later than 30 days prior to Settlement Hearing (¶21(a)) |

24

| | |
|---|---|
| Plaintiffs to file reply papers in support of the Settlement, the Plan, and application for attorneys' fees and expenses. | No later than 7 days prior to Settlement Hearing (¶31) |

## VII.   CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' unopposed motion and enter the proposed Preliminary Approval Order.

Respectfully submitted,

Dated: August 28, 2025

**THE ROSEN LAW FIRM, P.A.**

By: */s/Joshua Baker*
Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226 4684
Email: lrosen@rosenlegal.com

Phillip Kim (*pro hac vice*)
Joshua Baker (*pro hac vice*)
275 Madison Ave., 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: philkim@rosenlegal.com
Email: jbaker@rosenlegal.com

*Lead Counsel for Plaintiffs and the Settlement Class*

**BRAGAR EAGEL & SQUIRE, P.C.**
Melissa A. Fortunato (SBN 319767)
fortunato@bespc.com
Marion C. Passmore (SBN 228474)
passmore@bespc.com

25

515 South Flower Street, Suite 1800
Los Angeles, California 90071
Telephone: (213) 612-7735
Facsimile: (212) 214-0506

*Additional Counsel for Plaintiff
Thomas Frank Clark*

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT; No. 2:23-cv-6343-KK (ASx)