UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

```
_____ )
ASFA KASSAM, Individually and ) CASE NO.:  25-CV-00113-JO-DDL
on behalf of all others          )
similarly situated,              )
                                 )
                    Plaintiff,   )
                                 )
                                 )
            v.                   )
                                 )
FLUX POWER HOLDINGS, INC.,       )
RONALD F. DUTT, and CHARLES A.   )
SCHEIWE,                         )
                                 )
                    Defendants.  )
_____ )
                                 )
RONALD PEARL, derivatively on    ) CASE NO.:  25-CV-00373-JO-DDL
behalf of FLUX POWER HOLDINGS,   )
INC.,                            )
                                 )
                    Plaintiff,   )
                                 )
            v.                   )
                                 )
RONALD F. DUTT, CHARLES A.       ) SAN DIEGO, CALIFORNIA
SCHEIWE, MICHAEL JOHNSON, MARK   )
LEPOSKY, DALE T. ROBINETTE,      ) DEPARTMENT 4C
LISA WALTERS-HOFFERT, and        )
CHEEMIN BO-LINN,                 ) 9:30 A.M. CALENDAR
                                 )
                    Defendants,  ) THURSDAY, OCTOBER 23, 2025
                                 )
       and                       ) MOTION HEARINGS
                                 )
FLUX POWER HOLDINGS, INC.,       )
                                 )
            Nominal Defendant.   )
_____ )
```

REPORTER'S TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JINSOOK OHTA
UNITED STATES DISTRICT COURT JUDGE

PAGES 1 THROUGH 22

2

APPEARANCES:

For Asfa Kassam,
Individually and on
behalf of all others
similarly situated:        THE ROSEN LAW FIRM, P.A.
                           275 Madison Avenue, 40th Floor
                           New York, New York 10016
                           BY:  PHILLIP KIM, ESQ.
                                ATTORNEY AT LAW

For Ronald Pearl:          GAINEY McKENNA & EGLESTON
                           260 Madison Avenue, 22nd Floor
                           New York, New York 10016
                           BY:  STEPHEN J. McKENNA, ESQ.
                                ATTORNEY AT LAW

For Charles Scheiwe:       WILSON ELSER
                           401 West A Street, Suite 1900
                           San Diego, California 92101
                           BY:  NATHAN BEAR, ESQ.
                                ATTORNEY AT LAW

For Flux Power Holdings, Inc.,
Ronald F. Dutt,
Michael Johnson, Mark Leposky,
Dale T. Robinette,
Lisa Walters-Hoffert,
Cheemin Bo-Linn:
                           WILSON SONSINI GOODRICH & ROSATI
                           650 Page Mill Road
                           Palo Alto, California 94304
                           BY:  BENJAMIN MATTHEW CROSSON, ESQ.
                                ATTORNEY AT LAW

Court Reporter:

CRISTINE R. GERONGCO, RPR, CCG, CCR, CVR-S, CSR 13517
U.S. OFFICIAL COURT REPORTER
U.S. District Court Clerk's Office
333 West Broadway, Suite 420
San Diego, California 92101

*Reported stenographically; transcribed with CAT software.*

THURSDAY - OCTOBER 23, 2025                              9:54 A.M.

P R O C E E D I N G S

--- oOo ---

THE CLERK:  Calling matters 4 and 5 on calendar. Number 4 on calendar, 25-cv-0113, Kassam, et al. v. Flux Power Holdings, Inc., et al., for a motion hearing.

And number 5 on calendar, 25-cv-0373, Pearl v. Flux Power Holdings, Inc., et al., for a motion hearing.

THE COURT:  Okay.  Good morning.

So we'll take appearances from Plaintiff's side first.

MR. KIM:  Good morning, Your Honor.

Phillip Kim, Rosen Law Firm, for Plaintiffs in the class action.

MR. McKENNA:  Good morning, Your Honor.

