Laurence M. Rosen (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Lead Counsel for Plaintiffs*

[*Additional Counsel on Signature Page*]

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASFA KASSAM, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FLUX POWER HOLDINGS, INC., RONALD F. DUTT, and CHARLES A. SCHEIWE,<br><br>Defendants. | No. 3:25-cv-113-JO-DDL<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION**<br><br><u>CLASS ACTION</u><br><br>Date:  April 2, 2026<br>Time: 9:30 a.m.<br>Courtroom: 4C<br>Judge: Hon. Jinsook Ohta |

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND PLAN OF ALLOCATION; No. 3:25-cv-113-JO-DDL

# TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT....................................................................................1

II.    OVERVIEW OF THE LITIGATION..........................................................................3

    A.    Plaintiffs' Allegations ......................................................................................3

    B.    Procedural History and Settlement ...................................................................4

III.   THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS .............5

IV.    THE SETTLEMENT WARRANTS FINAL APPROVAL...........................6

    A.    Plaintiffs and Lead Counsel Adequately Represented the Class ..........7

    B.    The Settlement is the Product of Arm's Length Negotiations..............8

    C.    The Relief Provided to the Settlement Class is Adequate ...................9

        1.    The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Continued Litigation...................................................................9

        2.    Risk of Maintaining Class Action Status Through Trial..........13

    D.    The Amount Obtained in Settlement Supports Final Approval .........13

    E.    The Remaining Rule 23(e)(2) Factors Support Approval .................15

        1.    The Methods of Distributing Relief and Processing Claims....................................................................................15

        2.    The Proposed Award of Attorneys' Fees is Appropriate....................................................................................16

        3.    Other Agreements..................................................................16

        4.    The Proposed Settlement Does Not Unjustly Favor Any Settlement Class Members, Including Plaintiffs ..............17

    F.    The Remaining Ninth Circuit Factors Favor Approval .....................18

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; No. 3:25-cv-113-JO-DDL

1.      The Extent of Discovery and Stage of Proceedings ................. 18

2.      Experienced Counsel's Recommendations .............................. 19

3.      The Absence of a Government Participant .............................. 21

4.      The Reaction of the Settlement Class Supports Approval ................................................................................. 21

V.      THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION ................................................................................. 22

VI.     THE COURT SHOULD APPROVE THE NOTICE PLAN ....................... 23

VII.    CONCLUSION ................................................................................. 24

ii

## TABLE OF AUTHORITIES

**Cases**

*Baker v. SeaWorld Entm't, Inc.*,
2020 WL 818893 (S.D. Cal. Feb. 19, 2020) ........................................................24

*Christine Asia Co. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .......................................................17

*Churchill Vill., L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004).................................................................................21

*Evans v. Jeff D.*,
475 U.S. 717 (1986)................................................................................................6

*Glass v. UBS Fin. Servs., Inc.*,
2007 WL 221862 (N.D. Cal. Jan. 26, 2007).........................................................19

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ...........................................................7, 14, 18, 21

*Hefler v. Wells Fargo & Co.*,
2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ......................................................17

*Hefler v. Wells Fargo & Co.*,
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018).................................................10, 13

*In re "Agent Orange" Prod. Liab. Litig.*,
597 F. Supp. 740 (E.D.N.Y. 1984) .......................................................................13

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) ..........................................................................24

*In re BankAtlantic Bancorp, Inc.*,
2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) .......................................................12

*In re Datatec Sys., Inc. Sec. Litig.*,
2007 WL 4225828 (D.N.J. Nov. 28, 2007) ..........................................................22

*In re Gen. Instrument Sec. Litig.*,
209 F. Supp. 2d 423 (E.D. Pa. 2001) ....................................................................22

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND PLAN OF ALLOCATION; No. 3:25-cv-113-JO-DDL

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686 (S.D.N.Y. 2019)........................................................................13

*In re Heritage Bond Litig.*,
  2005 WL 1594389 (C.D. Cal. June 10, 2005) ...........................................................14

*In re Heritage Bond Litig.*,
  2005 WL 1594403 (C.D. Cal. June 10, 2005) .............................................10, 11, 19

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007)......................................................................10

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000)...................................................................7, 9, 18, 19

*In re NeoPharm, Inc. Sec. Litig.*,
  705 F. Supp. 2d 946 (N.D. Ill. 2010) ........................................................................11

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...................................................6, 13, 21, 22

*In re Oracle Corp. Sec. Litig.*,
  627 F.3d 376 (9th Cir. 2010).....................................................................................11

*In re PaineWebber Ltd. Partnerships Litig.*,
  171 F.R.D. 104 (S.D.N.Y.) ........................................................................................13

*In re Puda Coal Sec. Inc., Litig.*,
  30 F. Supp. 3d 230 (S.D.N.Y. 2014).........................................................................11

*In re Rambus Inc. Derivative Litig.*,
  2009 WL 166689 (N.D. Cal. Jan. 20, 2009)..............................................................21

*In re Regulus Therapeutics Inc. Sec. Litig.*,
  2020 WL 6381898 (S.D. Cal. Oct. 30, 2020) ...........................................................14

*In re Stable Road Acquisition Corp.*,
  2024 WL 3643393 (C.D. Cal. Apr. 23 2024) ...............................8, 16, 18, 23

*In re Sumitomo Copper Litig.*,
  189 F.R.D. 274 (S.D.N.Y. 1999) ..............................................................................10

iv

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008) ........................................................................ 6

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
  535 F. Supp. 2d 249 (D.N.H. 2007) ..............................................................11

*In re WorldCom, Inc. Sec. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005) ...........................................................22

*In re Zynga Inc. Sec. Litig.*,
  2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ................................................19

*In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. L*iab. Litig.,
  2016 WL 6248426 (N.D. Cal. Oct. 25, 2016) ................................................18

*Kamakana v. City & Cnty. of Honolulu*,
  447 F.3d 1172 (9th Cir. 2006) ......................................................................17

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
  136 F. Supp. 3d 1159 (C.D. Cal. 2015) ........................................................20

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012)........................................................................... 7

