# EXHIBIT 9

# NERA

# RECENT TRENDS IN SECURITIES CLASS ACTION LITIGATION: 2025 FULL-YEAR REVIEW

Edward Flores, Svetlana Starykh, and Ivelina Velikova[1]

| Filings Down by 11% Due to Decline in Standard Filings

| AI- and Crypto-Related Filings Increase, SPAC- and COVID-Related Filings Decline, Tariff-Related Filings Appear

| Dismissals Increase for a Second Straight Year, Median Settlement Value at a 10-Year High

21 January 2026

# FOREWORD

I am excited to share NERA's "Recent Trends in Securities Class Action Litigation: 2025 Full-Year Review" with you. This year's edition builds on work carried out over more than three decades by many of NERA's securities and finance experts. Although space does not permit us to present all the analyses the authors have undertaken while working on this year's edition or to provide details on the statistical analysis of settlement amounts, we hope you will contact us if you want to learn more about our research or our consulting and testifying experience in securities litigations. On behalf of NERA's securities and finance experts, I thank you for taking the time to review this year's report and hope you find it informative.

DAVID TABAK, PhD
Senior Managing Director

# INTRODUCTION

In 2025, there were 207 new federal securities class action suits filed, 25 less than in 2024. Cases with Rule 10b-5-only claims accounted for most of the decline in filings with 176 such suits filed, 22 less than in 2024. Filings against companies in the healthcare and technology sectors together accounted for 57% of new filings, and 71% of all cases were filed in the Second, Third, and Ninth Circuits. Approximately 43% of filings had an allegation related to missed earnings guidance, a five-year high, while only 13% had an allegation related to regulatory issues, a five-year low.

While 28.8% of listings on major US exchanges were represented by foreign companies in 2025, only 13.1% of standard cases, which contain alleged violations of Rule 10b-5, Section 11, and/or Section 12, were filed against foreign companies. Of the 25 standard filings against foreign companies in 2025, 12 were filed against companies based in Europe and six were filed against companies based in Canada.

Focusing on specific categories of cases, there were 17 filings with AI-related claims, accounting for 8% of all new filings, while there were 14 cases with crypto-related claims, 75% more than in 2024. In what may be a new trend in filings, there were four suits with tariff-related claims and one filing related to visa issues. Meanwhile, the number of filings with SPAC- and COVID-19-related claims have declined substantially, with only five and three suits filed in each category, respectively.

There were 234 cases resolved in 2025, 34 more relative to 2024 and marking the second consecutive year the number of resolved cases has increased. While the number of settlements declined by 16% to 79, the number of dismissals increased by 34% to 155, primarily driven by a record number of dismissals involving standard cases. With more existing cases resolved than new cases filed in 2025, the backlog of pending cases declined by 3.5% as of year-end. For cases filed in 2025, 9% have been dismissed and 91% remain pending.

Aggregate settlements totaled $2.9 billion in 2025, with the largest settlement consisting of a $433.5 million recovery against Alibaba Group Holding Company. Aggregate plaintiffs' attorneys' fees and expenses totaled $797 million, or 27% of the 2025 aggregate settlement value. While the average settlement value declined by 9% in 2025 to $40 million, the median settlement value increased by 21% to $17 million, a 10-year high. Approximately 31% of all settlements were between $20 million and $49.9 million, the largest share in the past five years.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

# TRENDS IN FILINGS

There were 207 new federal securities class actions filed in the US in 2025, an 11% decline from the 232 cases filed in 2024 and ending a two-year increase in filings seen over 2022–2024.[2] As of November 2025, there were 5,497 companies listed on the NYSE and the Nasdaq, a slight increase from the 5,421 companies listed as of December 2024, though well below the recent high of 6,174 companies listed in 2021. The uptick in listed companies was partially driven by an increase in the number of US initial public offerings (IPOs), which increased from 225 in 2024 to 347 in 2025.[3] Roughly 3.8% of companies listed on major US exchanges were subject to a securities class action in 2025. See Figure 1.

Figure 1. **Federal Filings and Number of Companies Listed in the United States**
January 1996–December 2025



Note: Listed companies include those listed on the NYSE and Nasdaq. Listings data obtained from the World Federation of Exchanges (WFE). The 2025 listings data are as of November 2025.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

Standard cases, which contain alleged violations of Rule 10b-5, Section 11, and/or Section 12, comprised 92% of all new filings with 191 cases, 23 less than in 2024.[4] Among these, there were 176 filings with Rule 10b-5-only claims, representing an 11% decline from 2024. Standard cases with Section 11 and/or Section 12 claims (with or without an accompanying Rule 10b-5 claim) declined for the third straight year, with 15 such filings in 2025, the lowest level in the past decade. This trend is partially due to the low number of US IPOs over 2022–2024, which saw between 154 and 225 IPOs per year, compared to the 480 and 1,035 IPOs seen in 2020 and 2021, respectively.[5] Merger objection filings were flat in 2025 with seven, while there was an uptick in suits involving crypto unregistered securities, with eight in 2025, up from five in 2024.[6] See Figure 2.

Figure 2. **Federal Filings by Type**
January 2016–December 2025



ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

After excluding merger-objection and crypto unregistered securities cases, the healthcare technology and services sector accounted for 31% of new filings in 2025, the highest share seen among all sectors during the 2021–2025 period, while the electronic technology and technology services sector, the leading sector in 2024, comprised 26% of new filings, a four percentage point decline from the 30% observed the year before. The percentage of suits in the finance sector decreased for the second straight year to 9% in 2025 from 11% in 2024. Meanwhile, the share of filings in the energy and non-energy minerals sector more than tripled in 2025 and accounted for 5% of all filings, a five-year high. See Figure 3.

