Laurence M. Rosen (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Lead Counsel for Plaintiffs*

[*Additional Counsel on Signature Page*]

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASFA KASSAM, Individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> FLUX POWER HOLDINGS, INC., RONALD F. DUTT, and CHARLES A. SCHEIWE, <br><br> Defendants. | No. 3:25-cv-113-JO-DDL <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARDS TO PLAINTIFFS** <br><br> <u>CLASS ACTION</u> <br><br> Date:  April 2, 2026 <br> Time: 9:30 a.m. <br> Courtroom: 4C <br> Judge: Hon. Jinsook Ohta |

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT.................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND....................................3

III.  ARGUMENT .........................................................................................3

    A.    Plaintiffs' Counsel Are Entitled to An Award of Attorneys' Fees From the Common Fund That Their Efforts Helped Create ................3

    B.    The Requested Attorneys' Fees Are Fair and Reasonable As a Percentage of the Common Fund.......................................................4

    C.    All Relevant Factors Confirm the Requested Fee Is Fair and Reasonable ......................................................................................8

        1.    Plaintiffs' Counsel Achieved an Excellent Result for the Settlement Class.......................................................................8

        2.    The Risks of Further Litigation Supports the Fee Request ......10

        3.    The Skill Required and the Quality and Efficiency of the Work ...................................................................................11

        4.    The Contingent Nature of the Fee and the Financial Burden Carried by Plaintiffs' Counsel Supports the Fee Request....................................................................................12

        5.    Awards Made in Similar Cases Support the Fee Request........14

        6.    The Settlement Class's Reaction Supports the Fee Request....15

    D.    The Requested Fee Award is Reasonable Under the Lodestar Cross-Check ................................................................................16

    E.    Plaintiffs' Counsel's Expenses Are Reasonable and Should Be Reimbursed ................................................................................20

    F.    The Proposed Awards to Plaintiffs are Reasonable and Should Be Granted ................................................................................21

IV.  CONCLUSION ....................................................................................23

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, EXPENSES, AND AWARDS TO PLAINTIFFS; No. 3:25-cv-113-JO-DDL

# TABLE OF AUTHORITIES

**Cases**

*Ali v. Franklin Wireless Corp.*,
2024 WL 5179910 (S.D. Cal. Dec. 19, 2024)..........................................5, 9, 18, 20

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985).............................................................................................4

*Beaver v. Tarsadia Hotels*,
2017 WL 4310707 (S.D. Cal. Sept. 28, 2017).......................................................6

*Bickley v. Schneider Nat'l Carriers, Inc.*,
2016 WL 6910261 (N.D. Cal. Oct. 13, 2016) .......................................................7

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ............................................................................................3

*Boyd v. Bank of Am. Corp.*,
2014 WL 6473804 (C.D. Cal. Nov. 18, 2014)......................................................15

*Brown v. China Integrated Energy Inc.*,
2016 WL 11757878 (C.D. Cal. July 22, 2016)......................................................10

*Chalmers v. City of Los Angeles*,
796 F.2d 1205 (9th Cir. 1986) ...........................................................................18

*Cheng Jiangchen v. Rentech, Inc.*,
2019 WL 5173771 (C.D. Cal. Oct. 10, 2019)....................................................8, 9

*Cullen v. Ryvyl Inc.*,
2025 WL 3731036 (S.D. Cal. Dec. 19, 2025).......................................................19

*Davis v. Yelp, Inc.*,
2023 WL 3063823 (N.D. Cal. Jan. 27, 2023).......................................................7

*Destefano v. Zynga, Inc.*,
2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ...................................11, 12, 13, 18

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005)...........................................................................................10

ii

*Ellison v. Steven Madden, Ltd.*,
  2013 WL 12124432 (C.D. Cal. May 7, 2013) ......................................................... 5

*Ferreira v. Funko, Inc.*,
  2022 WL 22877154 (C.D. Cal. Dec. 13, 2022) ...................................................... 13

*Fischel v. Equitable Life Assur. Soc'y of U.S.*,
  307 F.3d 997 (9th Cir. 2002) ................................................................................ 18

*Fox v. Vice*,
  563 U.S. 826 (2011) .............................................................................................. 17

*Glass v. UBS Fin. Servs., Inc.*,
  331 F. App'x 452 (9th Cir. 2009) ......................................................................... 17

*Glickenhaus & Co. v. Household Int'l, Inc.*,
  787 F.3d 408 (7th Cir. 2015) .......................................................................... 11, 14

*Gonzalez v. City of Maywood*,
  729 F.3d 1196 (9th Cir. 2013) .............................................................................. 16

*Hefler v. Wells Fargo & Co.*,
  2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ...................................................... 10

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ................................................................................................ 8

*Howell v. Advantage RN, LLC*,
  2020 WL 5847565 (S.D. Cal. Oct. 1, 2020) ........................................................... 6

*In re Am. Apparel, Inc. S'holder Litig.*,
  2014 WL 10212865 (C.D. Cal. July 28, 2014) ............................................. 5, 6, 17

*In re Amgen Inc. Sec. Litig.*,
  2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ..................................................... 16

*In re Apollo Grp. Inc. Sec. Litig.*,
  2012 WL 1378677 n.2 (D. Ariz. Apr. 20, 2012) ................................................. 17

*In re Banc of California Sec. Litig.*,
  2020 WL 1283486 (C.D. Cal. Mar. 16, 2020) ....................................................... 7

iii

*In re Bear Stearns Cos.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012)........................................................10

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011).................................................................5, 8

*In re Checking Acct. Overdraft Litig.*,
830 F. Supp. 2d 1330 (S.D. Fla. 2011) ...................................................12

*In re Equity Funding Corp. of Am. Sec. Litig.*,
438 F. Supp. 1303 (C.D. Cal. 1977) .......................................................12

*In re Heritage Bond Litig.*,
2005 WL 1594389 (C.D. Cal. June 10, 2005) ............................................9

*In re Heritage Bond Litig.*,
2005 WL 1594403 (C.D. Cal. June 10, 2005) .....................................7, 17

*In re Hi-Crush Partners L.P. Sec. Litig.*,
2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ..........................................18

*In re Illumina, Inc. Sec. Litig.*,
2021 WL 1017295 (S.D. Cal. Mar. 17, 2021) ..........................................22

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007)................................16, 17, 20, 22

*In re ImmunityBio, Inc. Sec. Litig.*,
2025 WL 1686263 (S.D. Cal. Jun 16, 2025) .....................................passim

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000)....................................................................7

*In re MetLife Demutualization Litig.*,
689 F. Supp. 2d 297 (E.D.N.Y. 2010) .....................................................21

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..........................................passim

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015)...................................................................22

iv

*In re Oracle Corp. Sec. Litig.*,
  2009 WL 1709050 (N.D. Cal. June 16, 2009) ........................................................14

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  991 F. Supp. 2d 437 (E.D.N.Y. 2014) ..................................................................... 7

*In re Portal Software Inc. Sec. Litig.*,
  2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ........................................................19