Thomas J. McKenna for Mr. Pearl in the derivative action.

THE COURT:  Okay.

And for Defendants?

MR. CROSSON:  Good morning, Your Honor.

Ben Crosson of Wilson Sonsini for all the Defendants except for Mr. Scheiwe.

MR. BEAR:  Good morning, Your Honor.

Nathan Bear from Wilson Elser for Charles Scheiwe, Defendant.

THE COURT:  Okay.  Good morning, everybody.

You can be seated.

So the Court has reviewed the preliminary approval paperwork on both sides, and looking at that in terms of the bigger questions of -- I'm going to take the securities class action first -- in terms of the bigger questions of is this a certifiable class?

Is this a fair and reasonable settlement that treats the class members equally?

Was this the product of a arm's length negotiation?

The Court is tentatively inclined to agree with you on all of those things.

Same thing with the shareholder derivative action, there seems to be great value in those injunctive terms because they go to the heart of and satisfy the underlying allegations or the underlying concerns that led to the litigation in the first place, which is the accounting practices, the misrepresentation of what the accounting shows, and the lack of internal controls.

And the Court agrees that the litigation had a role -- had a significant role in affecting this change, and that the settlement is appropriate and provides meaningful relief.

However, I wanted to focus -- so this is me telling you that, tentatively, I'm in agreement with approving the substance of the settlement on both ends, both the class action and the derivative action.

However, the discussion I wanted to have today is about the mechanics of notice, because that also is part of the Court's lookout when it is asked to preliminary approve a class settlement, which is to ensure these protections on behalf of the class that is absent here, and make sure that the class rights are protected despite the fact that the parties themselves have reached an agreement.

So here are my questions with regard to -- here are my questions with regard to the notice portion of things, which is -- first of all, I see that there are different timelines for the derivative action and the class action.

And we have different timelines in a situation where the substance of the two settlements in terms of the factual nucleus are, I believe, identical.

And we have a class that is definitely not identical, because the class action reaches anyone whose shared trading prices were affected by the artificial inflation of the stock price.

And the derivative action only impacts the current shareholders.

This is definitely a large Venn diagram overlap.

Or, to put it more simply, the derivative class is going to be a subset of the shareholder class.

And so in that situation where there is that significant overlap, I'm seeing different timelines, and I'm also seeing

different notice structures.  And I see the notice structures, and what I mean by that is in the class action I see efforts to reach the people on an individual basis through their email and/or their mailing addresses in a way that I don't see in the derivative action.

And so given that we have this overlapping -- we're not talking about two wholly separate groups of people, we're not talking about a situation where it wouldn't make sense just to have the same time frame and piggyback off of the more robust structures set up and envisioned for the securities class, and have the derivative class benefit from that as well.  That is my first big picture question, which is why not get the same notice to the derivative class as envisioned by the securities class, and why not give them the benefit of that same timeline?

And then I also had concerns about the ease of opting out.

In the securities class, we have set up a structure where you can electronically make claims, but in order to opt out, you need to -- even though your information may be coming to you electronically -- and I think with the way that it's shaking out, most of the reach-out is going to be done electronically -- there's going to be the website, and there's also going to be -- there's a website, and then there's a website that the class members are directed to in order to

make the claim.

And then there is email notification.

And so when the reach-out is done electronically, and if anyone is engaging with this, they'll be engaging with it electronically.

The Court finds that it is a artificial barrier to then create a need for that set of people, if they wish to opt out, if they can just sit there and click through the link and fill out the fields to make a claim, they should be able to do that to opt out.  There shouldn't be this imposition of this additional hurdle of, like, now you have to Word process a letter, stick it in an envelope, actually have stamps on hand, which many people going about their regular daily lives, unless it's holiday time and for cards, most people do their banking and all their financial transactions electronically at this point.  And so that seems to be an additional unnecessary hurdle.