*Low v. Trump Univ., LLC*,
  246 F. Supp. 3d 1295 (S.D. Cal. 2017).......................................................... 9

*Lusk v. Five Guys Enterprises LLC*,
  2022 WL 4791923 (E.D. Cal. Sept. 30, 2022)................................................ 9

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
  2013 WL 6577020 (C.D. Cal. Dec. 5, 2013) .................................................21

*Mild v. PPG Indus., Inc.*,
  2019 WL 3345714 (C.D. Cal. July 25, 2019)................................................. 8

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ..........................................................12, 19, 20

*Nguyen v. Radient Pharms. Corp.*,
  2014 WL 1802293 (C.D. Cal. May 6, 2014) .................................................18

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND PLAN OF ALLOCATION; No. 3:25-cv-113-JO-DDL

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*,
688 F.2d 615 (9th Cir. 1982)................................................................7, 12, 13, 14

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997) ...........................................................................12

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009)...........................................................................8, 23

*Salazar v. Midwest Servicing Grp., Inc.*,
2018 WL 3031503 (C.D. Cal. June 4, 2018) .......................................................12

*Satchell v. Fed. Express Corp.*,
2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) .......................................................8

*Sudunagunta v. NantKwest, Inc.*,
2019 WL 2183451 (C.D. Cal. May 13, 2019) ........................................................9

*Tom v. Com Dev USA, LLC*,
2017 WL 10378629 (C.D. Cal. Dec. 4, 2017) ......................................................21

*Torrisi v. Tucson Elec. Power Co.*,
8 F.3d 1370 (9th Cir. 1993)...................................................................................7

*Wong v. Arlo Techs., Inc.*,
2021 WL 1531171 (N.D. Cal. Apr. 19, 2021) ........................................................9

**Statutes**

15 U.S.C. § 78u-4(a)(4) ........................................................................................16

15 U.S.C. § 78u-4(a)(7) ........................................................................................24

28 U.S.C. §1715.....................................................................................................24

**Rules**

Fed. R. Civ. P. 23................................................................................6, 16, 24

Fed. R. Civ. P. 23(a) and (b)(3) .............................................................................5

Fed. R. Civ. P. 23(e) ....................................................................................2, 6, 7

Fed. R. Civ. P. 23(e)(1)(B) ...................................................................................23

vi

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND PLAN OF ALLOCATION; No. 3:25-cv-113-JO-DDL

Fed. R. Civ. P. 23(e)(2) ............................................................................6, 7, 18

Fed. R. Civ. P. 23(e)(2)(A) ................................................................................7

Fed. R. Civ. P. 23(e)(2)(B) ................................................................................8

Fed. R. Civ. P. 23(e)(2)(C)(i) ............................................................................9

Fed. R. Civ. P. 23(e)(2)(C)(ii) .........................................................................15

Fed. R. Civ. P. 23(e)(2)(C)(iii) ........................................................................16

Fed. R. Civ. P. 23(e)(2)(C)(iv) ........................................................................16

Fed. R. Civ. P. 23(e)(2)(D) ..............................................................................17

Fed. R. Civ. P. 23(e)(3); and (D) .......................................................................6

**Other Authorities**

Advisory Committee's Notes to 2018 Amendment,
   324 F.R.D. 904 ..............................................................................................6

Manual for Complex Litigation (Third) § 30.44 (1995) .........................................20

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND PLAN OF ALLOCATION; No. 3:25-cv-113-JO-DDL

Lead Plaintiff Brandon Paulson and named Plaintiff Thomas Frank Clark (collectively, "Plaintiffs") submit this memorandum in support of their Motion for Final Approval of Proposed Class Action Settlement and Plan of Allocation.[1]

## I.      PRELIMINARY STATEMENT

Plaintiffs and Defendants Flux Power Holdings, Inc. ("Flux Power" or the "Company"), Ronald F. Dutt, and Charles A. Scheiwe (collectively, "Defendants," and together with Plaintiffs, the "Parties") have reached a $1,750,000 all-cash, non-reversionary settlement of this securities class action ("Settlement"). The Settlement is a fair, reasonable, and adequate result for the Settlement Class, providing a significant and certain recovery in a case that presented numerous litigation risks including Defendants' two pending motions to dismiss. The Settlement recovers approximately 19.0% of the maximum estimated damages of $9.2 million under Plaintiffs' best-case scenario at an early stage of the case, a favorable result compared to typical recoveries in securities class action settlements with similar damages. Moreover, the Settlement was reached only after arm's-length negotiations conducted by experienced counsel with the assistance of mediator Robert A. Meyer of JAMS, and it is the result of a mediator's recommendation that followed an all-day mediation session.  The Settlement is, both substantively and procedurally fair, and thus final approval is appropriate.

---

[1] All capitalized terms, unless otherwise defined herein, have the meanings set forth in the Stipulation of Settlement dated August 27, 2025 ("Stipulation"; Dkt. No. 60-1). Internal citations and quotations are omitted unless otherwise noted. Citations to "Baker Decl." are to the Declaration of Joshua Baker, filed herewith. Citations to "Craig Decl." are to the Declaration of Margery Craig Concerning: (A) Emailing of the Summary Notice and Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections, attached as Exhibit 1 to the Baker Decl. Citations to "Fee Brief" are to the Memorandum of Points and Authorities in support of Lead Counsel's Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Awards to Plaintiffs, filed herewith.

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; No. 3:25-cv-113-JO-DDL

If approved, the Settlement will completely resolve the Action, settling all claims of Settlement Class Members who have not submitted valid requests for exclusion. The terms of the Settlement are set forth in the Stipulation. In the Court's Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Order") (Dkt. No. 68), the Court preliminarily approved the Settlement, preliminarily certified the Settlement Class for settlement purposes, and directed that notice be disseminated to potential Settlement Class Members.  Plaintiffs now seek final approval of the Settlement.