Figure 3. **Percentage of Federal Filings by Sector and Year**
Excludes Merger Objections and Crypto Unregistered Securities
January 2021–December 2025



Note: This analysis is based on the FactSet Research Systems, Inc. economic sector classification. Some of the FactSet economic sectors are combined for presentation.

The Second and Ninth Circuits continue to be the jurisdictions in which the majority of non-merger objection, non-crypto unregistered securities cases are filed, although their combined share of filings declined from 61% in 2024 to 57% in 2025. There were 62 new filings in the Second Circuit, nearly matching its 2024 total, while the Ninth Circuit experienced a 33% decline in new filings relative to 2024 with 48 new filings, the lowest number in the past five years. Filing trends in these circuits can be explained by the number of suits filed in district courts in the states of New York and California, respectively. While suits filed in New York district courts only slightly declined from 62 filings in 2024 to 59 filings in 2025, filings in California district courts fell by 24 filings, from 65 in 2024 to 41 in 2025. On the other hand, filings in the Third Circuit increased by 50% to 27 filings from 18 filings in 2024. The growth in Third Circuit filings was due to a substantial influx of new cases filed in the District of New Jersey, which saw 16 filings in 2025, up from six in 2024. Notably, the Fourth and Fifth Circuits each saw at least 10 suits filed for the second year in a row, and the Eleventh Circuit also recorded 10 filings in 2025. See Figure 4.

Figure 4. **Federal Filings by Circuit and Year**
Excludes Merger Objections and Crypto Unregistered Securities
January 2021–December 2025



Among standard filings, 43% included an allegation related to missed earnings guidance and 41% included an allegation related to misled future performance, by far the most common allegations seen in 2025.[7] The percentage of standard cases with accounting-related allegations declined for a second consecutive year to 8%, down from nearly a quarter of all standard cases filed in 2023, while the percentage of standard cases containing an allegation related to regulatory issues has also declined by half to 13% from 26% in 2023. See Figure 5.

Figure 5. **Allegations in Federal Filings**
Shareholder Class Actions with Alleged Violations of Rule 10b-5, Section 11, and/or Section 12
January 2021–December 2025



The percentage of standard cases containing an allegation related to regulatory issues has declined by half.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

# FILINGS AGAINST FOREIGN COMPANIES

From 2016 to 2021, the percentage of foreign companies with securities listed on the NYSE and the Nasdaq increased by 5.3 percentage points, from 17.4% in 2016 to 22.7% in 2021. Over the same period, foreign companies were targeted with standard securities class actions at a higher rate than their proportion of US listings.[8] For instance, in 2016, 22.0% of standard cases were filed against foreign companies, while in 2021, this percentage grew to 24.7%.

Although the percentage of foreign companies listed on major US stock exchanges has continued to increase since 2021, the share of federal standard filings against foreign companies has since dropped below their proportion of US listings. While 28.8% of US listings were represented by foreign companies in 2025, a 6.1 percentage point increase from 2021, only 13.1% of standard filings were against foreign companies, the lowest share over the past decade. See Figure 6.

Figure 6. **Foreign Companies: Share of Federal Filings and Share of Companies Listed on US Exchanges**
Shareholder Class Actions with Alleged Violations of Rule 10b-5, Section 11, and/or Section 12
January 2016–December 2025



Note: Country of foreign issuer is determined based on location of principal executive offices.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

In 2025, 25 standard cases were filed against foreign companies, a 31% reduction from the 36 suits filed in 2024. This decline was mostly due to a decrease in filings targeting companies based in Europe and Asia. Nearly half of these filings were against European companies, with five cases against companies based in the United Kingdom and two against companies based in Ireland, while another six cases were filed against Canadian companies. Suits against companies based in China or Hong Kong declined for a fourth consecutive year, with only two filings seen in 2025. Elsewhere, there were two suits filed against companies in each of Australia and Israel. See Figure 7.

Figure 7. **Federal Filings Against Foreign Companies**
Shareholder Class Actions with Alleged Violations of Rule 10b-5, Section 11, and/or Section 12 by Region
January 2016–December 2025



Note: Country of foreign issuer is determined based on location of principal executive offices.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

Among standard filings against foreign companies in 2025, 40% included allegations related to missed earnings guidance and 32% included allegations related to misled future performance, both lower than the analogous rates of 44% and 43% for standard filings against US companies. Foreign companies were more likely to face allegations related to accounting issues, with 16% targeting foreign companies compared with 7% targeting US companies. See Figure 8.

Figure 8. **Allegations in Federal Filings by US and Foreign Companies**
Shareholder Class Actions with Alleged Violations of Rule 10b-5, Section 11, and/or Section 12
January 2025–December 2025



Note: Country of foreign issuer is determined based on location of principal executive offices.

Foreign companies were more likely to face allegations related to accounting issues.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

# EVENT-DRIVEN AND OTHER SPECIAL CASES

Trends in filings in potential development areas we have identified for securities class actions over the past five years are shown in Figures 9 and 10.