*In re QuantumScape Sec. Class Action*,
  2025 WL 353556 (N.D. Cal. Jan. 22, 2025) ............................................................ 7

*In re Regulus Therapeutics Inc. Sec. Litig.*,
  2020 WL 6381898 (S.D. Cal. Oct. 30, 2020) .......................................................... 9

*In re Revolution Lighting Techs., Inc. Sec. Litig.*,
  2020 WL 4596811, at (S.D.N.Y. Aug. 11, 2020) .................................................... 8

*In re Stable Road Acquisition Corp.*,
  2024 WL 3643393 (C.D. Cal. April 23, 2024) .................................................17, 22

*In re Tezos Sec. Litig.*,
  2020 WL 13699946 (N.D. Cal. Aug. 28, 2020) ...................................................... 7

*In re Thornburg Mortg., Inc. Sec. Litig.*,
  912 F. Supp. 2d 1178 (D.N.M. 2012) .....................................................................11

*In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices,
  and Prods. Liab. Litig.*,
  2013 WL 12327929 (C.D. Cal. July 24, 2013) ........................................................ 6

*In re Vivendi Universal, S.A. Sec. Litig.*,
  765 F. Supp. 2d 512 (S.D.N.Y. 2011) ....................................................................14

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. L*iab. Litig.,
  2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) ........................................................19

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) ..............................................................................4, 6

*In re Xcel Energy, Inc.*,
  364 F. Supp. 2d 980 (D. Minn. 2005) .....................................................................13

v

*Jamil v. Workforce Res.*,
2020 WL 6544660 (S.D. Cal. Nov. 5, 2020) .......................................................... 6

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
564 U.S. 135 (2011) ............................................................................................... 14

*Kendall v. Odonate Thera., Inc.*,
2022 WL 1997530 (S.D. Cal. June 6, 2022).......................................................... 14

*Khoja v. Orexigen Thera., Inc.*,
2021 WL 5632673 (S.D. Cal. Nov. 30, 2021) ......................................................5, 6

*Leach v. NBC Universal Media, LLC*,
2017 WL 10435878 (S.D.N.Y. Aug. 24, 2017)...................................................... 20

*Lewis v. Anderson*,
692 F.2d 1267 (9th Cir. 1982) ................................................................................. 3

*Ludlow v. Flowers Foods*,
2024 WL 1162049 (S.D. Cal. Mar. 18, 2024) ....................................................... 19

*Marshall v. Northrop Gruman Corp.*,
2020 WL 5668935 (C.D. Cal. Sept. 18, 2020) ...................................................... 15

*McMorrow v. Mondelez Int'l, Inc.*,
2022 WL 1056098 (S.D. Cal. Apr. 8, 2022).............................................. 5, 14, 22

*McPhail v. First Command Fin. Plan, Inc.*,
2009 WL 839841 (S.D. Cal. Mar. 30, 2009) ........................................................ 23

*Morris v. Lifescan, Inc.*,
54 F. App'x 663 (9th Cir. 2003) .............................................................................. 6

*Morrison v. Nat'l Australia Bank Ltd.*,
561 U.S. 247 (2010) ............................................................................................... 14

*Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*,
2009 WL 9100391 (C.D. Cal. June 24, 2009) ....................................................... 15

*Nguyen v. Radient Pharms. Corp.*,
2014 WL 1802293 (C.D. Cal. May 6, 2014) ......................................................... 10

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, EXPENSES, AND AWARDS TO PLAINTIFFS; No. 3:25-cv-113-JO-DDL

*Radcliffe v. Experian Info. Sols. Inc.*,
   715 F.3d 1157 (9th Cir. 2013) ...............................................................................21

*Rodriguez v. Disner*,
   688 F.3d 645 (9th Cir. 2012).....................................................................................8

*Ruiz v. XPO Last Mile, Inc.*,
   2017 WL 6513962 (S.D. Cal. Dec. 20, 2017)..........................................................7

*Selk v. Pioneers Mem'l Healthcare Dist.*,
   159 F. Supp. 3d 1164 (S.D. Cal. 2016)...................................................................16

*Stanger v. China Elec. Motor, Inc.*,
   812 F.3d 734 (9th Cir. 2016)...................................................................................13

*Stemple v. QC Holdings*,
   2016 WL 11783383 (S.D. Cal. Nov. 7, 2016) ..........................................................9

*Tan v. Quick Box, LLC*,
   2025 WL 1837737 (S.D. Cal. July 3, 2025) ....................................................passim

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
   551 U.S. 308 (2007).................................................................................................4

*Testone v. Barlean's Organic Oils, LLC*,
   2023 WL 2375246 (S.D. Cal. Mar. 6, 2023) ....................................................passim

*Todd v. STAAR Surgical Co.*,
   2017 WL 4877417 (C.D. Cal. Oct. 24, 2017).........................................................23

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) .........................................................................passim

*Wong v. Arlo Techs.*,
   2021 WL 1531171 (N.D. Cal. Apr. 19, 2021) .........................................................19

*Yaron v. Intersect ENT, Inc.*,
   2021 WL 5150052 (N.D. Cal. Nov. 5, 2021) ..........................................................15

*Ziegler v. GW Pharms., PLC*,
   2024 WL 1470532 (S.D. Cal. Apr. 3, 2024)...................................14, 16, 18, 19

vii

**Statutes**

15 U.S.C. § 78u-4(a)(4) ........................................................................................21

15 U.S.C. § 78u-4(a)(6) ..........................................................................................5

Court-appointed Lead Counsel, The Rosen Law Firm, P.A. ("Rosen Law" or "Lead Counsel") respectfully submits this memorandum of law in support of its motion for: (i) an award of attorneys' fees in the amount of one-third of the Settlement Fund[1] on behalf of Plaintiffs' Counsel[2]; (ii) reimbursement of $65,904.07 in litigation expenses incurred by Plaintiffs' Counsel in connection with litigating the above-captioned action (the "Action") on behalf of the Settlement Class; and (iii) awards to Lead Plaintiff Brandon Paulson and additional Plaintiff Thomas Frank Clark (together, "Plaintiffs") of $7,500 each ($15,000 in total) in connection with their representation of the Settlement Class.

## I.    PRELIMINARY STATEMENT

The proposed Settlement, if approved by the Court, resolves all claims in the Action in exchange for a cash payment of $1,750,000 pursuant to the terms of the Stipulation.  Plaintiffs and Lead Counsel submit that this is an excellent result, conferring an immediate and substantial benefit to the Settlement Class while avoiding significant litigation risks and costs.  The Settlement represents between 19.0% and 25.0% of the maximum potential recovery the Settlement Class would

---

[1] Unless otherwise stated, capitalized terms used herein have the same meanings set forth and defined in the Stipulation of Settlement dated August 27, 2025 (Dkt. No. 60-1, the "Stipulation"), the accompanying Declaration of Joshua Baker in Support of: (1) Plaintiffs' Motion for Final Approval of Proposed Class Action Settlement and Plan of Allocation, and (2) Lead Counsel's Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Awards to Plaintiffs ("Baker Declaration" or "Baker Decl."), and in the Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Final Approval of Proposed Class Action Settlement and Plan of Allocation ("Final Approval Brief").  All citations to "¶__" and "Ex. __" in this memorandum refer, respectively, to paragraphs in, and exhibits to, the Baker Declaration.