I also had additional questions about -- and this, the Court acknowledges it may be the type of situation where everyone in the room knows that there's an obvious answer to this, but the Court doesn't know, and I'm the one who has to decide whether these notice provisions are fair and adequate, which is the choice of the publications.

I would appreciate being informed why it was those publications.

Are those the ones that are of widest circulation among -- widest circulation or popularity among institutional investors?  Among lay investors?  What went into that?

And, again, this is where the caveat comes in where everyone in this field may already know, but you want to put that in your showing to me so that I can satisfy myself that the notice structures are the ones that are adequately and reasonably designed to reach a great swath of people, even though it doesn't have to reach every last person.

I also would like to understand what the reasonable efforts are that are going to be made to locate the email addresses, and failing that the mailing addresses of the -- of the individuals, and that is also information that I don't think I have.

And if it's something that I've overlooked, please just let me know.

But if I don't already have it, I'd like to know what those reasonable efforts are.

And then, finally, there was one additional question that I had.  I'll circle back to it.  I'll circle back to it.

And then, now, if you'll give me a few minutes.

And the reason why I'm just rattling off my concerns and questions is because of -- is because of this:

I'll give the parties an opportunity to address or make argument that what I'm about to propose is not necessary or is

impracticable or undesirable for other reasons, but my tentative is to have -- my tentative at this point is to have the parties come back.

Again, understanding that right now I have no quarrel with the substance, the certifiability of the class, or the substance of the fairness or the arm's length nature, all of that, of the substance of the settlement.

But I would like the parties to come back and propose to me a notice structure that is more robust and uniform with regard to the derivative class in that they also can benefit from the individual notice.

And same thing with the timelines.  Put this on a more uniform timeline so that -- basically, so that largely the same group of people can get their information -- for the people that are going to get this information twice, it would be helpful for them to just get it in one place and know, okay, I have these twin options of do I need to object on behalf of the company and, also as a shareholder myself, do I want to claim this money and opt out and preserve my right to bring my own individual actions?

So I'd like to see another offer, basically, from the -- from all the parties in the room, which is why I called these matters simultaneously, about that more uniform, and in terms of the derivative class, a more robust notice structure and a proposal, then, for me that answers some of these

questions that I don't have right now about why these publications and -- oh, this was my additional follow-up question that I forgot earlier.

So what does it mean to publish once?

How -- when you publish it one time, what does that mean about how long it is available in the public sphere?

Because I believe the information I have is that you're going to do this one time, but that gives me very little information about so can someone see that for 24 hours?

Does that just mean you're going to publish it one time, but it's going to stay up there for the duration?

And that's with regard to the publications.

Also, I'm going to note for the benefit of the parties that I know the approval of the attorney's fees is not -- in both actions -- is not currently before me.

But when you make that motion for approval, I'm going to want to see the lodestar calculation.

If you're asking me for something that's a deviation from the Ninth Circuit benchmark, I'm going to want to see justification for that and all the things that are going to go into a robust scrutiny in terms of approving those fees.

When you propose to me something that has the individual notice for the derivative class, I'm guessing that that also is going to involve having to develop some kind of short-form notice as well, unless it's just going to be a -- actually, I

think it is going to have to require some kind of short-form notice, because it would be insufficient to just say, "Please see this link," in which case most people at that point will think it's spam and delete it and be afraid that their computer's going to be hijacked.

So this is why I'm proposing at this point, with the noting of those issues, that you come back to me with a -- with an alternate package for approval.

Hold on for just one second.

**(Pause in the proceedings.)**

**(The Court and the clerk confer.)**

**THE COURT:**  Okay.  Thank you, Counsel.

And, finally, in looking at the PSLRA requirements -- and now this is for the class, I'm looking at the list of items mandated for disclosure, and one of them includes the average damages per shares that would be recoverable if Plaintiff prevailed on each claim alleged.

So I see the rest of -- it's a test that goes -- it's a several-factor test, and I see in terms of those PSLRA requirements that all of those have been met except for that one piece, and I'm not seeing it there in the notice.