To grant final approval of the Settlement, this Court will evaluate whether it is "fair, reasonable, and adequate," focusing on the adequacy of the Settlement Amount in consideration for the release of the claims in the Action. Fed. R. Civ. P. 23(e). Plaintiffs believe their case is strong, but they determined that entering the Settlement was in the best interests of the Settlement Class. Even if Plaintiffs had survived the pending motions to dismiss, they faced other material obstacles to proving their claims, such as prevailing at class certification, summary judgment, and trial, and proving the full amount of damages. Rather than engaging in expensive, protracted litigation with no assurance of success, Plaintiffs agreed to an early resolution of this action as the best outcome for the Settlement Class. Through extensive negotiations with Defendants, Plaintiffs obtained a substantial recovery for the Settlement Class. In light of the obstacles to achieving a larger recovery and the significant amount of time and expenses that continued litigation would entail, the Court should approve the Settlement as fair, reasonable, and adequate.

The Court will also evaluate whether the proposed Plan of Allocation ("Plan") is fair, reasonable, and adequate. Lead Counsel developed the proposed Plan in consultation with Plaintiffs' consulting damages expert and the Claims Administrator. The proposed Plan comports with applicable legal principles and

2

Plaintiffs' theory of damages, and it does not favor Plaintiffs over other members of the Settlement Class. The Court should approve the Plan.

Finally, Plaintiffs seek final certification of the Settlement Class for settlement purposes. The Court preliminarily certified the Settlement Class in its Preliminary Approval Order, and no pertinent changes have transpired that would upset or alter the Court's preliminary findings and determinations. Thus, the Court should certify the Settlement Class for settlement purposes.

## II.    OVERVIEW OF THE LITIGATION

### A.    Plaintiffs' Allegations

Flux Power Holdings, Inc. ("Flux Power," or the "Company") makes lithium-ion battery packs for a range of industrial and commercial sectors, primarily forklift equipment manufacturers. Flux Power's inventories consist primarily of its battery pack systems. Around 2021, the Company adopted a new battery pack design and switched its supplier. Under the Company's own accounting rules and U.S. GAAP, the Company was required to write down its excess and obsolete inventory as a loss in its financial statements.

Plaintiffs allege that Defendants made several false and misleading statements and omissions, including eleven months of false financial statements and several misleading omissions of material weaknesses in its internal control over financial reporting. Specifically, Plaintiffs allege that Flux Power's quarterly and annual financial statements for each quarter and year from FY2022 through the third quarter of FY2024 overstated inventory, gross profit, current assets, and total assets, and understated cost of sales and net loss. As a result, Flux Power would need to undertake an expensive investigation and issue restatements for each of those periods. When the full restatement was finally issued in January 2025, it revealed a cumulative overstatement of gross profits by $3.6 million, or 10.3%, and an understatement of net loss by $2.4 million, or 7.9%. Plaintiffs also allege that

3

Defendants misleadingly omitted multiple material weaknesses in the Company's internal control over financial reporting throughout the Class Period, which contributed to the misstated financial statements and restatement.

Investors learned about Flux Power's false financial statements and internal control issues through a series of disclosures beginning in September 2024, each causing the Company's stock price to fall. The Company first announced it would need to restate its financials in September 2024, with an estimated impact of $1.7 million in overstated inventory over the prior seven quarters. A few weeks later, Flux Power revealed it would need more time to complete the restatement. In November 2024, Flux Power revealed that estimated adjustments from the restatement totaled $4.9 million, nearly three times as large as originally estimated. Plaintiffs also allege that the restatement was accompanied by a parade of suspicious executive departures, including Defendant Dutt, the Company's CEO and Chairman, Defendant Scheiwe, its CFO, and its outside auditor, Baker Tilly US LLP. Finally, in late January 2025, Flux Power issued its full restatement. In February and March 2025, Flux Power further revealed that it had incurred significant expenses relating to the restatement process.

### B.    Procedural History and Settlement

On November 1, 2024, Asfa Kassam filed a complaint against Defendants in the District of Nevada, alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. Dkt. No. 1. On January 14, 2025, the case was transferred to this Court. Dkt. No. 17.

On February 20, 2025, the Court appointed Mr. Paulson as Lead Plaintiff and appointed The Rosen Law Firm, P.A., as Lead Counsel. Dkt. No. 42. On April 21, 2025, Plaintiffs filed their Amended Class Action Complaint ("Complaint"). Dkt. No. 48. On May 12, 2025, Defendants filed their motions to dismiss the Complaint.

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; No. 3:25-cv-113-JO-DDL

Dkt. Nos. 49, 52. On May 27, 2025, after the Parties agreed to mediate, the Court stayed the case pending a joint report on the outcome of the mediation. Dkt. No. 55.

On July 11, 2025, the Parties participated in a mediation with Robert A. Meyer of JAMS. Mr. Meyer has considerable experience mediating complex securities class actions such as this Action. *See* Ex. 8 (Declaration of Robert A. Meyer). Prior to the mediation, the Parties exchanged detailed mediation statements. After hard-fought negotiations facilitated by Mr. Meyer, the Parties ultimately accepted Mr. Meyer's proposal to settle the Action for $1,750,000. The Parties executed a Term Sheet, notified the Court (Dkt. No. 56), and thereafter negotiated and executed the Stipulation.

Plaintiffs moved for preliminary approval of the Settlement on August 28, 2025. Dkt. No. 60. The Court held a hearing on Plaintiffs' motion on October 23, 2025, ordered slight changes to the proposed notice materials, and requested supplemental information. Dkt. No. 65. After Plaintiffs submitted the supplemental information and changes (Dkt. No. 66), the Court held another hearing on December 4, 2025. The Court entered the Preliminary Approval Order on December 10, 2025. Dkt. No. 68.

## III.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

The Court preliminarily certified the Settlement Class for settlement purposes in its Preliminary Approval Order. Dkt. No. 68 ¶¶2-4. As detailed in Plaintiffs' brief in support of preliminary approval of the Settlement, Dkt. No. 60-2 at 4-10, certification of the Settlement Class is merited here because Plaintiffs, Lead Counsel, and the Settlement Class satisfy each requirement of Rule 23(a) and (b)(3). No pertinent changes have transpired since the Court issued the Preliminary Approval Order that would upset or alter the Court's findings. Thus, the Court should grant final certification of the Settlement Class for settlement purposes.