## Tariff- and Visa-Related Cases

In 2025, the Trump Administration enacted a series of tariffs via executive orders, some of which were delayed, reversed, expanded, or renegotiated over the course of the year.[9] Over the same period, the effective US tariff rate rose from 2.3% in December 2024 to 15.8% as of August 2025.[10] As the economic impact due to changes in US trade policy begins to play out, securities class actions with US tariff-related claims have started to appear. The first such case was filed on 29 August 2025 against Dow Inc. over alleged misrepresentations regarding its ability to mitigate macroeconomic and tariff-related headwinds.[11] Subsequent filings include suits against Tronox Holdings Plc, following a decline in sales of titanium oxide and zircon products associated in part to tariff-related uncertainties,[12] and CarMax, Inc., in which the company is alleged to have overstated its long-term growth prospects following an earlier short-term surge in demand due to anticipated tariffs.[13]

Separately, recent worldwide changes in immigration and visa policies have also led to one securities class action filed involving Flywire Corporation, in which the company is alleged to have understated the negative impact international student permit- and visa-related restrictions in Canada and Australia would have on the company's business.[14]

## Crypto Cases

Since 2016, when the first crypto-related suit was filed against GAW Miners, LLC,[15] there have been 126 crypto-related filings, which comprise (1) cases involving unregistered securities and (2) standard shareholder suits involving companies operating in or adjacent to the cryptocurrency industry. There were 14 crypto-related filings in 2025, representing 7% of all federal filings in 2025 and nearly double the number of such filings in 2024. Eight suits involved unregistered securities, and six were traditional shareholder suits.

As the economic impact due to changes in US trade policy begins to play out, securities class actions with US tariff-related claims have started to appear.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

Figure 9. **Number of Crypto Federal Filings**
January 2016–December 2025



## Artificial Intelligence

As companies increasingly discuss artificial intelligence (AI) in their SEC filings, earnings calls, and public disclosures, there has been a rise in AI-related securities class action cases, in which companies are alleged to have misrepresented the use or effectiveness of their AI capabilities or to have failed to disclose risks associated with adopting AI in their business.[16] In 2025, there were 17 AI-related filings, representing 8% of all federal filings and slightly exceeding the 16 such suits seen in 2024. While 13 AI-related cases were filed in the first half of 2025,[17] the pace of AI-related filings slowed in the second half of the year, with only three suits filed in the third quarter[18] and only one suit filed in the fourth quarter.

## SPAC

Since their peak in 2021, filings related to special purpose acquisition companies (SPACs) have declined for the fourth consecutive year. There were only five SPAC-related filings in 2025, an 86% decline from the 36 suits filed in 2021. While recent SPAC IPO activity remains well below the level seen in 2021, it has been trending higher, with 144 SPAC IPOs in 2025 compared to 57 in 2024 and 31 in 2023.[19]

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

## COVID-19

There have been 107 securities class actions filed with COVID-19-related claims, with at least 20 cases filed each year between 2020 and 2022. After a dip in filings in 2023, COVID-19-related filings surged in 2024 with 19 such suits but have since declined to just three filings in 2025, with only one suit filed in the second half of the year.

## Cybersecurity and Customer Privacy Breach

During the last five years, there have been 19 securities class action suits with claims related to cybersecurity and/or customer privacy breaches. Twelve of these were filed in 2021–2022, while only two suits were filed in each of 2023 and 2024. There were three suits filed in 2025 against Fortinet, Inc., Coupang, Inc., and F5, Inc., all in the second half of the year.

## Bribery/Kickbacks

There were three cases filed with allegations related to bribery or kickbacks in 2025, a slight uptick from the two seen in 2024. These include suits against TransMedics Group, Inc., RCI Hospitality Holdings, Inc., and SelectQuote, Inc.

## Environment

While 2023 saw nine filings with environment-related claims, the highest number over the past five years, there were only two such suits in 2025, filed against Edison International and Sable Offshore Corporation, respectively.

## Money Laundering

Only one suit related to money laundering was filed in 2025, a decline from two in 2024. This suit involved Block Inc. over allegations the company did not maintain robust anti-money laundering and other compliance protocols and procedures.[20]

## Cannabis

In 2021, there were three securities class action suits filed against defendants in the cannabis industry. Since then, there has been only one suit filed each year from 2022 to 2025.

> After a dip in filings in 2023, COVID-19-related filings surged in 2024 with 19 such suits but have since declined to just three filings in 2025.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

Figure 10.  **Event-Driven and Other Special Cases by Filing Year**
January 2021–December 2025



Number of Federal Filings

# TRENDS IN RESOLUTIONS

In 2025, the number of resolved federal securities class action cases, which includes dismissals and settlements, increased by 11% to 234 from 210 in 2024, marking the second straight year resolutions have increased.[21] However, dismissals and settlements have trended in different directions. While the number of dismissals increased by 34% from 116 in 2024 to 155 in 2025, the number of settlements declined by 16% from 94 in 2024 to 79 in 2025. The rise in dismissals was largely driven by an increase in dismissals involving standard cases, which saw a record 139 dismissals in 2025, up 32% from 105 in 2024. There were 72 settlements involving standard cases in 2025, the lowest amount since 2020. Standard cases collectively accounted for 90% of resolutions, comprising 211 of 234 resolved cases, while merger objections accounted for another 6% of resolutions. See Figure 11.

Figure 11. **Number of Resolved Cases: Dismissed or Settled**
        January 2016–December 2025



ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

Among non-merger objection, non-crypto unregistered securities cases filed in the past 10 years, 44% of cases have been dismissed, 28% have settled, and 28% remain pending. This is consistent with historical trends, in which dismissals typically occur earlier in the litigation cycle, and settlements occur later. For the cases filed between 2016 to 2020, the rate of dismissal has ranged from 52% to 57%.