[2] "Plaintiffs' Counsel" includes Rosen Law and additional counsel Brager Eagel & Squire, P.C. ("BES").  Any fee allocations among Plaintiffs' Counsel will in no way increase fees that are deducted from the Settlement Fund, and no other attorneys will share the awarded attorneys' fees.

1

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, EXPENSES, AND AWARDS TO PLAINTIFFS; No. 3:25-cv-113-JO-DDL

likely be able obtain at trial in Plaintiffs' best case scenario, provided the claims survived the pending motions to dismiss, anticipated motion(s) for summary judgment, class certification, and any challenges to the damages methodology. While Plaintiffs believe their claims are meritorious, Defendants have substantial defenses to liability, and Plaintiffs face numerous challenges in proving loss causation and damages at trial, possibly resulting in little to no recovery after years of costly litigation.

Plaintiffs' Counsel achieved the Settlement through hard work and diligent effort. Among other things, they conducted a thorough factual investigation in preparing the Complaint, including interviews with third-party witnesses; drafted the detailed Complaint based on the investigation; conducted extensive research regarding the applicable law and Defendants' potential defenses thereto; consulted with a financial expert on damages; and engaged in hard-fought settlement negotiations guided by an experienced and respected mediator. *See, e.g.,* ¶23.

Plaintiffs' Counsel pursued Plaintiffs' claims on a purely contingent basis. Lead Counsel's fee request is in-line with fee awards routinely granted by courts in the Ninth Circuit in similar securities class actions, and the requested award properly reflects the significant risks undertaken by Plaintiffs' Counsel in prosecuting this Action, as well as the recovery achieved for the Settlement Class. As demonstrated herein, the fee request is consistent with the percentage-of-the-fund method and is supported by each of the factors traditionally considered by courts in the Ninth Circuit.

Lead Counsel's request is further supported by the amount of time Plaintiffs' Counsel invested in litigating the Action, which results in a fractional (or "negative") lodestar multiplier of 0.84, a multiplier far lower than those in most common fund actions. *See, e.g., In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2008) ("In similar cases, courts have approved multipliers

ranging between 1 and 4.").  Plaintiffs fully support the fee request. No objections to the fee request have been received to date from Settlement Class Members.

Lead Counsel's request for reimbursement of $65,904.07 in litigation expenses is also reasonable and well within the maximum amount stated in the Notice.  Similarly, Plaintiffs' requested awards to compensate them for their time spent serving as class representatives are fair and reasonable. Such awards are expressly permitted under the Private Securities Litigation Reform Act of 1995 ("PSLRA"). There have been no objections to the requested expense reimbursement or awards to Plaintiffs.

For the reasons set forth herein, the requested fee award, reimbursement of litigation expenses, and Plaintiffs' awards are fair and reasonable, and should be approved by the Court in full.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

The Baker Declaration, filed concurrently herewith, is an integral part of this submission and, for the sake of brevity, Lead Counsel respectfully requests that the Court refer to it for the factual and procedural background, a detailed history of the efforts undertaken by Plaintiffs and Plaintiffs' Counsel, the settlement negotiations, dissemination of Notice, and further factors bearing on the fairness and reasonableness of the Settlement and Lead Counsel's request for an award of attorneys' fees and reimbursement of expenses. *See also* Final Approval Brief § II.

## III.  ARGUMENT

### A.  Plaintiffs' Counsel Are Entitled to An Award of Attorneys' Fees From the Common Fund That Their Efforts Helped Create

The Supreme Court and the Ninth Circuit have long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Lewis v.*

3

*Anderson*, 692 F.2d 1267, 1270 (9th Cir. 1982) (same).[3]   The rationale for this "common fund doctrine" is an equitable one, "those who benefit from the creation of the fund should share in the wealth with the lawyers whose skill and effort helped create it." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1296 (9th Cir. 1994) ("*WPPSS*").

Courts in this Circuit regularly award attorneys' fees in securities class actions pursuant to the common fund doctrine.  It is well recognized that these private actions provide "a most effective weapon in the enforcement of the securities laws and are a necessary supplement to [SEC] action." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 130 (1985); *see also Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007) (private securities actions are "an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the . . . SEC").  Thus, a fee award in a common fund case that is "reasonable under the circumstances" should be awarded from the fund. *WPPSS*, 19 F.3d at 1296.

### B.     The Requested Attorneys' Fees Are Fair and Reasonable As a Percentage of the Common Fund

"Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method" when awarding attorneys' fees. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  Notwithstanding that discretion, where there is an easily quantifiable benefit to the class—such as a cash common fund—the percentage-of-the-fund approach is the prevailing method.  "The use of the percentage-of-the-fund method in common-fund cases is the prevailing practice in the Ninth Circuit for awarding attorneys' fees and permits the Court to focus on a showing that a fund conferring

---

[3]   Unless otherwise noted, all internal quotations and citations are omitted, and emphasis is added.

benefits on a class was created through the efforts of plaintiffs' counsel." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011); *Testone v. Barlean's Organic Oils, LLC*, 2023 WL 2375246, at *5 (S.D. Cal. Mar. 6, 2023). *See also Vizcaino*, 290 F.3d at 1047–48; *McMorrow v. Mondelez Int'l, Inc.*, 2022 WL 1056098, at *5 (S.D. Cal. Apr. 8, 2022); *see also Ellison v. Steven Madden, Ltd.*, 2013 WL 12124432, at *8 (C.D. Cal. May 7, 2013) (finding that the "use of the percentage method" is the "dominant approach in common fund cases"). The percentage-of-the-fund method also more closely aligns attorneys' interests with those of the class by rewarding them for results obtained rather than hours billed, and it avoids the "time-consuming task of calculating lodestar." *Bluetooth*, 654 F.3d at 942; *Khoja v. Orexigen Thera., Inc.*, 2021 WL 5632673, at *8 (S.D. Cal. Nov. 30, 2021).

The text of the PSLRA also supports awarding attorneys' fees in securities cases using the percentage method, providing that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a *reasonable percentage* of the amount" recovered for the class. 15 U.S.C. § 78u-4(a)(6); *see also In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *20 (C.D. Cal. July 28, 2014) ("Congress plainly contemplated that the percentage-of-recovery would be the primary measure of attorneys fee awards in federal securities class actions."); *Ali v. Franklin Wireless Corp.*, 2024 WL 5179910, at *10 (S.D. Cal. Dec. 19, 2024) ("Part of the reason behind the near-universal adoption of the percentage method in securities cases is that the PSLRA contemplates such a calculation."). The Court should apply the percentage method here.