So if you can take a second look at that and make sure to include it.

So like I said, the more robust structures for the derivative class, the ability to electronically opt out

straight from the administrator website.

Obviously, for the derivative class, the objections do need to be made directly to the clerk of the court, because those are court filings.  And everything else that I noted.

So if the parties are in agreement that you can talk about it and propose to me something else that addresses these questions or concerns, or if you would like to present to me argument as to why you shouldn't have to do it this way, I'll take that right now.

**MR. KIM:**  Yes, Your Honor.  If I could be heard on sort of the issue of combining notices.  I don't -- should I step up to the lectern?

I would suggest that the Court would refrain from doing that.  I think we've tried this in the past with other cases because it's not unusual for there to be a class action and a derivative case.

And in those instances, I don't think I've ever seen a case that has combined both the class and derivative notices, and here's why, Your Honor:  Both cases are fundamentally different.  Right.

In a class action, we're representing investors seeking mon- --

**THE COURT:**  No, I understand the distinction.

**MR. KIM:**  Okay.

**THE COURT:**  So how about this:  So combining notice,

if you think that's confusing, but my more fundamental concern is that there is less of a robust notification effort when it comes to the derivative class.

And so are you suggesting that, yes, we can email the derivative class as well, but that it should be two separate emails because it's more confusing to the class members; is that what you're saying?

MR. KIM:  I think, Your Honor, that that would be one reason to keep the notice program separate.  I think the requirements for notice under a class action's governed by a separate statute of PSLRA, which the Court has talked about, and that is why we have the individual email notices, that's why we published notice, that's why we do claim forms and provide all that information that's required.

On the derivative side -- and Mr. McKenna can speak toward his case -- but ordinally, there's no mechanism to opt out, right.  The only mechanism there is to object with respect to a settlement because a relief goes to the company not necessarily the shareholder.

Now, the Court did say that there might be some overlap as to class members in our case and in the derivative case, but there's certainly going to be swaths of people that are not class members in our case, right, because the derivative action, you have to be a continuous shareholder.  So it could be someone as of today.  Our class period is set.  And there

could be people in our class that are obviously not members of the derivative side because they're not current shareholders. So I think that's separate.

And I think if we combined the notice programs and use our own claims administrating a class action, that's going to create administrative issues, right.  How do you allocate those costs between our case and their case?

Just a practical issue.

Also, investors could be confused, you know.

They may -- they may see the derivative notice, try to submit claims in that notice.

They may not submit claims in our notice because a derivative claim say all you can do is object.  Maybe they don't know how to opt out.

So I think, you know, in most of these cases, you know, where there is a derivative case, oftentimes the derivative action and the class action settle around the same time.

And we found that we haven't had any issues of investors being confused, right, because they're all separate.  We haven't had a situation where you have a derivative plaintiff objecting in the class action, or you haven't had a class action class member objecting a derivative.

THE COURT:  So, okay.  So agreed that we shouldn't combine them, but I'm still going to require that they be reached in the same way.  And what I mean by that is to

require that the derivative class also be reached by the same email/mail efforts.  And then, of course, included in that is describing for me what those reasonable efforts are.

MR. KIM:  Understood, Your Honor.  I can't speak for what the logistics of that -- I'll leave that to the derivative folks.

The only issue that I would raise is that if those email -- because oftentimes when email notice is provided, the claims administrator will contact various custodians who will then forward the emails at a cost.

So if they were required to send additional emails, it would be additional costs for that notice program.  So I just raise that as a potential issue.  That, you know, certainly would be dealt with on the derivative side.  Obviously, the class wouldn't pay for that because it's part of their case.  So there would be issues like that.

THE COURT:  Okay.  Understood.  Thank you, Counsel. Anything else?

MR. KIM:  Oh, the one thing I -- I'd like to answer some of the questions the Court had about the notice and that the Court had, if you 'd like to hear.