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; No. 3:25-cv-113-JO-DDL

## IV.    THE SETTLEMENT WARRANTS FINAL APPROVAL

Rule 23 requires judicial approval of class action settlements, and provides that a class action settlement should be approved if the court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). It is within the "sound discretion of the district courts to appraise the reasonableness of [] settlements on a case-by-case basis." *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986). The Ninth Circuit strongly favors settlement, "particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("the court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law suits").

Federal Rule of Civil Procedure 23(e)(2) provides that, to determine if a settlement is fair, reasonable, and adequate, the Court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

These factors do not "displace" any previously adopted factors, but "focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e) Advisory Committee's Notes to 2018 Amendment, 324 F.R.D. 904, 918. Ultimately, "[a] settlement should be approved if 'it is fundamentally fair, adequate

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; No. 3:25-cv-113-JO-DDL

and reasonable.'" *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (same).

In evaluating whether settlements are fair, reasonable, and adequate, courts in the Ninth Circuit traditionally consider the following factors, many of which overlap with the requirements of Rule 23(e)(2): "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a government participant; and the reaction of the class members to the proposed settlement." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). Keeping in mind that "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements," courts should not convert settlement approval into an inquiry on the merits. *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). Here, the Rule 23(e) and Ninth Circuit factors weigh in favor of final approval of the Settlement.

**A.    Plaintiffs and Lead Counsel Adequately Represented the Class**

Courts must consider whether the "class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). The Ninth Circuit requires courts to resolve two questions to determine adequacy: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members[;] and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

Plaintiffs and Lead Counsel have adequately represented the Settlement Class throughout this litigation. Plaintiffs have no antagonistic interests to other class members. Their claims are typical of Settlement Class Members' claims, and

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; No. 3:25-cv-113-JO-DDL

Plaintiffs share an interest with the other Settlement Class Members in obtaining the largest possible recovery for the Settlement Class. *Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019) ("Because Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, his interest in obtaining the largest possible recovery is aligned with the interests of the rest of the Settlement Class members.").

Moreover, Plaintiffs retained highly experienced counsel with a successful track record of representing investors in similar securities cases. *See* Baker Decl. ¶79. Plaintiffs and Lead Counsel have also demonstrated their adequacy by, at all times, vigorously prosecuting the Action.

**B.      The Settlement is the Product of Arm's Length Negotiations**

Rule 23(e)(2)(B) addresses whether "the [settlement] proposal was negotiated at arm's length." "The Ninth Circuit, as well as courts in this District, 'put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution' in approving a class action settlement." *In re Stable Road Acquisition Corp.*, 2024 WL 3643393, at *6 (C.D. Cal. Apr. 23 2024) (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)). The use of an experienced mediator further supports satisfaction of this factor. *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

The proposed Settlement followed hard-fought litigation and arm's length negotiations including a mediation session and subsequent discussions guided by Mr. Meyer, a mediator with extensive experience mediating securities class actions. Baker Decl. ¶16 and Ex. 8. The Parties' mediation statements presented, among other things, their respective views on the merits of the Action and issues relating to causation and damages. *Id.* ¶27 and Ex. 8. After a full day in-person mediation

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; No. 3:25-cv-113-JO-DDL

session facilitated by Mr. Meyer, the Parties reached an agreement in principle after mutually accepting a mediator's proposal. *Id*. "The fact … that the Settlement is based on a mediator's proposal further supports a finding that the settlement agreement is not the product of collusion." *Lusk v. Five Guys Enterprises LLC*, 2022 WL 4791923, at *9 (E.D. Cal. Sept. 30, 2022); *Sudunagunta v. NantKwest, Inc.*, 2019 WL 2183451, at *3 (C.D. Cal. May 13, 2019) ("the Court is satisfied that the Agreement is not the product of collusion between the parties. The Agreement is the outcome of an arms-length negotiation conducted with the help of an experienced mediator, Robert Meyer").

### C.    The Relief Provided to the Settlement Class is Adequate

The Court must also consider whether "the relief provided for the class is adequate, taking into account … the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C)(i). This requirement incorporates three of the traditional *Hanlon* factors: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; and the risk of maintaining class action status through the trial. *Wong v. Arlo Techs., Inc.*, 2021 WL 1531171, at *8 (N.D. Cal. Apr. 19, 2021). These factors support final approval of the Settlement.

### 1.    The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Continued Litigation

In assessing whether the Settlement is fair, reasonable, and adequate, the Court must balance the continuing risks of litigation, including the strengths and weaknesses of the case, and the complexity, expense, and likely duration of continued litigation, against the benefits afforded to the Settlement Class, including the immediacy and certainty of a financial recovery. *Mego*, 213 F.3d at 458, 459. Courts favor settlement where the case is "complex and likely to be expensive and lengthy to try" and presents material risks beyond the "inherent risks of litigation." *Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1301 (S.D. Cal. 2017). "Courts

9

have recognized that, in general, securities actions are highly complex and that securities class litigation is notably difficult and notoriously uncertain." *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at \*13 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020). Here, Lead Counsel and Plaintiffs carefully weighed the merits and risks of this case before entering into the Settlement.

While Plaintiffs believe that their case is strong, they remain cognizant of the substantial risks posed to the Settlement Class in continuing to litigate this action. *See In re Heritage Bond Litig.*, 2005 WL 1594403, at \*7 (C.D. Cal. June 10, 2005) ("no matter how confident one may be of the outcome of litigation, such confidence is often misplaced"); *see also In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 282 (S.D.N.Y. 1999) (discussing several instances where settlement was rejected by a court only to have the class's ultimate recovery be less than the proposed settlement).

Here, the risks of continued litigation are considerable. Defendants deny any wrongdoing and would present a multi-pronged defense. Defendants' motions to dismiss the Complaint, focusing the entirety of two briefs on the adequacy of Plaintiffs' scienter allegations, were still pending. Baker Decl. ¶¶34-35. Plaintiffs and Lead Counsel believe that the case has merit, but they recognize the significant risk and expense that would be necessary to prosecute Plaintiffs' claims successfully through the pleading stage, completion of fact and expert discovery, class certification, summary judgment, trial, and subsequent appeals, as well as the inherent difficulties and delays complex litigation like this entails. *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) (approving settlement and noting that "the Court also recognizes that the issues of scienter and causation are complex and difficult to establish at trial.").