For cases filed in 2024, as of 31 December 2024, 7% were dismissed and 93% were pending.[22] Of these cases, 18% were dismissed by 30 June 2025,[23] and as of 31 December 2025, 29% have been dismissed, 2% reached a settlement, and 69% remain pending. A higher proportion of cases filed in 2025 was dismissed in the year of filing than was true of cases filed in 2024, with 9% of cases filed in 2025 dismissed and 91% pending as of year-end 2025. See Figure 12.

Figure 12. **Status of Cases as Percentage of Federal Filings by Filing Year**
Excludes Merger Objections, Crypto Unregistered Securities, and Verdicts
January 2016–December 2025



Note: Dismissals may include dismissals without prejudice and dismissals under appeal. Component values may not add to 100% due to rounding.

Over the past 10 years, the median time from the filing of the first complaint to resolution for dismissed cases has ranged from 1.1 years to 1.9 years, while for settled cases, the median time from the filing of the first complaint to resolution has ranged from 2.7 years to 3.9 years. For cases dismissed in 2025, the median time to dismissal declined to 1.6 years from 1.9 years in 2024, largely driven by an increase in dismissals from more recently filed cases. For cases settled in 2025, the median time to settle was 3.3 years, roughly in line with 2024. See Figure 13.

Figure 13. **Median Time from First Complaint Filing to Resolution**
Excludes Merger Objections, Crypto Unregistered Securities, and Verdicts
January 2016–December 2025



ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

# TRENDS IN PENDING CASES

The number of non-merger objection, non-crypto unregistered securities suits pending in federal courts has increased over the past 10 years, although year-to-year fluctuations in the filing rate of new cases and the resolution rate of existing cases have led to annual variations in the number of pending cases.[24] From 2016 to 2020, there were more new cases filed than existing cases resolved, resulting in a 30% increase in the number of pending cases, from 443 to 577. This trend reversed during the 2020–2022 period, leading to a reduction of 34 pending cases, while between 2022 and 2024, the backlog of securities class action cases grew by 11% to 604 cases. In 2025, the number of pending cases declined by 3.5% to 583. See Figure 14.

From 2020 to 2025, the percentage of pending cases that were filed within the past two years declined from 64% to 56%, while the percentage of cases that are older than three years increased from 18% to 26%. During the same period, the median age of pending cases increased from 1.5 years to 1.7 years. As of 31 December 2025, there were 53 cases that have been pending for more than five years, the most over the last decade.

Figure 14. **Number of Pending Federal Cases**
Excludes Merger Objections and Crypto Unregistered Securities
January 2016–December 2025



Note: Represents cases filed from 2000 onwards. Years since filing calculated are end-of-year calculations.

# ANALYSIS OF MOTIONS

NERA's federal securities class action database tracks filing and resolution activity as well as decisions on motions to dismiss, motions for class certification, and the status of any motion as of the resolution date. For this analysis, we include securities class actions that were filed and resolved over the 2016–2025 period in which purchasers of common stock are part of the class and which contain alleged violations of Rule 10b-5, Section 11, and/or Section 12.

## Motion to Dismiss

A motion to dismiss was filed in 96% of the securities class actions suits filed and resolved in the past 10 years. For cases in which a motion to dismiss was filed, a decision was reached in 73% of cases, 6% settled before a court decision was reached, and 21% were voluntarily dismissed by plaintiffs. Among the cases in which a decision was reached, 62% of motions were granted (with or without prejudice), while 38% were denied either in part or in full. See Figure 15.

Figure 15. **Filing and Resolutions of Motions to Dismiss**
Cases Filed and Resolved January 2016–December 2025



## Motion for Class Certification

As most cases are either dismissed or settled before the class certification stage is reached, only 16% of securities class action suits had a motion for class certification filed. Of these, a decision was reached in 63% of cases, while almost all the remaining 37% of cases were resolved with a settlement. Among the cases in which a court decision was reached, the motion for class certification was at least partially granted (with or without prejudice) in 87% of cases and denied (with or without prejudice) in 13% of cases. See Figure 16.

For cases in which a decision was reached on the motion for class certification, 22% of decisions occurred within two years of the filing of the first complaint, 62% were reached between 2–4 years, and 16% were decided in more than four years (see Figure 17). The median time is about 2.8 years.

Figure 16. **Filing and Resolutions of Motions for Class Certification**
Cases Filed and Resolved January 2016–December 2025



Figure 17. **Time from First Complaint Filing to Class Certification Decision**
Cases Filed and Resolved January 2016–December 2025



For cases in which a decision was reached on the motion for class certification...the median time is about 2.8 years.

# TRENDS IN SETTLEMENT VALUES[25]

For the third straight year, the aggregate recovery from settlements has declined. The 2025 aggregate settlement value was $2.9 billion, marking a 25% decline from the inflation-adjusted 2024 total of $3.9 billion and a 33% decline from the inflation-adjusted 2021 total of $4.4 billion (see Figure 18). After excluding cases involving merger objections, crypto unregistered securities, and settlements of $0 to the class, 40% of settlements had a recovery of less than $10 million (in line with the prior three years), 13% settled between $10 million and $19.9 million (a five-year low), 31% settled between $20 million and $49.9 million (a five-year high), and 17% settled for $50 million or more (see Figure 19). The average settlement value was $40 million, a 9% decline compared to the 2024 inflation-adjusted average settlement value of $44 million but a 63% increase from the smallest inflation-adjusted average settlement value in the past 10 years: $24.4 million in 2021 (see Figure 20).[26]

Figure 18. **Aggregate Settlement Value**
January 2016–December 2025



Figure 19.  **Distribution of Settlement Values**

Excludes Merger Objections, Crypto Unregistered Securities, and Settlements for $0 to the Class

January 2021–December 2025



Figure 20.  **Average Settlement Value**

Excludes Merger Objections, Crypto Unregistered Securities, and Settlements for $0 to the Class

January 2016–December 2025



ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

For the second year in a row, there were no settlements of $1 billion or higher, and as a result, the average settlement value excluding such cases was also $40 million (see Figure 21). The median settlement value was $17.3 million, a 21% increase relative to the $14.3 inflation-adjusted value in 2024 and the largest median settlement value over the 2016–2025 period (see Figure 22).