Here, Lead Counsel requests that the Court apply the percentage-of-the-fund method and award fees of one-third of the common fund, or $583,333.33 plus a proportionate share of the interest earned on the fund. Lead Counsel's request for one-third of the common fund is consistent with awards routinely made in the Ninth

5

Circuit in comparable securities class actions. "[T]he Ninth Circuit has established 25 percent of the common fund as the benchmark for attorney fee awards." *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Prods. Liab. Litig.*, 2013 WL 12327929, at *32 (C.D. Cal. July 24, 2013). However, "in most common fund cases, the award exceeds that [25%] benchmark." *Testone*, 2023 WL 2375246, at *5; *Omnivision*, 559 F. Supp. 2d at 1047 (same). "This is particularly true in securities class actions such as this." *Am. Apparel*, 2014 WL 10212865 at *23. That is because "a reasonable fee award is the hallmark of common fund cases" and the guiding principle in this Circuit is that a fee award be "reasonable under the circumstances." *WPPSS*, 19 F.3d at 1295 n.2.

Indeed, "[d]istrict courts in this circuit have routinely awarded fees of one-third of the common fund or higher" in similar securities cases and "the Ninth Circuit has upheld such awards." *Khoja*, 2021 WL 5632673, at *9 (approving award of attorneys fees of 33% of $4.8 million settlement, quoting *Beaver v. Tarsadia Hotels*, 2017 WL 4310707, at *10 (S.D. Cal. Sept. 28, 2017) (collecting cases)). *See also Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming district court, "finding an award of 33 percent to be reasonable" for $14.8 million settlement); *Tan v. Quick Box, LLC*, 2025 WL 1837737, at *6-7 (S.D. Cal. July 3, 2025) (awarding attorneys' fees of one-third of $5.5 million common fund); *Testone*, 2023 WL 2375246, at *5 (awarding one-third of $1.6 million settlement); *Jamil v. Workforce Res.*, 2020 WL 6544660, at *4 (S.D. Cal. Nov. 5, 2020) (approving an attorneys' fees award of one-third of $900,000 common fund); *Howell v. Advantage RN, LLC*, 2020 WL 5847565, at *5 (S.D. Cal. Oct. 1, 2020) (approving an attorneys' fees award of one-third of $3.2 million common fund);

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, EXPENSES, AND AWARDS TO PLAINTIFFS; No. 3:25-cv-113-JO-DDL

*Ruiz v. XPO Last Mile, Inc.*, 2017 WL 6513962, at *7 (S.D. Cal. Dec. 20, 2017) (approving an attorneys' fees award of 35% of the $13.9 million common fund).[4]

The requested fee award is also consistent with attorneys' fees awards in securities class actions across the country according to the National Economic Consulting Associates, Inc. ("NERA"). *See* Ex. 9 at 31 (showing that for 2016-2025, median plaintiffs' attorneys' fee award for settlements under $5 million was 33%); *see also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014) ("For example, it is very common to see 33% contingency fees in cases with funds of less than $10 million, and 30% contingency fees in cases with funds between $10 million and $50 million.").

Moreover, courts have also routinely awarded fees of one-third of the settlement amount where the settlement was reached early in the litigation process, such as here, with little to no formal discovery. *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459, 463 (9th Cir. 2000) (affirming award of one-third of $1.725 million recovery where no formal discovery and counsel conducted extensive investigation and research and worked with damages and accounting experts and thus had "sufficient information to make an informed decision about

---

[4] Courts also routinely award one-third of even larger common funds. *See, e.g., In re Heritage Bond Litig.,* 2005 WL 1594403, at *23 (C.D. Cal. June 10, 2005) (awarding fee of 33.33% of $27,783,000 settlement fund because "courts in this circuit, as well as other circuits have awarded attorneys' fees of 30% or more in complex class actions"); *Davis v. Yelp, Inc.*, 2023 WL 3063823, at *2 (N.D. Cal. Jan. 27, 2023) (approving a fee of 33.3% of the $22.25 million settlement fund in securities class action); *In re Banc of California Sec. Litig.*, 2020 WL 1283486, at *1 (C.D. Cal. Mar. 16, 2020) (awarding one-third of a $19.75 million settlement fund); *In re Tezos Sec. Litig.*, 2020 WL 13699946, at *1 (N.D. Cal. Aug. 28, 2020) (awarding 33.33% of $25 million settlement fund); *Bickley v. Schneider Nat'l Carriers, Inc.*, 2016 WL 6910261, at *4 (N.D. Cal. Oct. 13, 2016) (awarding 33⅓% of $28 million settlement fund); *In re QuantumScape Sec. Class Action*, 2025 WL 353556, at *5 (N.D. Cal. Jan. 22, 2025) (awarding 30% of $47.5 million).

7

the Settlement"); *Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at \*11 (C.D. Cal. Oct. 10, 2019) (awarding one-third of $2,050,000 settlement fund where the settlement was reached while the motion to dismiss was pending); *In re Revolution Lighting Techs., Inc. Sec. Litig.*, 2020 WL 4596811, at \*3 (S.D.N.Y. Aug. 11, 2020) (awarding one-third of $2,083,333.33 where settlement was reached prior to a motion to dismiss being filed). *See also* § III(C)(5), *infra*.

In sum, the percentage fee requested here is reasonable and in-line with fee awards made within the Ninth Circuit and comparable securities actions.

### C. All Relevant Factors Confirm the Requested Fee Is Fair and Reasonable

In determining an appropriate attorneys' fee award from a common fund, "[t]he guiding principle is that [the] attorneys' fees be reasonable under the circumstances." *Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012). In making this determination, the Ninth Circuit considers the following factors: (1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and the associated financial burden (5) awards made in similar cases; and (6) the reaction of the Settlement Class. *See Vizcaino*, 290 F.3d at 1047-50. The Ninth Circuit has explained that these factors should not be used as a rigid checklist or weighed individually, but, rather, should be evaluated considering the totality of the circumstances. *Id.* As set forth below, application of these factors supports Lead Counsel's fee request.

### 1. Plaintiffs' Counsel Achieved an Excellent Result for the Settlement Class

In determining the reasonableness of fees, the result obtained is consistently held to be the most important factor. *E.g., Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (the "most critical factor is the degree of success obtained"), *Bluetooth*, 654 F.3d at 942 ("Foremost among these considerations, however, is the benefit obtained

8

for the class."); *Stemple v. QC Holdings*, 2016 WL 11783383, at *3 (S.D. Cal. Nov. 7, 2016) (similar).

The $1.75 million result achieved here is an excellent result for the Settlement Class.  Faced with the risks described below, the $1.75 million Settlement provides an immediate benefit to the Settlement Class with a recovery that represents between 19.0% and 25.0% of the maximum potential damages.  ¶47.  This recovery falls well within the range of other securities class action settlements that courts have approved. *See In re Regulus Therapeutics Inc. Sec. Litig.*, 2020 WL 6381898, at *6 (S.D. Cal. Oct. 30, 2020) (approving 1.99% recovery); *In re Heritage Bond Litig.*, 2005 WL 1594389, at *8-9 (C.D. Cal. June 10, 2005) (average recovery between 2% to 3% of maximum damages). It is also comparable to the median recovery in similarly sized securities cases. According to Cornerstone Research, between 2016-2024 the median recovery in cases such as this one alleging Rule 10b-5 claims with less than $25 million in maximum estimated damages was approximately 22.9%. Laarni T. Bulan, *et al.*, *Securities Class Action Settlements: 2025 Review and Analysis* (Cornerstone Research), at 7.[5] Between 2016-2025, securities fraud class actions that settled after the filing of a motion to dismiss but before a ruling recovered a median of 5.8% of estimated damages. *Id*. at 14.  *See also Jiangchen*, 2019 WL 5173771, at *9 ("A 10% recovery of estimated damages is a favorable outcome in light of the challenging nature of securities class action cases."); *Ali*, 2024 WL 5179910, at *11 (12.9% recovery of estimated maximum damages "weigh[s] in favor of an upward adjustment from the 25% benchmark" for attorneys' fees to 33.33%).  This substantial recovery as a percentage of maximum potential damages strongly supports Lead Counsel's fee request.