THE COURT:  You know, I -- I'd like to see those -- I'd like to -- because I'm going to require a second round of submissions.

MR. KIM:  Okay.

**THE COURT:** And so whether or not you tell me right now, it's gonna need to be part of the record as a part of the basis of the Court's ruling. So it suffices just to tell me at that point to give me that information on the publications that you suggested are the gold standard for what reaches investors. It was something that -- it was something that I would have assumed anyway, but I just need it in the record, and I need to know it as opposed to just guessing that that may be why, because it may not be that those are the reasons why those publications were selected.

So, yes, I would love those answers to those questions, but I'd like them in the submissions.

**MR. KIM:** Understood, Your Honor.

**THE COURT:** Okay.

Any other objections to the Court's tentative plan?

**MR. McKENNA:** Just briefly, Your Honor. One thing I did want to point out to Your Honor so you can think about it, in the class case, the cost of the notice is paid from the settlement fund because the individual class members have a chance to claim money.

In the derivative case, since the benefit goes to the company, the company has stipulated that they will pay the cost of notice, and that's why we suggested a different notice plan, because the shareholders' only mission is to decide do they want to object to the benefit that was produced or object

to the fee that we might seek?  But other than that, they don't -- they don't have any say.  It's simply an objection.

And sending out emails and making a notice, as complicated as it is for people who are trying to claim a share of money, is going to put a burden now on the company to figure out how to pay for these emails, which could be confusing because they -- they -- now they might be getting two emails, and they have to develop these emails because a lot of these stockholders are, you know, just holding their accounts in brokerage accounts.

So that's usually what a claims administrator does. They're good at that.  They're good at, you know, trying to develop these addresses, but they're paid for it from the settlement fund.

Here, there's no pot of money to pay for that kind of stuff on the derivative side.  So that's an issue.  That's why we often do the notice this way, and the courts have approved it in the past by a publication, either in Investors Business Daily, which is considered the gold standard -- but we could submit information to Your Honor about that, or post it on the Internet.

My understanding is it stays on the Internet pretty much forever.  If you type in "Flux Power" or the symbol, it brings up news articles, including, "Hey, there's a settlement of a class case.  Hey, there's a settlement of a derivative case."

The notice that we would propose, and we agreed with the company to put out, would have a link to the company's investors relation page where all of our settlement documents would be posted, including the notice.  And it would also have a link to an 8-K that went out to the SEC, and then any current stockholder can look up on EDGAR and see what's going on.

So that's how our notice would, I believe, stay  alive forever and contains those two links until Your Honor would grant final approval.

So with respect, I don't know that the email is a good idea on this side because it's just going to increase the cost to the company, and we're trying to bring a benefit to the company.  So I would vote no on that if I had a vote.

And then, lastly, as far as the timing, we could get our work done sooner than they do, because they have to do the significant mailing to individuals.  We're posting it on the Internet in various ways.  And we could come back to Your Honor sooner, but we could also come on the same timeline too if that -- if that has a benefit.  We would just have to be on their timeline because they need more time than we do.

I'm fine with that if the company's fine, but the company might have a reason why they want to get -- finish with us first and do them second.  But I'm indifferent to that if that's helpful.

THE COURT:  Okay.  Thank you.  I appreciate it, Counsel.  And I appreciate that this creates burdens and questions about who's paying for it.

The reason -- I'm fully aware of the differences between a shareholder action with opt-out rights and money-claiming rights as opposed to a derivative action where your only opportunity is to object to the settlement.

However, what I do find is a commonality between those two actions, is that there is a real extinguishment of rights and claims.  So this ability to bring another shareholder derivative action, the fact that that is going to be released and extinguished and that -- just to talk in a colloquial way -- that this is going to be their one and only chance to object and weigh in on this type of settlement, that that information does need to reach the shareholders.