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; No. 3:25-cv-113-JO-DDL

Proving loss causation and damages would also be risky, complicated, and uncertain, involving conflicting expert testimony. Defendants would likely present their own expert testimony to demonstrate that the revelation of the fraud did not cause the alleged stock drops, and/or attempt to demonstrate that all or a portion of the alleged stock drops was attributable to other issues unrelated to the alleged fraud. Baker Decl. ¶¶38-41. *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 260–61 (D.N.H. 2007) ("Proving loss causation would be complex and difficult. Moreover, even if the jury agreed to impose liability, the trial would likely involve a confusing 'battle of the experts' over damages.").

Even if Plaintiffs were to prevail at the pleading stage, continuing to litigate this Action would likely require extensive document discovery, depositions of numerous witnesses, submitting expert reports and testimony, overcoming motions for summary judgment, and an expensive and risky trial. Baker Decl. ¶¶42-46. Expert discovery and trial preparation would prove expensive and complex, with no guarantee of victory. *See Heritage Bond*, 2005 WL 1594403, at *6. Plaintiffs faced the risk that they might lose on summary judgment. *See, e.g., In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 395 (9th Cir. 2010) (affirming summary judgment in favor of defendants where plaintiff failed to establish a triable issue on loss causation); *In re NeoPharm, Inc. Sec. Litig.*, 705 F. Supp. 2d 946, 966 (N.D. Ill. 2010) (granting partial summary judgment where plaintiffs failed to prove falsity or scienter). Plaintiffs may have an expert excluded, damaging their case. *See, e.g., In re Puda Coal Sec. Inc., Litig.*, 30 F. Supp. 3d 230, 254 (S.D.N.Y. 2014), *aff'd sub nom. Querub v. Hong Kong*, 649 F. App'x 55 (2d Cir. 2016).

Plaintiffs might also lose at trial, or the jury might reduce damages significantly. *See* ISS, *Puma Biotechnology – Both Sides Claim Victory in Rare Jury Trial Verdict* (Feb. 15, 2019) (reporting that according to defendants, plaintiffs won only 5% of the damages they requested), *available at*

11

https://www.issgovernance.com/puma-biotechnology-both-sides-claim-victory-in-rare-jury-trial-verdict/. Plaintiffs might still lose their case even after winning at trial. *In re BankAtlantic Bancorp, Inc.*, 2011 WL 1585605, at \*38 (S.D. Fla. Apr. 25, 2011), *aff'd on other grounds sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) (granting motion for judgment as a matter of law, reversing plaintiffs' partial jury verdict for failure to prove loss causation). Even if Plaintiffs were to secure a verdict for damages and defend the verdict from Defendants' inevitable post-trial motions, Plaintiffs might still lose on appeal. *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (overturning \$81 million jury verdict).

By contrast, the Settlement provides a favorable, immediate, and guaranteed recovery for the Settlement Class and eliminates the risk, delay, and expense of continued litigation. While a greater recovery might be a theoretical possibility, evaluating the benefits of settlement must be tempered by recognizing that any compromise involves concessions on the part of all parties. "The very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Officers for Justice*, 688 F.2d at 624.

Considering the risks of continued litigation and the time and expense that would be incurred to prosecute the Action through a trial, the \$1,750,000 Settlement is a reasonable and adequate recovery. *Salazar v. Midwest Servicing Grp., Inc.*, 2018 WL 3031503, at \*6 (C.D. Cal. June 4, 2018) (settlement agreement's elimination of risk, delay, and further expenses weighs in favor of approval); *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.").

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; No. 3:25-cv-113-JO-DDL

## 2.    Risk of Maintaining Class Action Status Through Trial

The Settlement was reached before Plaintiffs moved for class certification. While Plaintiffs believe that class certification would be appropriate (*see* § III, *supra*), it cannot be assured, and Defendants could attempt to alter or amend a class certification order. *See In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 694 (S.D.N.Y. 2019) ("Although the risk of maintaining a class through trial is present in [every] class action ... this factor [nevertheless] weighs in favor of settlement where it is likely that defendants would oppose class certification if the case were to be litigated."); *Omnivision*, 559 F. Supp. 2d at 1041 ("there is no guarantee the [class] certification would survive through trial, as Defendants might have sought decertification or modification of the class").

### D.    The Amount Obtained in Settlement Supports Final Approval

"To evaluate the adequacy of the settlement amount, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Hefler*, 2018 WL 6619983, at *8. The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).

What constitutes a reasonable settlement amount "is not susceptible of a mathematical equation yielding a particularized sum." *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 130 (S.D.N.Y.), *aff'd sub nom. In re PaineWebber Inc. Ltd. Partnerships Litig.*, 117 F.3d 721 (2d Cir. 1997). Nor is the proposed Settlement "to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at 625. As "[s]ettlement is the offspring of compromise[,] the question [courts] address is not whether the final product could be prettier, smarter or snazzier, but whether it

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; No. 3:25-cv-113-JO-DDL

is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027. Common sense dictates that Plaintiffs must take less in a settlement than they would after a complete trial victory or Defendants would have no reason to settle. In a factually and legally complex securities class action lawsuit such as this, this is no guarantee that Plaintiffs could secure a judgment at or near the full amount of the class-wide damages they estimate.

Here, the $1.75 million Settlement Amount is reasonable and warrants final approval. The Settlement recovers approximately 19.0% of the maximum estimated damages of $9.2 million under Plaintiffs' ***best-case scenario***, as estimated by Plaintiffs' consulting damages expert. Baker Decl. ¶47. This best-case scenario assumes that: (i) Plaintiffs defeat Defendants' motions to dismiss; (ii) are able to succeed at summary judgment and at trial; (iii) the Court certifies the case as a class action, including the same class period as the Settlement Class Period; and (iv) the Court and jury completely accept Plaintiffs' damages theory, including proof of loss causation for the totality of each of the six alleged declines in stock price. *Id*. Anything less than a complete victory would decrease, or potentially eliminate, recoverable damages. Moreover, Defendants estimated that the maximum aggregate damages Plaintiffs could recovery in their best-case scenario was only $7.0 million, in which case the Settlement represents a 25.0% recovery. *Id*.