Figure 21. **Average Settlement Value**
Excludes Settlements of $1 Billion or Higher, Merger Objections, Crypto Unregistered Securities, and Settlements for $0 to the Class
January 2016–December 2025



ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

Figure 22.  **Median Settlement Value**

Excludes Settlements of $1 Billion or Higher, Merger Objections, Crypto Unregistered Securities, and Settlements for $0 to the Class

January 2016–December 2025



The median settlement value was $17.3 million, a 21% increase relative to the $14.3 inflation-adjusted value in 2024 and the largest median settlement value over the 2016–2025 period.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

# TOP SETTLEMENTS

The 10 largest settlements of 2025 ranged from $80 million to $433.5 million and together accounted for $1.7 billion, or 59%, of the $2.9 billion aggregate settlement amount. There were three settlements over $150 million: Alibaba Group Holding Company ($433.5 million) over misrepresentations concerning its exclusivity practices,[27] General Electric Company ($362.5 million) over disclosure failures related to the use of factoring to conceal industrial cash flow issues,[28] and EQT Corporation ($167.5 million) over allegations the company overstated the operational benefits of its acquisition of Rice Energy Inc.[29] The Second Circuit alone accounted for five of the 10 largest settlements. Eight of the top 10 settlements took more than five years to resolve from the filing of the first complaint. See Table 1.

Table 1. **Top 10 2025 Securities Class Action Settlements**

| Rank | Defendant | Filing Date | Settlement Date | Total Settlement Value ($Million) | Plaintiffs' Attorneys' Fees and Expenses Value ($Million) | Circuit | Economic Sector |
|---|---|---|---|---|---|---|---|
| 1 | Alibaba Group Holding Limited | 13 Nov 2020 | 27 Mar 2025 | $433.5 | $109.4 | 2nd | Retail Trade |
| 2 | General Electric Company | 01 Nov 2017 | 24 Apr 2025 | $362.5 | $79.5 | 2nd | Electronic Technology |
| 3 | EQT Corporation | 25 Jun 2019 | 30 Oct 2025 | $167.5 | $55.1 | 3rd | Energy Minerals |
| 4 | Zoom Video Communications, Inc. | 07 Apr 2020 | 09 Oct 2025 | $150.0 | $10.7 | 9th | Technology Services |
| 5 | Turquoise Hill Resources Ltd. | 14 Oct 2020 | 15 Oct 2025 | $138.8 | $20.0 | 2nd | Non-Energy Minerals |
| 6 | Alta Mesa Resources, Inc. | 30 Jan 2019 | 30 Apr 2025 | $126.3 | $47.7 | 5th | Energy Inc. Minerals |
| 7 | VMware, Inc. | 31 Mar 2020 | 31 Mar 2025 | $102.5 | $26.4 | 9th | Technology Services |
| 8 | Windstream Holdings, Inc. /EarthLink Holdings Corp. | 19 Mar 2018 | 06 Feb 2025 | $85.0 | $27.8 | 8th | Communications |
| 9 | Dentsply Sirona Inc. | 19 Dec 2018 | 10 Sep 2025 | $84.0 | $25.8 | 2nd | Health Technology |
| 10 | Grab Holdings Limited | 16 Mar 2022 | 15 May 2025 | $80.0 | $26.9 | 2nd | Transportation |
| | **Total** | | | **$1,730.1** | **$429.3** | | |

ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

Table 2 lists the 10 largest federal securities class action settlements through 31 December 2025. Since the Valeant Pharmaceuticals partial settlement of $1.2 billion in 2020, this list has remained unchanged, with settlements ranging from $1.1 to $7.2 billion.

Table 2. **Top 10 Federal Securities Class Action Settlements (As of 31 December 2025)**

| Rank | Defendant | Filing Date | Settlement Year(s) | Total Settlement Value ($Million) | Financial Institutions Value ($Million) | Accounting Firms Value ($Million) | Plaintiffs' Attorney's Fees and Expenses Value ($Million) | Circuit | Economic Sector |
|---|---|---|---|---|---|---|---|---|---|
| 1 | ENRON Corp. | 22 Oct 2001 | 2003–2010 | $7,242 | $6,903 | $73 | $798 | 5th | Industrial Services |
| 2 | WorldCom, Inc. | 30 Apr 2002 | 2004–2005 | $6,196 | $6,004 | $103 | $530 | 2nd | Communications |
| 3 | Cendant Corp. | 16 Apr 1998 | 2000 | $3,692 | $342 | $467 | $324 | 3rd | Finance |
| 4 | Tyco International, Ltd. | 23 Aug 2002 | 2007 | $3,200 | No codefendant | $225 | $493 | 1st | Producer Manufacturing |
| 5 | Petroleo Brasileiro S.A.-Petrobras | 8 Dec 2014 | 2018 | $3,000 | $0 | $50 | $205 | 2nd | Energy Minerals |
| 6 | AOL Time Warner Inc. | 18 July 2002 | 2006 | $2,650 | No codefendant | $100 | $151 | 2nd | Consumer Services |
| 7 | Bank of America Corp. | 21 Jan 2009 | 2013 | $2,425 | No codefendant | No codefendant | $177 | 2nd | Finance |
| 8 | Household International, Inc. | 19 Aug 2002 | 2006–2016 | $1,577 | Dismissed | Dismissed | $427 | 7th | Finance |
| 9 | Valeant Pharmaceuticals International, Inc.* | 22 Oct 2015 | 2020 | $1,210 | $0 | $0 | $160 | 3rd | Health Technology |
| 10 | Nortel Networks | 2 Mar 2001 | 2006 | $1,143 | No codefendant | $0 | $94 | 2nd | Electronic Technology |
| | Total | | | $32,334 | $13,249 | $1,017 | $3,358 | | |

* Denotes a partial settlement, which is included here due to its sizeable amount. Note that this case is not included in any of our resolution or settlement statistics.

ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

# NERA-DEFINED INVESTOR LOSSES

To estimate the potential aggregate loss to investors as a result of investing in the defendant's stock during the alleged class period, NERA has developed a proprietary variable, NERA-Defined Investor Losses, using publicly available data. The NERA-Defined Investor Loss measure is constructed assuming investors had invested in stocks during the class period whose performance was comparable to that of the S&P 500 Index. Over the years, NERA has reviewed and examined more than 2,000 settlements and found, of the variables analyzed, this proprietary variable to be the most powerful predictor of settlement amount.[30]

A statistical review reveals that, while settlement values and NERA-Defined Investor Losses are highly correlated, the relationship is not linear. The ratio of settlement value to NERA-Defined Investor Losses is higher for cases with lower Investor Losses than for cases with higher Investor Losses. For instance, in cases with less than $20 million in Investor Losses, the median settlement value comprises 22.6% of Investor Losses, while in cases with more than $20 million in Investor Losses, the median settlement value is at most 5.2% of Investor Losses. See Figure 23.

Figure 23. **Median Settlement Value as a Percentage of NERA-Defined Investor Losses**
By Level of Investor Losses
Cases Settled January 2016–December 2025



ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

Over the past decade, annual median Investor Losses have ranged from a low of $358 million to a high of $1.8 billion. For cases settled in 2025, the median Investor Losses were $785 million, the lowest amount since 2021. The median ratio of settlement amount to Investor Losses was 1.5% in 2025, an increase relative to the 1.2% median ratio seen in 2024, though below the median ratios seen over 2016–2023. See Figure 24.

Figure 24.  **Median NERA-Defined Investor Losses and Median Ratio of Settlement to Investor Losses by Settlement Year**
January 2016–December 2025



ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

NERA has identified the following key factors as driving settlement amounts:

- NERA-Defined Investor Losses;
- The market capitalization of the issuer immediately after the end of the class period;
- The types of securities (in addition to common stock) alleged to have been affected by the fraud;
- Variables that serve as a proxy for the merit of plaintiffs' allegations (e.g., whether the company has already been sanctioned by a government or regulatory agency or paid a fine in connection with the allegations);
- The stage of litigation at the time of settlement; and
- Whether an institution or public pension fund is named lead plaintiff (see Figure 25).

Among cases settled between January 2012 and December 2025, these factors in NERA's statistical model can explain more than 70% of the variation observed in actual settlements. Because this is an observational study, the statistical analysis does not mean that a particular factor caused a change in the settlement value (e.g., institutional investors may target cases with certain characteristics), but the analysis does allow one to statistically predict settlement sizes as well as to determine, *ex post*, whether a settlement was statistically unusually large or small after controlling for these variables.

Figure 25. **Predicted vs. Actual Settlements**
Investor Losses Using S&P 500 Index
Cases Settled January 2012–December 2025



# TRENDS IN PLAINTIFFS' ATTORNEYS' FEES AND EXPENSES

Since 2016, annual aggregate plaintiffs' attorneys' fees and expenses have ranged from a low of $505 million to a high of $1.6 billion. In 2025, aggregate plaintiffs' attorneys' fees and expenses totaled $797 million, a 25% decline from the $1.063 billion in 2024. Plaintiff's attorneys' fees and expenses comprised roughly 27.1% of the $2.9 billion aggregate settlement amount in 2025. See Figure 26.

Figure 26. **Aggregate Plaintiffs' Attorneys' Fees and Expenses by Settlement Size**
January 2016–December 2025



ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

A historical analysis of plaintiffs' attorneys' fees and expenses for cases that have settled following the passage of the Private Securities Litigation Reform Act (PSLRA) in 1995 shows that fees and expenses as a percentage of the settlement amount generally decline as the settlement size increases. For instance, for cases settled between 2016 and 2025, the median share that plaintiffs' attorneys' fees and expenses represent relative to the total settlement ranged from 35.9% in settlements of $5 million or lower to 18.6% in settlements of $1 billion or higher.

For cases that have settled in the last 10 years, the median percentage of attorneys' fees has increased for settlements under $5 million and settlements over $100 million, while they have slightly declined for settlements between $10 million and $100 million, relative to settlements in the 1996–2015 period. This increase is more pronounced for settlements of $500 million or higher, although this is partly attributed to the low number of such settlements (six) in the 2016–2025 period. See Figure 27.

Figure 27.  **Median of Plaintiffs' Attorneys' Fees and Expenses by Size of Settlement**
Excludes Merger Objections, Crypto Unregistered Securities, and Settlements for $0 to the Class



Note: Component values may not add to total value due to rounding.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

# CONCLUSION

The number of federal securities class action suits filed fell by 11%, from 232 in 2024 to 207 in 2025. Approximately 92% of the drop in filings can be explained by a reduction in the number of standard cases alleging violations of Rule 10b-5, Section 11, and/or Section 12, which also declined by 11% from 214 in 2024 to 191 in 2025. Similarly, nearly half of the drop in standard filings can be attributed to a decrease in the number of standard cases filed against foreign companies, a category that saw only 25 suits in 2025, the lowest number in the last 10 years.