---

[5]    https://www.cornerstone.com/wp-content/uploads/2026/02/Securities-Class-Action-Settlements-2025-Review-and-Analysis.pdf

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, EXPENSES, AND AWARDS TO PLAINTIFFS; No. 3:25-cv-113-JO-DDL

## 2.     The Risks of Further Litigation Supports the Fee Request

"The risk that further litigation might result in Plaintiffs not recovering at all is a significant factor in the award of fees." *Quick Box*, 2025 WL 1837737, at *6. The multitude of risks in prosecuting this Action more than justify the requested one-third fee. *See* ¶¶32-46; Final Approval Brief § IV(C); *see also In re ImmunityBio, Inc. Sec. Litig.*, 2025 WL 1686263, at *14 (S.D. Cal. Jun 16, 2025) ("Courts have consistently recognized that securities class actions are complex and risky."). Here, continued litigation involved substantial risks and uncertainties. Plaintiffs would face complex legal and factual issues, hotly disputed by Defendants as illustrated in their motions to dismiss. ¶¶34-35. To prevail on Defendants' motions to dismiss (which is no easy task), and subsequently on a motion for summary judgement or at trial, Plaintiffs would have to establish that the alleged misstatements and omissions were materially false and misleading, as well as proving Defendants' scienter. *Id.*; *see also Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018) ("Plaintiffs' Counsel faced substantial risks in pursuing this litigation, given the inherent uncertainties of trying securities fraud cases and the demanding pleading standards of the PSLRA."); *Brown v. China Integrated Energy Inc.*, 2016 WL 11757878, at *11 (C.D. Cal. July 22, 2016) ("To prevail, Plaintiffs would have to establish Defendants acted with scienter, which can be particularly difficult to establish.").

Plaintiffs would also have to prove loss causation and damages. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345–46 (2005). In establishing damages there would likely be a "battle of the experts" where "victory is by no means assured" and the "jury could be swayed by experts for the Defendants, who could minimize or eliminate the amount of Plaintiffs' losses." *In re Bear Stearns Cos.*, 909 F. Supp. 2d 259, 267-68 (S.D.N.Y. 2012); *see also ImmunityBio*, 2025 WL 1686263, at *14; *Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *2 (C.D. Cal. May 6, 2014)

("Proving and calculating damages required a complex analysis, requiring the jury to parse divergent positions of expert witnesses in a complex area of law. The outcome of that analysis is inherently difficult to predict and risk."). Indeed, "[j]ury verdicts in favor of plaintiffs are exceedingly uncommon in securities fraud class actions." *ImmunityBio*, 2025 WL 1686263, at *14. Thus, even if Plaintiffs prevailed through trial, the recovery might be a fraction of the maximum damages. ¶¶38-41. Plaintiffs would also face further risk after a trial as well on post-trial motions or appeal. *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation).

Given the significant risks in this Action, and the strengths and weaknesses of the claims asserted, the $1.75 million Settlement is highly favorable and in the best interests of the Class.

### 3. The Skill Required and the Quality and Efficiency of the Work

The "prosecution and management of a complex national class action requires unique legal skills and abilities." *Omnivision*, 559 F. Supp. 2d at 1047. "This is particularly true in securities cases because the [PSLRA] makes it much more difficult for securities plaintiffs to get past a motion to dismiss." *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *17 (N.D. Cal. Feb. 11, 2016).

Plaintiffs' Counsel have extensive experience prosecuting securities class actions and other complex litigation. ¶79; Exs. 6-7 (firm résumés). Plaintiffs' Counsel brought their skill and experience to this case, thus supporting the fee request. "While there are other national and local firms that do securities class actions work, the number of firms doing this work is relatively small, and requires specialized knowledge and skill, and the willingness to front expense and staff salaries for years." *In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178,

11

1256 (D.N.M. 2012); *see also In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d 1330, 1359 (S.D. Fla. 2011) ("Class Counsel took on a great deal of risk in bringing this case, and turned a potentially empty well into a significant judgement [sic]. That kind of initiative and skill must be adequately compensated to insure [sic] that counsel of this caliber is available to undertake these kinds of risky but important cases in the future."). Plaintiffs' Counsel have also demonstrated their ability by achieving the excellent result obtained here, with a recovery of 19-25% of maximum estimated recoverable damages.

Additionally, the litigation was vigorously contested by Defendants' experienced and qualified attorneys from Wilson Sonsini Goodrich & Rosati and Wilson, Elser, Moskowitz, Edelman & Dicker LLP, providing further support for Lead Counsel's fee award. ¶80. *See, e.g.*, *Zynga*, 2016 WL 537946, at *17 ("The quality of opposing counsel is also relevant to the quality and skill that class counsel provided"); *In re Equity Funding Corp. of Am. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977) ("[P]laintiffs' attorneys in this class action have been up against established and skillful defense lawyers, and should be compensated accordingly.").

Plaintiffs' Counsel's zealous and effective advocacy on behalf of the Settlement Class supports approval of the fee request.

### 4. The Contingent Nature of the Fee and the Financial Burden Carried by Plaintiffs' Counsel Supports the Fee Request

Plaintiffs' Counsel devoted a considerable amount of time and effort to the Action despite the very significant risk of no recovery. *See, e.g.*, *Vizcaino*, 290 F.3d at 1051 (contingency representation is "relevant circumstance[]" to consider in awarding fees). The risk of non-recovery weighs heavily in considering an award of attorneys' fees. *Id.* ("courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases."); *see also Quick Box,* 2025 WL 1837737, at *6 ("The importance of assuring adequate representation for plaintiffs

12

who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent fee basis a larger fee than if they were billing by the hour or on a flat fee."); *Testone*, 2023 WL 2375246, at *6 ("Class Counsel's prosecution of this action involved significant financial risk, as Class Counsel undertook the matter solely on a contingent basis..., and therefore risked no recovery."). "[W]hen counsel takes on a contingency fee case," and especially so when "the litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award." *Zynga*, 2016 WL 537946, at *18.