And while the specific PSLRA requirements don't govern, the Courts are still required to meet the Rule 23 requirements of fair and adequate notice, and that's something that is important because, like I said, there are real, active, and distinct rights being extinguished.

And so for those reasons, I'm going to -- I'm going to require that secondary submission for the people who are more active on the derivative side, as opposed to the class action side.  I would recommend that -- again, I agree with your colleague sitting next to you at the table that certainly,

they're not -- the class isn't going to pay for it, but it may be that there are money efficiencies to be had with the information that they already would be getting from their claims administrator, and if you can piggyback off of that, which is different from requiring you to incur additional costs because of what I'm requiring on the derivative end.

And so, I'm going to -- like I said, I understand the concerns there, but I also have concerns about notice to the class members.  What I'm least persuaded by is getting two emails is going to confuse them.  Perhaps, the structure that has been proposed in front of me -- and I very well imagine it's done very frequently, I'm guessing that the reason why that's less confusing is if people only get one of the notices and they don't have to be confused about these two simultaneous things going on.  But given that they have a right to know about those two simultaneous things, and it's my lookout to make sure that there is this reasonable notice for the derivative action as well as the class action.  The law says that there are analogous principles of that right to fair notice.

So what I will do is I will give you -- and especially on the derivative side, because I think on the class action side, you're going to just add in a few more pieces of information. You probably could do that in a day if you had to.  You already have the answer at your fingertips, so it's not going

to take a lot of work for them, but it is going to take some investigation into cost structures, what the company's willing to do, what you may be able to just piggyback from what the class would already be paying for, to figure all of that out, to get those individual contacts for the continuous shareholders, and then -- and then get that information back to me, a revised proposal for -- a revised proposal for the notice end of things.  And so, like I said, they won't need a lot of time, but you may need some time.

So what would you think, would three weeks be reasonable for me to say get a revised proposal in front of me?  Or would you like more time than that?

MR. McKENNA:  May I have a moment to confer with defense?

THE COURT:  Yes.

*(Derivative counsel and Defense counsel confer.)*

MR. McKENNA:  We think we could get it done in three weeks, Judge.

THE COURT:  Okay.  Thank you.

So we're going to -- if you want to just put before me revised or amended motions for a preliminary approval with all the concerns addressed that I raised today.  And then we'll set a hearing.

So if they're submitting in three weeks, Mr. Deputy, is there a hearing in about five weeks?

THE CLERK:  Your Honor, the next available date after the three-week period would be Thursday, December 4th.

THE COURT:  Okay.  And we'll hold a hearing on both motions for preliminary approval on that date.

MR. KIM:  Your Honor, would it be possible to have that hearing by Zoom?

THE COURT:  Yes.

MR. KIM:  Okay.  Thank you.  Thank you.

THE COURT:  Okay.  Anything else?

MR. McKENNA:  No, Judge.

I'm envisioning it would be, like, in the nature of a supplemental submission, like, give you a new notice plan, not put all the papers back in again over and over?

THE COURT:  Yes.  Thank you.  That's a good idea.  You can both title your submissions "Supplementals --"

MR. McKENNA:  "In support of --"

THE COURT:  "Supplemental briefing in support of --"

MR. McKENNA:  Very good.

THE COURT:  Fill in the blank.

MR. McKENNA:  Thank you, Judge.

MR. KIM:  Thank you, Your Honor.

THE COURT:  Thank you.

*(Proceedings concluded at 10:26 a.m.)*

-oOo-

**C E R T I F I C A T E**

I, Cristine R. Gerongco, certify that I am a duly qualified and acting Official Court Reporter for the United States District Court; that the foregoing is a true and accurate transcript of the proceedings as taken by me in the above-entitled matter; and that the format used complies with the rules and requirements of the United States Judicial Conference.

Dated:  November 2, 2025

/s/ Cristine R. Gerongco
_____
Cristine R. Gerongco, CSR 13517
U.S. Official Court Reporter