The percentage of maximum damages recovered here (19.0% or 25.0%) falls well within the range of other securities class action settlements that courts have approved. *See In re Regulus Therapeutics Inc. Sec. Litig.*, 2020 WL 6381898, at *6 (S.D. Cal. Oct. 30, 2020) (approving 1.99% recovery); *In re Heritage Bond Litig.*, 2005 WL 1594389, at *8-9 (C.D. Cal. June 10, 2005) (average recovery between 2% to 3% of maximum damages); *see also Officers for Justice*, 688 F.2d at 628 ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair."). It

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; No. 3:25-cv-113-JO-DDL

is also comparable to the median recovery in similarly sized securities cases. According to Cornerstone Research, between 2016-2024 the median recovery in cases such as this one alleging Rule 10b-5 claims with less than $25 million in maximum estimated damages was approximately 22.9%. Laarni T. Bulan, *et al.*, *Securities Class Action Settlements: 2025 Review and Analysis* (Cornerstone Research), at 7.[2] Between 2016-2025, securities fraud class actions that settled after the filing of a motion to dismiss but before a ruling recovered a median of 5.8% of estimated damages. *Id*. at 14. Thus, the amount of the Settlement supports a finding that it is a reasonable and adequate result for the Settlement Class.

**E.    The Remaining Rule 23(e)(2) Factors Support Approval**

**1.    The Methods of Distributing Relief and Processing Claims**

Rule 23 requires that the Court consider the effectiveness of the proposed method of distributing relief to the class, including the method of processing claims. Fed. R. Civ. P. 23(e)(2)(C)(ii). The Preliminary Approval Order established a plan to provide notice to potential Settlement Class Members, which Plaintiffs and the Claims Administrator duly executed. As the Court directed in the Preliminary Approval Order, SCS mailed copies of the Postcard Notice and emailed links to the Notice and Proof of Claim to over 18,000 potential Settlement Class Members and published the Summary Notice on *GlobeNewswire* and in *Investor's Business Daily*. Craig Decl. ¶¶3-10. The Postcard Notice and email notices informed Settlement Class Members of the Settlement and directed them to the case-specific Settlement website where the Claims Administrator posted key documents including the Stipulation, long-form Notice, Proof of Claim, and Preliminary Approval Order. *Id*. ¶12.

---

[2] https://www.cornerstone.com/wp-content/uploads/2026/02/Securities-Class-Action-Settlements-2025-Review-and-Analysis.pdf

15

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; No. 3:25-cv-113-JO-DDL

Settlement Class Members must complete a standard Proof of Claim form that requests the information necessary to calculate claims pursuant to the Plan. The Settlement website also allowed Settlement Class Members to file their claims electronically. *Id*. "Claims processing, like the method proposed here, is standard in securities class action settlements.  It has been long found to be effective, as well as necessary, insofar as neither Lead Plaintiff nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund." *Stable Road*, 2024 WL 3643393, at \*7.

### 2.   The Proposed Award of Attorneys' Fees is Appropriate

Rule 23 also addresses "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). As discussed in the Fee Brief, Lead Counsel seek an award of attorneys' fees of one-third of the Settlement Amount and reimbursement of litigation expenses of $65,904.07. This fee and expense request, previewed in the Notice, is consistent with awards granted in similar actions in the Ninth Circuit. *See* Fee Brief, §§ III(B) and (C)(5).

Lead Counsel also seeks awards to Plaintiffs of $7,500 each ($15,000 total) pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(4), in connection with their representation of the Settlement Class. Plaintiffs supervised and engaged with Lead Counsel during litigation and throughout settlement negotiations, and kept abreast of developments in this case and with Flux Power generally. Plaintiffs spent their own valuable time representing the Settlement Class. Exs. 4-5 (Plaintiffs' declarations). Plaintiffs' request for compensation is appropriate, as courts routinely grant similar awards to representative plaintiffs. *See* Fee Brief, § III(F).

### 3.   Other Agreements

Rule 23 requires that any agreement made in connection with the proposed Settlement be disclosed. Fed. R. Civ. P. 23(e)(2)(C)(iv). As previously disclosed in

16

the Stipulation (¶10.3) and in Plaintiffs' brief in support of preliminary approval (Dkt. No. 60-2 at 17), the Parties entered into a standard supplemental agreement that gives Defendants the right to terminate the Settlement if Settlement Class Members holding more than a certain number of shares request exclusion. Only the agreement's exact terms—specifically, the number of shares that trigger the right to terminate—has not been disclosed to Settlement Class Members to avoid incentivizing Settlement Class Members to opt out solely to leverage the threshold to exact an individual settlement. This agreement does not detract from the fairness of the Settlement. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006); *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018) ("a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair."); *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019) ("This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement.").[3]

### 4. The Proposed Settlement Does Not Unjustly Favor Any Settlement Class Members, Including Plaintiffs

Courts must also evaluate whether the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e)(2)(D). The Settlement does not provide preferential treatment to any Settlement Class Member, including Plaintiffs. The Plan determines how money is distributed, providing for a *pro rata* distribution of the Net Settlement Fund to Authorized Claimants who suffered losses as a proximate result of the alleged fraud, based on when each investor purchased and/or sold Flux Power common stock during the Settlement Class Period and the subsequent stock price declines upon revelation of the truth, as alleged in the Complaint. Baker Decl. ¶¶63-70. The Plan was developed by Lead

---

[3] Defendants have not exercised their termination option.

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; No. 3:25-cv-113-JO-DDL

Counsel in conjunction with SCS and Plaintiffs' consulting damages expert. *Id.* The Plan will determine Plaintiffs' recovery just like every other Settlement Class Member, so Plaintiffs receive no preferential treatment. *See Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014) (a plan of allocation is reasonable "if it fairly treats class members by awarding a pro rata share to every Authorized Claimant, but also sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue.").