Among non-merger objection, non-crypto unregistered securities cases filed in 2025, the healthcare technology and services sector contributed the largest share of filings across all economic sectors with 31%, and courts in the Second Circuit saw the most filings of all federal circuits with 62. Suits with AI- and crypto-related claims accounted for roughly 15% of all new filings in 2025.

For the first time since 2022, there were more securities class action resolutions than filings, which resulted in a reduction in the number of pending cases. There were 234 resolved cases in 2025, an 11% increase relative to 2024 and which consisted of 155 dismissals and 79 settlements. For dismissed cases, the median time to dismissal declined from 1.9 years in 2024 to 1.6 years in 2025, while for settled cases, the median time to settlement slightly increased from 3.2 years in 2024 to 3.3 years in 2025.

The 79 settlements in 2025 totaled $3.9 billion, with the top 10 settlements accounting for 59% of this amount. Compared to last year, the average settlement value declined by $4 million to $40 million, while the median settlement value increased by approximately $3 million to $17 million. For cases settled over the 2016–2025 period, the median plaintiffs' attorneys' fees as a percentage of settlement value ranged from 18.0% for settlements of at least $1 billion to 33.0% for settlements of $5 million or less.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

## NOTES

1   This edition of NERA's report on "Recent Trends in Securities Class Action Litigation" expands on previous work by our colleagues Lucy P. Allen, Dr. Vinita Juneja, Dr. Denise Neumann Martin, Dr. Jordan Milev, Robert Patton, Dr. Stephanie Plancich, Janeen McIntosh, and others. The authors thank Dr. David Tabak and Benjamin Seggerson for helpful comments on this edition. We thank Daniel Klotz, Debra Lederman, Nicholas Kwasnik, and other researchers from NERA's securities and finance capability for their valuable assistance. These individuals receive credit for improving this report; any errors and omissions are those of the authors. NERA's proprietary securities class action database and all analyses reflected in this report are limited to US federal case filings and resolutions.

2   NERA tracks securities class actions that have been filed in US federal courts. Most of these cases allege violations of federal securities laws; others allege violations of common law, including breach of fiduciary duty, as with some merger-objection cases; still others are filed in federal court under foreign or state law. If multiple actions are filed against the same defendant, are related to the same allegations, and are in the same circuit, we treat them as a single filing. The first two actions filed in different circuits are treated as separate filings. If cases filed in different circuits are consolidated, we revise our count to reflect the consolidation. Therefore, case counts for a particular year may change over time. Different assumptions for consolidating filings would probably lead to counts that are similar but may, in certain circumstances, lead observers to draw a different conclusion about short-term trends in filings. Data for this report were collected from multiple sources, including Institutional Shareholder Services Securities Class Action Services (ISS SCAS), Dow Jones Factiva, Bloomberg Finance, FactSet Research Systems, Nasdaq, Intercontinental Exchange, US Securities and Exchange Commission (SEC) filings, complaints, case dockets, and public press reports. All rights in the information provided by ISS SCAS and its affiliates (ISS SCAS) reside with ISS SCAS and/or its licensors. ISS SCAS makes no express or implied warranties of any kind and shall have no liability for any errors, omissions, or interruptions in or in connection with any data provided by ISS SCAS. IPO laddering cases are presented only in Figure 1.

3   IPO figures taken from Stock Analysis, accessed 9 January 2026, available at https://stockanalysis.com/ipos/statistics/.

4   Federal securities class actions that allege violations of Rule 10b-5, Section 11, and/or Section 12 have historically dominated federal securities class action dockets and have often been referred to as "standard" cases. In the analyses of this report, standard cases involve registered securities and do not include cases involving crypto unregistered securities, which are considered a separate category.

5   IPO figures taken from Stock Analysis, accessed 9 January 2026, available at https://stockanalysis.com/ipos/statistics/.

6   In this study, crypto cases consist of two mutually exclusive subgroups: (1) crypto shareholder class actions, which include a class of investors in common stock, American depositary receipts/American depositary shares (ADR/ADS), and/or other registered securities, along with crypto- or digital-currency-related allegations; and (2) crypto unregistered securities class actions, which do not have class investors in any registered securities that are traded on major exchanges (New York Stock Exchange, Nasdaq). We include crypto shareholder class actions in all our analyses that include standard cases. Crypto unregistered securities class actions are excluded from some analyses, which is noted in the titles of our figures.

7   Most securities class action complaints include multiple allegations. For this analysis, all allegations from the complaint are included and thus the total number of allegations exceeds the total number of filings.

8   Here, a company is considered a foreign company based on the location of its principal executive office.

9   Talya Minsberg, "A Timeline of Trump's On-Again, Off-Again Tariffs," *The New York Times*, updated 14 October 2025, available at https://www.nytimes.com/2025/03/13/business/economy/trump-tariff-timeline.html.

10  "US Tariffs: What's the Impact on Global Trade and the Economy?" *J.P.Morgan*, 5 December 2025, available at https://www.jpmorgan.com/insights/global-research/current-events/us-tariffs.

11  Sydney Price, "Dow Faces Investor Suit Over Tariff-Related Disclosures," *Law360.com*, 2 September 2025, available at https://www.law360.com/articles/2382774.