Plaintiffs' Counsel prosecuted this Action on an entirely contingent basis, bearing all risks of litigating the case through trial and appeals with no guarantee of any compensation. Plaintiffs' Counsel devoted substantial time and expenses to the Action despite the comparably greater risk of success that class action lawsuits, and particularly securities actions, carry compared to other litigation. Lead Counsel know from personal experience that despite the most vigorous and competent efforts, success in complex contingent litigation is never guaranteed. *See* ¶45; *see also Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 741 (9th Cir. 2016) (contingency awards are "especially important in securities cases"); *Ferreira v. Funko, Inc.*, 2022 WL 22877154, at *9 (C.D. Cal. Dec. 13, 2022) (fees greater than hourly rates are proper in securities class actions to encourage counsel to take such cases where plaintiffs cannot afford to pay hourly rates).

There are many other hard-fought lawsuits where, because of the discovery of facts unknown when the case commenced, changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, excellent professional efforts by members of the plaintiffs' bar produced no attorneys' fees for counsel. ¶45. Indeed, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *In re Xcel Energy,*

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, EXPENSES, AND AWARDS TO PLAINTIFFS; No. 3:25-cv-113-JO-DDL

*Inc.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005); *see also In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 533-34 (S.D.N.Y. 2011), *aff'd*, 838 F.3d 223 (2d Cir. 2016) (after jury verdict for plaintiff, court significantly reduced scope of class by amending class definition to exclude purchasers of ordinary shares, based on Supreme Court's reversal, in *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010), of unbroken circuit court precedent over 40 years); *In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 16, 2009) (granting summary judgment to defendants after eight years of litigation), *aff'd* 627 F.3d 376 (9th Cir. 2010); *Omnivision*, 559 F. Supp. 2d at 1047 (noting in 2008 that "[n]ationwide, Plaintiffs have won only three of eleven [securities class action] cases to reach verdicts since 1996"). Even plaintiffs who get past summary judgment and succeed at trial may find a judgment in their favor overturned on appeal or on a post-trial motion. *See Glickenhaus*, 787 F.3d 408 (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation on loss causation grounds and error in jury instruction in light of *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135 (2011)).

Despite the preclusion of other employment, high risk, and undesirability of the Action, Plaintiffs' Counsel "took on significant financial risk in investing in this case with no guarantee that the time expended would result in any recovery of costs. Accordingly, this factor weighs in favor of an upward departure from the benchmark." *McMorrow*, 2022 WL 1056098, at *7.

**5.    Awards Made in Similar Cases Support the Fee Request**

Lead Counsel's fee request is also supported by awards made in similar cases. As discussed in § III(B), *supra*, the request of one-third of the Settlement Fund, or $583,333.33, is well within the range of percentages awarded as attorneys' fees in comparable settlements. *See Ziegler v. GW Pharms., PLC*, 2024 WL 1470532, at *10 (S.D. Cal. Apr. 3, 2024); (awarding 33% of $7.75 million settlement

14

representing 1% of estimated damages); *Kendall v. Odonate Thera., Inc.*, 2022 WL 1997530, at *6 (S.D. Cal. June 6, 2022) (awarding 33% of $12.75 million settlement representing 3.49% of estimated damages); *Yaron v. Intersect ENT, Inc.*, 2021 WL 5150052, at *1 (N.D. Cal. Nov. 5, 2021) (awarding one-third of $1.9 million settlement). "An attorney fee of one third of the settlement fund is routinely found to be reasonable in class actions." *Marshall v. Northrop Grumman Corp.*, 2020 WL 5668935, at *8 (C.D. Cal. Sept. 18, 2020) (collecting cases, and awarding one-third of $12.375 million settlement fund); *Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*, 2009 WL 9100391, at *4 (C.D. Cal. June 24, 2009) (reviewing empirical research and stating: "[n]ationally, the average percentage of the fund award in class actions is approximately one-third.").

### 6.     The Settlement Class's Reaction Supports the Fee Request

"The existence or absence of objectors to the requested attorneys' fee as disclosed in the Class Notice is a factor is determining the appropriate fee award." *Boyd v. Bank of Am. Corp.*, 2014 WL 6473804, at *9 (C.D. Cal. Nov. 18, 2014). Here, the reaction of the Settlement Class to date has been overwhelmingly positive, supporting the requested fee award. As of March 5, 2026, the Claims Administrator has sent over 18,000 copies of the Postcard Notice and/or emails with links to the Notice and Settlement website to potential Settlement Class Members. Ex. 1 (Declaration of Margery Craig Concerning: (A) Emailing of the Summary Notice and Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections ("Craig Decl.")) ¶9. The Claims Administrator has also published the Summary Notice online and in print. *Id.* ¶10. The Postcard Notice and long-form Notice each explain that Lead Counsel intends to request attorneys' fees of no more than one-third of the Settlement Fund and expenses of no more than $75,000, plus interest. *See* Craig Decl., Exs. A and C.

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, EXPENSES, AND AWARDS TO PLAINTIFFS; No. 3:25-cv-113-JO-DDL

Although the deadline for Settlement Class Members to object is March 12, 2026, to date no objections to any aspect of the Settlement have been received. *Id.* ¶14; Baker Decl. ¶62. "The lack of objection from any Class Member supports the attorneys' fee award." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007); *Quick Box*, 2025 WL 1837737, at *6 (similar); *Ziegler*, 2024 WL 1470532, at *10 (same). Should any objections be received, they will be addressed in Plaintiffs' reply papers.

For the foregoing reasons, each of the factors traditionally considered by courts in the Ninth Circuit supports awarding the requested attorneys fees.

**D.　　The Requested Fee Award is Reasonable Under the Lodestar Cross-Check**

Courts in this Circuit also consider whether a fee request is reasonable using the lodestar method as a "cross-check." *E.g.*, *Vizcaino*, 290 F.3d at 1050. Such a cross check is not required but is encouraged by the Ninth Circuit. *Id.*; *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016) ("Although an analysis of the lodestar is not required for an award of attorneys' fees in the Ninth Circuit, a cross-check of the fee request with a lodestar amount can demonstrate the fee request's reasonableness"). Although Lead Counsel seek approval of a fee based on a percentage of the fund, a lodestar comparison serves as "[a] final check on the reasonableness of the requested fees." *Omnivision*, 559 F. Supp. 2d at 1048.

"The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1180 n.5 (S.D. Cal. 2016). In the second step of the analysis, a court adjusts the lodestar to consider, among other things, the time and labor required, the result achieved, the quality of representation, whether the fee is fixed or contingent, the novelty and

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, EXPENSES, AND AWARDS TO PLAINTIFFS; No. 3:25-cv-113-JO-DDL

difficulty of the questions involved, and awards in similar cases. *See Gonzalez v. City of Maywood*, 729 F.3d 1196, 1209, n.11 (9th Cir. 2013); *Vizcaino*, 290 F.3d at 1051–52 ("courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases."); *Heritage Bond*, 2005 WL 1594403, at *22 ("In securities class actions, it is common for a counsel's lodestar figure to be adjusted upward by some multiplier reflecting a variety of factors such as the effort expended by counsel, the complexity of the case, and the risks assumed by counsel.").