As noted above, Lead Counsel also seek awards to Plaintiffs, reimbursing them for costs incurred and time spent representing the Settlement Class, as authorized by the PSLRA. Such awards do "not constitute inequitable treatment of Settlement Class Members." *Stable Road*, 2024 WL 3643393 at *8.

### F.     The Remaining Ninth Circuit Factors Favor Approval

In *Hanlon*, 150 F.3d 1011, the Ninth Circuit identified additional factors not co-extensive with Rule 23(e)(2). These factors also support final approval.

### 1.     The Extent of Discovery and Stage of Proceedings

In considering a class action settlement, courts look for indications that the parties carefully investigated the claims before reaching a resolution. *Mego*, 213 F.3d at 458; *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2016 WL 6248426, at *13-14 (N.D. Cal. Oct. 25, 2016) (extensive discovery is "not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement").

Lead Counsel conducted an extensive investigation of the claims asserted in this Action, including: (i) reviewing Flux Power's SEC filings, press releases, conference calls, and other public statements during the Settlement Class Period; (ii) reviewing public documents, reports, announcements, and news articles concerning Flux Power, including research reports by securities and financial

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; No. 3:25-cv-113-JO-DDL

analysts; and (iii) retaining an investigator to identify and interview former Flux Power employees and knowledgeable third parties. *See* Baker Decl. ¶23; Exs. 2-3. Lead Counsel's efforts allowed them to make an informed assessment of the strengths and weaknesses of this Action, essential to recommending to Plaintiffs whether to accept the Settlement Amount to resolve the Action. Reviewing Defendant's mediation statement and negotiating the Settlement at the mediation further informed Lead Counsel about the strengths and weaknesses of the case. As a result, Plaintiffs and Lead Counsel had an ample understanding of the merits and weaknesses of this Action and the reasonableness of the Settlement.

Courts regularly find this factor supports approval of a settlement even when plaintiffs settle before any discovery. *See, e.g., Mego*, 213 F.3d at 459 (finding that, even absent extensive formal discovery, class counsel's significant investigation and research supported settlement approval). Courts have commended class counsel for recognizing when, as was the case here, a prompt resolution of the matter is in the best interest of the class. *See Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862, at *15 (N.D. Cal. Jan. 26, 2007) ("Class counsel achieved an excellent result for the class members by settling the instant action promptly"), *aff'd*, 331 F. Appx. 452, 457 (9th Cir. 2009). Here, Plaintiffs and Lead Counsel acquired "fulsome understandings" of the parties' respective positions on the legal and factual issues in the case, allowing them to negotiate a reasonable Settlement. *In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *9 (N.D. Cal. Oct. 27, 2015).

### 2.   Experienced Counsel's Recommendations

Courts also give weight to the opinion of experienced and informed counsel supporting the settlement. "Absent fraud, collusion, or the like," the Court should give "[g]reat weight [] to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation," *Heritage Bond*, 2005 WL 1594403, at *9; *DIRECTV*, 221 F.R.D. at 528. As set forth above, Lead Counsel

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; No. 3:25-cv-113-JO-DDL

have extensive securities litigation experience and obtained a thorough understanding of the merits and risks of the Action. Lead Counsel's support for the reasonableness of this Settlement supports final approval. Baker Decl. ¶49.

Lead Counsel's experience and reputation allowed them to leverage the credible threat of further litigation and trial, but also to recognize that the Settlement was a better option for the Settlement Class. Courts have recognized that Lead Counsel are knowledgeable and experienced attorneys well-suited to serve as class counsel in securities class actions such as this one. *E.g., Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) ("The Rosen Law Firm is highly qualified [and] experienced in securities class actions"); *see also* Exs. 6-7 (firm résumés for Plaintiffs' counsel). The experience of Lead Counsel supports approval of the Settlement they negotiated.

Defendants were also represented by experienced and skilled securities practitioners. The attorneys at Wilson Sonsini Goodrich & Rosati, P.C. and Wilson Elser Moskowitz Edelman & Dicker LLP vigorously represented their clients and were equally well-informed regarding the case. Baker Decl. ¶80. Because the Settlement is the product of serious, informed, and non-collusive negotiations among experienced counsel and a highly qualified mediator, final approval is warranted.

Finally, Plaintiffs' support for the Settlement is further evidence that the Settlement is fair, reasonable and adequate. *See* Exs. 4-5 (Plaintiffs' declarations). Plaintiffs' support for a settlement should be accorded "special weight because [the plaintiff] may have a better understanding of the case than most members of the class." *DIRECTV*, 221 F.R.D. at 528 (quoting Manual for Complex Litigation (Third) § 30.44 (1995)). The support of both experienced counsel and Plaintiffs favors final approval of the Settlement.

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; No. 3:25-cv-113-JO-DDL

### 3.    The Absence of a Government Participant

There was no government participant here, so this factor is neutral. *See Tom v. Com Dev USA, LLC*, 2017 WL 10378629, at *5 (C.D. Cal. Dec. 4, 2017).

### 4.    The Reaction of the Settlement Class Supports Approval

To date, 18,981 potential Settlement Class Members were directly notified of the Settlement either by mailed Postcard Notice or by emailed link to the Notice and Proof of Claim. Craig Decl. ¶9. The Claims Administrator, SCS, caused 6,326 copies of the Postcard Notice to be mailed to potential Settlement Class Members, and 12,655 potential Settlement Class Members received emails with links to the Notice and Claim Form. *Id*. ¶¶6-8. The deadline to file objections to, or request exclusion from, the Settlement is March 12, 2026. To date, no Settlement Class Members have objected to the Settlement, and no requests for exclusion have been received. *Id*. ¶¶13-14; Baker Decl. ¶¶61-62. Plaintiffs will respond to subsequent objections, if any, in their reply.