12  Gillian R. Brassil, "Tronox Investor Sues After Record Stock Drop on Sales Setback," *BloombergLaw*, 4 September 2025, available at https://news.bloomberglaw.com/class-action/tronox-investor-sues-after-record-stock-drop-on-sales-setback.

13  Gina Kim, "CarMax's Hype Over Sales Ignored Tariff Fears, Investors Say," *Law360.com*, 3 November 2025, available at https://www.law360.com/articles/2407028.

14  Kevin M. LaCroix, "Geopolitical Developments, Visa Policies, and D&O Risk," *D&O Diary*, 27 July 2025, available at https://www.dandodiary.com/2025/07/articles/securities-litigation/geopolitical-developments-visa-policies-and-do-risk/.

15  Rick Archer, "Cantor Fitzgerald Exec Named In Virtual Currency Ponzi Suit," *Law360.com*, 16 June 2016, available at https://www.law360.com/articles/807687.

16  See Edward Flores and Jordan Milev, "AI and Securities Class Action Litigation," *NERA*, 17 December 2025, available at https://www.nera.com/insights/publications/2025/economic-perspectives-on-ai/ai-and-securities-class-action-litigation.html.

# NOTES

17  See Edward Flores and Svetlana Starykh, "Recent Trends in Securities Class Action Litigation: H1 2025 Update," *NERA*, 29 July 2025, Figure 8, available at https://www.nera.com/insights/publications/2025/recent-trends-in-securities-class-action-litigation--h1-2025-upd.html.

18  See Flores and Milev, 2025, Figure 3.

19  SPAC IPO figures taken from SPAC Data, accessed 9 January 2026, available at https://www.spacdata.com.

20  Lauren Berg, "Block Hit With Shareholder Suit Over Cash App AML Protocols," *Law360.com*, 21 January 2025, available at https://www.law360.com/articles/2286823.

21  Here "dismissed" is used as shorthand for all class actions resolved without settlement; it includes cases in which a motion to dismiss was granted (and not appealed or appealed unsuccessfully), voluntary dismissals, cases terminated by a successful motion for summary judgment, and an ultimately unsuccessful motion for class certification.

22  See Edward Flores and Svetlana Starykh, "Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review," *NERA*, 22 January 2025, Figure 13, available at https://www.nera.com/insights/publications/2025/recent-trends-in-securities-class-action-litigation--2024-full-y.html.

23  See Edward Flores and Svetlana Starykh, "Recent Trends in Securities Class Action Litigation: H1 2025 Update," *NERA*, 29 July 2025, Figure 10, available at https://www.nera.com/insights/publications/2025/recent-trends-in-securities-class-action-litigation--h1-2025-upd.html.

24  In this analysis, only cases filed from 2000 onward are considered.

25  For our settlement analyses, NERA includes settlements that have had the first settlement-approval hearing. We do not include partial settlements or tentative settlements that have been announced by plaintiffs and/or defendants. As a result, although we include the 2020 Valeant Pharmaceuticals partial settlement in Table 2 due to its size, this case is not included in any of our resolution, settlement, or attorney fee statistics.

26  While annual average settlement values can be a helpful statistic, these values may be affected by one or a few very high settlement amounts. Unlike averages, the median settlement value is unaffected by these high outlier settlement amounts. To understand what more typical cases look like, we analyze the average and median settlement values for cases with a settlement amount under $1 billion, thus excluding these outlier settlement amounts. For the analysis of settlement values, we limit our data to non-merger objection and non-crypto unregistered securities cases with settlements of more than $0 to the class.

27  Hailey Konnath, "Alibaba Investors' Attys Awarded $108M In IPO Settlement," *Law360.com*, 27 March 2025, available at https://www.law360.com/articles/2316787.

28  Katryna Perera, "GE Investors' $362.5M Deal Gets Final OK, Attys Get $70M," *Law360.com*, 24 April 2025, available at https://www.law360.com/articles/2330130.

29  Gillian R. Brassil, "EQT's $168 Million Investor Class Accord Gets Court Go-Ahead (1)," *BloombergLaw*, 6 November 2025, available at https://news.bloomberglaw.com/securities-law/eqts-168-million-investor-class-settlement-gets-court-go-ahead.

30  NERA-Defined Investor Losses is only calculable for cases involving allegations of damages to common stock based on one or more corrective disclosures moving the stock price to its alleged true value. As a result, we have not calculated this metric for cases such as merger objections.

## RELATED EXPERTS



**Edward Flores, MA**
Director
New York City: +1 212 345 2955
edward.flores@nera.com



**Svetlana Starykh, MA**
Associate Director,
Securities Class Actions Database
New York City: +1 914 563 6761
svetlana.starykh@nera.com



**Ivelina Velikova, MBA**
Director
New York City: +1 212 345 1160
ivelina.velikova@nera.com



SUBSCRIBE

To receive publications, news, and insights from NERA, please visit **www.nera.com/subscribe**.

*The opinions expressed herein do not necessarily represent the views of NERA or any other NERA consultant.*

## ABOUT NERA

Since 1961, NERA has provided unparalleled guidance on the most important market, legal, and regulatory questions of the day. Our work has shaped industries and policy around the world. Our field-leading experts and deep experience allow us to provide rigorous analysis, reliable expert testimony, and data-powered policy recommendations for the world's leading law firms and corporations as well as regulators and governments. Our experience, integrity, and economic ingenuity mean you can depend on us in the face of your biggest economic and financial challenges.



www.nera.com

© Copyright 2026
National Economic Research Associates, Inc.
All rights reserved. Printed in the USA.