"When the lodestar is used as a cross-check, the focus is not on the necessity and reasonableness of every hour of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *In re Stable Road Acquisition Corp.*, 2024 WL 3643393, at *15 (C.D. Cal. April 23, 2024); *Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452, 456 (9th Cir. 2009). When using the lodestar to calculate attorney fee awards, "trial courts need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011). "[A]n itemized statement of legal services is not necessary for an appropriate lodestar cross-check." *In re Apollo Grp. Inc. Sec. Litig.*, 2012 WL 1378677, at *7 n.2 (D. Ariz. Apr. 20, 2012); *see also Am. Apparel*, 2014 WL 10212865, at *23 ("the lodestar cross-check can be performed with a less exhaustive cataloging and review of counsel's hours").

Here, Plaintiffs' Counsel (including attorneys and para-professional staff) collectively expended a total of 645.48 hours in the prosecution of this Action from inception through March 4, 2026. ¶76. As is customary when seeking a percentage-of-the-fund award in common fund cases and submitting data for a lodestar cross-check, Plaintiffs' Counsel have submitted declarations that include a schedule

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, EXPENSES, AND AWARDS TO PLAINTIFFS; No. 3:25-cv-113-JO-DDL

detailing each firm's lodestar by individual, position, billing rate, and hours billed.[6] Ex. 2 ¶6 (Declaration of Laurence M. Rosen on behalf of Rosen Law concerning attorneys' fees and expenses), Ex. 3 ¶ 6 (Declaration of Marion C. Passmore on behalf of BES concerning attorneys' fees and expenses). Based on current hourly rates, Plaintiffs' Counsel's total lodestar is $692,735.15.[7] ¶76. Thus, the requested fee award represents a multiplier of 0.84. *Id*.

Plaintiffs' Counsel's rates are in line with those rates "prevailing in the community for similar work performed by attorneys of reasonably comparable skill, experience, and reputation." *Ziegler*, 2024 WL 1470532, at *8 (quoting *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210–11 (9th Cir. 1986)); *see also Zynga*, 2016 WL 537946, at *19 (same). The hourly rates for Plaintiffs' Counsel here range from $1,050 to $1,550 for partners, $730 to $850 for associates, and $375 to $425 for paralegals. ¶77; Exs. 2-3 ¶6. These hourly rates are comparable to those regularly charged by law firms handling securities class actions and other complex litigation. *See, e.g.*, Ex. 10 (survey of peer plaintiff and defense law firm billing rates); *In re Qualcomm Incorp. Sec. Litig.*, No. 3:17-cv-00121-JO-MSB, Dkt. Nos. 441 (S.D. Cal. Aug. 23, 2024) and 450 (S.D. Cal. Sept. 27, 2024) (Ohta, J.) (approving hourly rates in 2024 ranging from $800 to $1,400 for partners, from $425

---

[6] *See Immune Response*, 497 F. Supp. 2d at 1176 ("Here, counsel have provided sworn declarations from attorneys attesting to the experience and qualifications of the attorneys who worked on the case, the hourly rates, and the hours expended.").

[7] Courts use current rates, rather than historic rates, to ensure that "[a]ttorneys in common fund cases [are] compensated for any delay in payment." *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1010 (9th Cir. 2002). *See also In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *15 (S.D.N.Y. Dec. 19, 2014) ("[T]he use of current rates to calculate the lodestar figure has been endorsed repeatedly by the Supreme Court, the Second Circuit and district courts within the Second Circuit as a means of accounting for the delay in payment inherent in class actions and for inflation.").

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, EXPENSES, AND AWARDS TO PLAINTIFFS; No. 3:25-cv-113-JO-DDL

to $875 for associates, from $340 to $450 for staff attorneys, and $235 to $425 for paralegals and case managers); *Ali*, 2024 WL 5179910, at *12 (hourly rates of $975 to $1,325 for partners, $450 to $550 for associates, and $365 for paralegals were reasonable) (collecting cases); *Ziegler*, 2024 WL 1470532, at *8 (rates between $470 and $1,150 are "justified" based on "reasonable rates in this district").[8]

The requested fee award in fact equates to a fractional (or "negative") multiplier of 0.84.  ¶76.  This fractional multiplier is a strong indication that the requested fee is fair and reasonable.  *See, e.g.*, *Cullen v. Ryvyl Inc.*, 2025 WL 3731036, at *15 (S.D. Cal. Dec. 19, 2025) (A lodestar "multiplier of less than one . . . suggests that the negotiated fee award is a reasonable and fair valuation of the services rendered to the class."); *Wong v. Arlo Techs.*, 2021 WL 1531171, at *11 (N.D. Cal. Apr. 19, 2021) ("a multiplier below 1.0 is below the range typically awarded by courts and is presumptively reasonable"); *In re Portal Software Inc. Sec. Litig.*, 2007 WL 4171201, at *16 (N.D. Cal. Nov. 26, 2007) ("The resulting so-called negative multiplier suggests that the percentage-based amount is reasonable and fair based on the time and effort expended by class counsel.").  *See also Vizcaino*, 290 F.3d at 1051–52 (approving a 3.65 multiplier and finding that when the lodestar is used as a cross-check, "most" multipliers were in the range of 1 to 4); *Omnivision*, 559 F. Supp. 2d at 1048 ("In similar cases, courts have approved multipliers ranging between 1 and 4."); *Ludlow v. Flowers Foods*, 2024 WL 1162049, at *8 (S.D. Cal. Mar. 18, 2024) (Ohta, J.) ("The Ninth Circuit has recognized that multipliers typically can range up to 4.").

---

[8] 2024 rates, such as those approved in the cases cited here, should also be adjusted upward to account for two years of inflation. *See also In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (approving fee award following a lodestar cross-check with "billing rates ranging from $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals").

19

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, EXPENSES, AND AWARDS TO PLAINTIFFS; No. 3:25-cv-113-JO-DDL

Moreover, the lodestar multiplier does not include additional time that will be expended in completing the claims process. "The fact that [Lead] Counsel's fee award will not only compensate them for time and effort already expended, but for the time that they will be required to spend administering the settlement going forward, also supports their fee request." *Leach v. NBC Universal Media, LLC*, 2017 WL 10435878, at ¶49 (S.D.N.Y. Aug. 24, 2017). Indeed, Lead Counsel will respond to any later-filed exclusion requests or objections, attend the Settlement Hearing, oversee the claims administration process, respond to shareholder inquiries, and prepare and present a motion for distribution of the Net Settlement Fund to the Court. ¶75. The multiplier will, therefore, effectively diminish as the case moves forward.

In sum, Lead Counsel's fee request is well within the range of reasonableness in complex class actions such as this one, whether calculated as a percentage of the fund or in relation to Lead Counsel's lodestar.

### E.   Plaintiffs' Counsel's Expenses Are Reasonable and Should Be Reimbursed

"Attorneys may recovery their reasonable expenses that would typically by billed to paying clients in non-contingency matters." *Ali*, 2024 WL 5179910, at *13. Pursuant to the Notice, Lead Counsel also respectfully requests reimbursement of Plaintiffs' Counsel's litigation expenses of $65,904.07. The amount is reasonable and includes the necessary litigation costs and expenses properly recovered by counsel. *See Testone*, 2023 WL 2375246, at *7 ("There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable expenses from that fund."); *ImmunityBio*, 2025 WL 1686263, at *15 ("because of the contingent nature of this action, Counsel had no incentive to accrue unnecessary or unreasonable expenses").