The absence of objections to a proposed class action settlement supports approval. *Omnivision*, 559 F. Supp. 2d at 1043; *In re Rambus Inc. Derivative Litig.*, 2009 WL 166689, at *3 (N.D. Cal. Jan. 20, 2009) ("the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members"). That no requests for exclusion have been received also supports the Settlement's approval. *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement with 0.56% of eligible class members requesting exclusion); *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, 2013 WL 6577020, at *16 (C.D. Cal. Dec. 5, 2013) (69 exclusion requests in response to mailing of over 50,000 notices supports settlement). "[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness." *Hanlon*, 150 F.3d at 1027. The absence of any objections or exclusion requests here supports final approval of the Settlement.

## V.    THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION

In the Preliminary Approval Order, the Court preliminarily approved the Plan, which was detailed in the Notice. Plaintiffs now request that the Court grant final approval of the Plan for the purpose of administering the Settlement. Courts assess plans of allocation by the same metric as settlements as a whole: they must be "fair, reasonable and adequate." *Omnivision*, 559 F. Supp. 2d at 1045. Practically speaking, "[a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005).

The proposed Plan has a reasonable, rational basis. It distributes the settlement proceeds on a *pro rata* basis, calculating a claimant's relative loss proximately caused by Defendants' alleged misrepresentations and omissions, based on factors such as when and at what prices the claimant purchased and sold Flux Power stock. Plaintiffs engaged a damages consultant to assist in developing the Plan to allocate the Settlement proceeds among Claimants with the goal of reimbursing Settlement Class Members in a fair and reasonable manner. Baker Decl. ¶¶63-69.

Because they tend to mirror the complaint's allegations in securities class actions, "plans that allocate money depending on the timing of purchases and sales of the securities at issue are common." *In re Datatec Sys., Inc. Sec. Litig.*, 2007 WL 4225828, at *5 (D.N.J. Nov. 28, 2007); *see also In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001) (finding plan of allocation was "even handed" where "claimants are to be reimbursed on a *pro rata* basis for their recognized losses based largely on when they bought and sold their shares"). Here, each authorized claimant will receive a *pro rata* share of the Net Settlement Fund based on the claimant's recognized loss as calculated in accordance with the Plan. Baker Decl. ¶¶63-69. There have been no objections to the Plan from any potential Settlement Class Members. Craig Decl. ¶14; Baker Decl. ¶70. The Plan fairly

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; No. 3:25-cv-113-JO-DDL

compensates Settlement Class Members and should be approved. *See Stable Road*, 2024 WL 3643393, at *10-11 (approving substantially similar plan of allocation).

## VI.   THE COURT SHOULD APPROVE THE NOTICE PLAN

Plaintiffs provided the Settlement Class with adequate notice of the Settlement, in the manner and form that the Court preliminarily approved. 18,981 potential Settlement Class Members received direct notice about the Settlement. Craig Decl. ¶9. Of those, there were 6,326 Postcard Notices mailed and 12,655 emails sent with links to the Notice and Proof of Claim. *Id.* ¶¶6-8. The Claims Administrator also published the Court-approved Summary Notice online in *GlobeNewswire* and in print in *Investor's Business Daily*. *Id.* ¶10. The Claims Administrator also published all required information regarding the Settlement online on the Settlement Website. *Id.* ¶12. The notice plan executed here directed notice in a "reasonable manner to all class members who would be bound by the propos[ed judgment]." Fed. R. Civ. P. 23(e)(1)(B).

The Notice provides all necessary information for Settlement Class Members to make an informed decision regarding the proposed Settlement. *See* Craig Decl., Ex. A (Notice). It "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009). The Notice gave Settlement Class Members all the information they needed to decide whether to opt out, object, or file a claim. It told Settlement Class Members, among other things: (1) the amount of the Settlement; (2) why the parties propose the Settlement; (3) the estimated average recovery per damaged share; (4) the maximum amount of attorneys' fees and expenses that Lead Counsel would seek; (5) Lead Counsel's contact information; (6) that Settlement Class Members could object to the Settlement or exclude themselves from the Settlement Class, and the consequences thereof; and (7) the dates and deadlines for certain Settlement-related

events. 15 U.S.C. § 78u-4(a)(7). The Notice further explained that the Net Settlement Fund would be distributed to eligible Settlement Class Members who submit valid and timely claim forms under the Plan as described in the Notice.

In sum, the Notice fairly apprised Settlement Class Members of their rights, is the best notice practicable under the circumstances, and complies with the Court's Preliminary Approval Order, Rule 23, the PSLRA, and due process. Courts routinely find these methods of notice sufficient. "The use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 n.3 (S.D.N.Y. 2014) (collecting cases); *Baker v. SeaWorld Entm't, Inc.*, 2020 WL 818893, at *2-*3 (S.D. Cal. Feb. 19, 2020) (approving similar notice program). Defendants also provided notice to appropriate governmental officials pursuant to the Class Action Fairness Act, 28 U.S.C. §1715 *et seq.* Dkt. No. 62.

## VII.   CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion and: (a) certify the Settlement Class; (b) approve the Settlement and Plan as fair, reasonable, and adequate; and (c) find that the notice plan complied with all applicable requirements.

Respectfully submitted,

Dated: March 5, 2026

**THE ROSEN LAW FIRM, P.A.**

By: */s/Joshua Baker*
Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226 4684
Email: lrosen@rosenlegal.com

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; No. 3:25-cv-113-JO-DDL

Phillip Kim (*pro hac vice*)
Joshua Baker (*pro hac vice*)
275 Madison Ave., 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: philkim@rosenlegal.com
Email: jbaker@rosenlegal.com

*Lead Counsel for Plaintiffs and the Settlement Class*

**BRAGAR EAGEL & SQUIRE, P.C.**
Melissa A. Fortunato (SBN 319767)
fortunato@bespc.com
Marion C. Passmore (SBN 228474)
passmore@bespc.com
515 South Flower Street, Suite 1800
Los Angeles, California 90071
Telephone: (213) 612-7735
Facsimile: (212) 214-0506

*Additional Counsel for Plaintiff Thomas Frank Clark*

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; No. 3:25-cv-113-JO-DDL