The expenses incurred here have been itemized and their accuracy attested to by Plaintiffs' Counsel. Exs. 2-3 ¶¶7-8. These expenses include, for example, court costs, investigator fees, mediation fees, and expert fees (*id.*), all of which are

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, EXPENSES, AND AWARDS TO PLAINTIFFS; No. 3:25-cv-113-JO-DDL

reasonable and the type normally billed by attorneys to paying clients.  *See, e.g.*, *Immune Response*, 497 F. Supp. 2d at 1177-78 (approving request for reimbursement of "1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7) class action notice; 8) experts, consultants, and investigators; and 9) mediation fees."); *Quick Box*, 2025 WL 1837737, at *7 (same).  The bulk of expenses ($38,934.50, or approximately 59.1%) were for the retention of a consulting financial expert ($5,400.00), the mediator ($15,500.00), and a private investigation firm ($18,034.50).  ¶92.  Not a single objection by Settlement Class members to the reimbursement of expenses has been received to date, and the requested reimbursement amount is well within the maximum $75,000 listed in the Notice, further supporting approval.  ¶85.

> **F.    The Proposed Awards to Plaintiffs are Reasonable and Should Be Granted**

"Incentive awards are payments to class representatives for their service to the class in bringing the lawsuit."  *Quick Box*, 2025 WL 1837737, at *7 (quoting *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013)).  Here, Plaintiffs seek approval of an aggregate total award of $15,000, or $7,500 each, to compensate them for, and as incentive awards in recognition of, their time and effort expended on behalf of the Settlement Class.  ¶¶94-96, Exs. 4-5 (Declarations of Plaintiffs).  The PSLRA expressly permits Plaintiffs to seek an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class."  15 U.S.C. § 78u-4(a)(4).  "PSLRA awards are not limited to lost wages or other documented expenses ... [and] may be awarded in recognition of, for example, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation."  *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 370 (E.D.N.Y. 2010).  Furthermore, in common fund cases, named plaintiffs are also

21

"eligible for reasonable incentive payments" in addition to reimbursement for "litigation expenses and identifiable services rendered to the class directly under the supervision of class counsel." *ImmunityBio*, 2025 WL 1686263, at *15.

As detailed in their respective declarations, Plaintiffs devoted significant time and effort actively participating in the litigation. Among other things, Plaintiffs: (i) regularly communicated with counsel concerning the Action; (ii) remained fully informed about developments in the case; (iii) reviewed pleadings and materials filed with the Court; (iv) discussed the progress and ultimate settlement of the Action with counsel; and (v) approved the Settlement. ¶94, Ex. 4 (Declaration of Mr. Paulson) ¶5 and Ex. 5 (Declaration of Mr. Clark) ¶5. "These are precisely the types of activities that support awarding reimbursement of expenses to class representatives." *Stable Road*, 2024 WL 3643393, at *16.

"When deciding whether an incentive award is reasonable and fair, the Ninth Circuit considers the number of class representatives, the average incentive award amount, and the proportion of the total settlement that is spent on incentive awards." *ImmunityBio*, 2025 WL 1686263, at *16 (awarding $10,000 incentive award where "award makes up less than a tenth of a single percent (.10%) of the total Settlement Fund" and "Lead Plaintiff spent 10 to 20 hours litigating" the action). *See also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947–48 (9th Cir. 2015) (awarding nine plaintiffs $5,000 each where total award of $45,000 made up a "mere .17% of the total settlement fund"). Here, the incentive awards equate to a mere 0.85% of the total Settlement Fund.

Furthermore, the requested awards to Plaintiffs are comparable to, if not lower than, those routinely granted in class actions in the Ninth Circuit. *See, e.g., Immune Response*, 497 F. Supp. 2d at 1173-74 (granting $40,000 PSLRA award to lead plaintiff); *Stable Rd.*, 2024 WL 3643393, at *16 (granting $10,000 award to lead plaintiff); *Testone*, 2023 WL 2375246, at *8 ("The Court finds the requested $7,500

22

service awards reasonable and within the range awarded in this District."); *McMorrow*, 2022 WL 1056098, at \*9 (awarding $7,500 incentive award to three plaintiffs, for a total of $22,500); *In re Illumina, Inc. Sec. Litig.*, 2021 WL 1017295, at \*8 (S.D. Cal. Mar. 17, 2021) (awarding $25,000 incentive award to one plaintiff and $27,000 in total); *Todd v. STAAR Surgical Co.*, 2017 WL 4877417, at \*6 (C.D. Cal. Oct. 24, 2017) (awarding $10,000 to lead plaintiff) (collecting cases); *McPhail v. First Command Fin. Plan, Inc.*, 2009 WL 839841, at \*8 (S.D. Cal. Mar. 30, 2009) (awarding 6 plaintiffs awards from $2,073 to $10,422, noting that the "requested reimbursement is consistent with payments in similar securities cases").

The Notice informed Settlement Class Members that Plaintiffs may seek up to $15,000 total as an award for their time and effort incurred in representing the Settlement Class. *See* Craig Decl., Ex. A (Notice) at 1, 9-10. To date, no Settlement Class Member has objected to such award. *Id.* ¶14; Baker Decl. ¶85. The requested awards are reasonable and should be approved by the Court.

## IV.   CONCLUSION

For the foregoing reasons, Lead Counsel respectfully requests that the Court award: (i) attorneys' fees in the amount of one-third of the Settlement Fund, which equates to $583,333.33, plus interest accrued at the same rate as the Settlement Fund; (ii) payment of litigation expenses totaling $65,904.07, plus interest accrued at the same rate as the Settlement Fund; and (iii) awards of $7,500 each to Plaintiffs pursuant to the PSLRA. Lead Counsel will submit a proposed order with its reply papers, after the deadline for objections has passed.

Respectfully submitted,

Dated: March 5, 2026

**THE ROSEN LAW FIRM, P.A.**

By: */s/Joshua Baker*
Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450

23

Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226 4684
Email: lrosen@rosenlegal.com

Phillip Kim (*pro hac vice*)
Joshua Baker (*pro hac vice*)
275 Madison Ave., 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: philkim@rosenlegal.com
Email: jbaker@rosenlegal.com

*Lead Counsel for Plaintiffs and the Settlement Class*

**BRAGAR EAGEL & SQUIRE, P.C.**
Melissa A. Fortunato (SBN 319767)
fortunato@bespc.com
Marion C. Passmore (SBN 228474)
passmore@bespc.com
515 South Flower Street, Suite 1800
Los Angeles, California 90071
Telephone: (213) 612-7735
Facsimile: (212) 214-0506

*Additional Counsel for Plaintiff Thomas Frank Clark*

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, EXPENSES, AND AWARDS TO PLAINTIFFS; No. 3:25-cv-113-JO-DDL